**LEE LITIGATION GROUP, PLLC**
C.K. Lee (CL 4086)
Anne Seelig (AS 3976)
148 West 24th Street, Eight Floor
New York, NY 10011
Tel.: 212-465-1180
Fax: 212-465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| GIITOU NEOR and TYRONE WALLACE *on behalf of themselves, FLSA Collective Plaintiffs, and the Class,*<br><br>　　　　　　Plaintiffs,<br><br>　v.<br>ACACIA NETWORK, INC.,<br>　d/b/a ACACIA NETWORK,<br>ACACIA NETWORK HOUSING INC.,<br>　d/b/a ACACIA NETWORK,<br>PROMESA RESIDENTIAL HEALTH CARE FACILITY, INC.,<br>　d/b/a PROMESA, and<br>JOHN DOE CORP 1-100,<br>　　　　　　Defendants. | Case No.:<br><br>**COLLECTIVE ACTION COMPLAINT**<br><br>Jury Trial Demanded |

Plaintiffs, GIITOU NEOR (hereinafter, "Plaintiff Neor") and TYRONE WALLACE (hereinafter, "Plaintiff Wallace" and together "Plaintiffs") on behalf of themselves and others similarly situated, by and through their undersigned attorneys, hereby file this collective action Complaint against Defendants, ACACIA NETWORK, INC., d/b/a ACACIA NETWORK, ACACIA NETWORK HOUSING INC., d/b/a ACACIA NETWORK, PROMESA RESIDENTIAL HEALTH CARE FACILITY, INC., d/b/a PROMESA, JOHN DOE CORP 1-100 (each individually, "Defendant" or, collectively, "Defendants") and state as follows:

**INTRODUCTION**

1.      Plaintiffs allege, pursuant to the Fair Labor Standards Act, as amended, 29 U.S.C. §§201 *et. seq.* ("FLSA"), that Plaintiffs, FLSA Collective Plaintiffs, and similarly situated individuals are entitled to recover from Defendants: (1) unpaid wages, including unpaid overtime, due to time shaving, (2) unpaid wages, including overtime, due to detrimental rounding, (3) liquidated damages, and (4) attorneys' fees and costs.

2.      Plaintiffs further allege that, pursuant to the New York Labor Law ("NYLL"), they and other similarly situated are entitled to recover from Defendants: (1) unpaid wages, including overtime, due to time-shaving, (2) unpaid wages, including overtime, due to detrimental rounding, (3) unpaid spread of hours premium, (4) compensation for late payment of wages, (5) statutory penalties, (6) liquidated damages, and (7) attorneys' fees and costs.

**JURISDICTION AND VENUE**

3.      This Court has jurisdiction over this controversy pursuant to 29 U.S.C. §216(b), 28 U.S.C. §§1331, 1337, and 1343, and has supplemental jurisdiction over Plaintiffs' state law claims pursuant to 28 U.S.C. §1367.

4.      Venue is proper in the Southern District pursuant to 28 U.S.C. §1391.

**PARTIES**

5.      Plaintiff GIITOU NEOR is a resident of New York County, New York.

6.      Plaintiff TYRONE WALLACE is a resident of Kings County, New York.

7.      Defendants collectively own and operate "Acacia Network", an organization that subleases hotels and accommodations to the government as housing and assistance centers for the homeless in New York City.

a) Defendants' headquarter office is located at 311 East, 175th Street, Bronx, NY 10457. Due the nature of Defendants' services, Plaintiffs, FLSA Collective Plaintiffs, and Class members perform work under Defendants' directions at any of Defendants hotels and buildings converted into shelters and/or assistance centers as detailed in **Exhibit A**.

b) More precisely, JOHN DOE CORPORATIONS 1-100 operate over fifty-six (56) hotels and accommodations converted into shelters and assistance centers in New York, at least seven hundred fifty (750) individual family units, and four (4) buildings under the control of ACACIA NETWORK INC. as detailed in **Exhibit B**.

c) ACACIA NETWORK INC. owns the trademark "Acacia Network". Attached as **Exhibit C** is a copy of Defendants' trademark certificate. All JOHN DOE CORPORATIONS 1-100 display Defendants' Acacia Network logo at their respective entrance. Attached thereto as **Exhibit D**, are true google maps screenshots examples reflecting the same.

d) Defendant PROMESA RESIDENTIAL HEALTH CARE FACILITY, INC., d/b/a PROMESA operates under the control of ACACIA NETWORK INC. Promesa's website https://www.promesa.org/ redirects to Defendants Acacia Network main website https://acacianetwork.org/. Defendants inform on their website that Promesa is a program of Acacia Network directed to young men. *See* **Exhibit E**.

e) Moreover, Promesa employees have e-mail addresses under promesa.org domain but their e-mail signatures show that they work for Acacia Network.

*See* **Exhibit F**. Additionally, Promesa employees perform work at Acacia Network premises, work directly with Acacia Network employees, and are under the direct supervision of Acacia Network. Any employment relationship with Promesa is fictional, as the employer that directs, manages, and administers the workforce is Acacia Network.

f) All of Defendants' locations operate as a single integrated enterprise under the control of ACACIA NETWORK INC., and its board of directors. *See* **Exhibit G**.

g) All of Defendants locations advertise together on Defendants' website https://acacianetwork.org/. All locations are listed alongside one another under the "Services Guide" section of the website and on Defendants' pamphlets and brochures. *See* **Exhibit H**.

h) Independently of the location in which Defendants' accommodation or shelter is located, Plaintiffs and covered employees were freely transferred from one accommodation to another in order to fulfill Defendants' interests.

i) All of the locations have a centralized Human Resources that deals with hiring, firing, and administering all the locations' workforce. Moreover, all of the locations have a centralized platform for hiring. *See* **Exhibit I**.

j) Additionally, Corporate Defendant ACACIA NETWORK HOUSING INC. manages and administers all locations' payroll, payments, and wage policies.

8. Corporate Defendants:

a) ACACIA NETWORK, INC., d/b/a ACACIA NETWORK, is a domestic not-for-profit corporation organized under the laws of New York, with a principal

place of business and address for service of process located at 300 East 175th Street, Bronx, NY 10457.

b) ACACIA NETWORK HOUSING, INC., d/b/a ACACIA NETWORK is a domestic not-for-profit corporation organized under the laws of New York, with a principal place of business and an address of service of process located at 300 East 175th Street Bronx, NY 10457.

c) PROMESA RESIDENTIAL HEALTH CARE FACILITY, INC., d/b/a PROMESA, is a domestic not-for-profit corporation organized under the laws of New York, with a principal place of business and an address of service of process located at 300 East 175th Street Bronx, NY 10457.

10.     At all relevant times, Corporate Defendants were and continue to be an "enterprise engaged in commerce" within the meaning of the FLSA, NYLL, and regulations thereunder.

11.     At all relevant times, the work performed by Plaintiffs, FLSA Collective Plaintiffs, and Class members was directly essential to the business operated by Defendants.

## FLSA COLLECTIVE ACTION ALLEGATIONS

12.     Plaintiffs bring claims for relief as a collective action pursuant to FLSA Section 16(b), 29 U.S.C. § 216(b), on behalf of all non-exempt employees (including, but not limited to, housing specialists, social workers, case managers, counselors, assistants, drivers, nurses, receptionists, aides, custodians, and security guards) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case as defined herein (herein, "FLSA Collective Plaintiffs").

13.     At all relevant times, Plaintiffs and the other FLSA Collective Plaintiffs are and have been similarly situated, have had substantially similar job requirements and pay provisions, and are and have been subjected to Defendants' decisions, policies, plans, programs, practices, procedures, protocols, routines, and rules, all culminating in a willful failure and refusal to pay them their proper wages, including overtime, due to a policy of time-shaving and detrimental rounding. The claims of Plaintiffs stated herein are essentially the same as those of the other FLSA Collective Plaintiffs.

14.     The claims for relief are properly brought under and maintained as an opt-in collective action pursuant to §16(b) of the FLSA, 29 U.S.C. 216(b). The FLSA Collective Plaintiffs are readily ascertainable. For purposes of notice and other purposes related to this action, their names and addresses are readily available from the Defendants. Notice can be provided to FLSA Collective Plaintiffs via first class mail to the last address known to Defendants.

## RULE 23 CLASS ALLEGATIONS – NEW YORK

15.     Plaintiff's bring claims for relief pursuant to Federal Rules of Civil Procedure ("F.R.C.P.") Rule 23, on behalf of all non-exempt employees (including, but not limited to, housing specialists, social workers, case managers, counselors, assistants, drivers, nurses, receptionists, aides, custodians, and security guards) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case, as defined herein (the "Class Period").

16.     All said persons, including Plaintiffs, are referred to herein as the "Class". The Class members are readily ascertainable. The number and identity of the Class members are able to be determined from the records of Defendants. The hours assigned and worked, the position

held, and rates of pay for each Class member are also determined from Defendants' records. For purposes of notice and other purposes related to this action, their names and addresses are readily available from Defendants. Notice can be provided by means permissible under F.R.C.P 23.

17.    The proposed Class is so numerous that a joinder of all members is impracticable, and the disposition of their claims as a class will benefit the parties and the Court. Although the precise number of such persons is unknown, the facts on which the calculation of that number are presently bases are within the sole control of Defendants. There is no doubt that there are more than forty (40) members of the Class. The Class further includes a subclass of tipped employees ("Tipped Subclass") who also number more than forty (40). Plaintiff NEOR and Plaintiff WALLACE are members of the Class they seek to represent.

18.    Plaintiffs' claims are typical of those claims that could be alleged by any member of the Class, and the relief sought is typical of the relief that would be sought by each member of the Class in separate actions. All the Class members were subject to the same corporate practices of Defendants of: (i) failing to compensate wages, including overtime, due to time-shaving, (ii) failing to compensate wages, including overtime, due to detrimental rounding, (iii) failure to compensate spread of hours premium, (iv) late payment of wages, (v) failing to provide proper wage statements per requirements of the NYLL, and (vi) failing to properly provide wage notices to Class members, at the date of hiring and annually thereafter, per requirements of the NYLL.

19.    Defendants' corporate-wide policies and practices affected all Class members similarly, and Defendants benefited from the same type of unfair and/or wrongful acts as to each Class member. Plaintiffs and other Class members sustained similar losses, injuries, and damages arising from the same unlawful policies practices, and procedures.

20.     Plaintiffs are able to fairly and adequately protect the interests of the Class and have no interest antagonistic to the Class. Plaintiffs are represented by attorneys who are experienced and competent in both class action litigation and employment litigation and have previously represented Plaintiffs in wage and hour cases.

21.     A class action is superior to other available methods for the fair and efficient adjudication of the controversy – particularly in the context of the wage and hour litigation where individual class members lack the financial resources to vigorously prosecute a lawsuit against corporate defendants. Class action treatment will permit a large number of similarly situated persons to prosecute common claims in a single forum simultaneously, efficiently, and without the unnecessary duplication of efforts and expense that numerous individual actions engender. Because of losses, injuries, and damages suffered by each of the individual Class members are small in the sense pertinent to a class action analysis, the expenses and burden of individual litigation would make it extremely difficult or impossible for the individual Class members to redress the wrongs done to them. On the other hand, important public interests will be served by addressing the matter as a class action. The adjudication of individual litigation claims would result in a great expenditure of Court and public resources; however, treating the claims as a class action would result in a significant saving of these costs. The prosecution of separate actions by individual members of the Class would create a risk of inconsistent and/or varying adjudications with respect to the individual members of the Class, establishing incompatible standards of conduct for Defendants and resulting in the impairment of class members' rights and the disposition of their interests through actions to which they were not parties. The issues in this action can be decided by means of common, class-wide proof. In

addition, if appropriate, the Court can, and is empowered to, fashion methods of efficiently manage this action as a class action.

22.     Defendants and other employers throughout the state violate the New York Labor Law. Current employees are often afraid to assert their rights out of fear of direct or indirect retaliation. Former employees are fearful of bringing claims because doing so can harm their employment, future employment, and future efforts to secure employment. Class actions provide class members who are not named in the Complaint a degree of anonymity, which allows for the vindication of their rights while eliminating or reducing these risks.

23.     There are questions of law and fact common to the Class which predominate over any questions affecting only individual class members, including:

a)  Whether Defendants employed Plaintiffs and the Class within the meaning of New Your law and applicable state laws;

b)  What are and were the policies, practices, programs, procedures, protocols, and plans of Defendants regarding the types of work and labor for which Defendants did not pay Plaintiffs and Class members properly;

c)  At what common rate, or rates subject to common methods of calculation, were and are Defendants required to pay Plaintiffs and Class members for their work;

d)  Whether Defendants properly notified Plaintiffs and Class members of their hourly rates and overtime rates;

e)   Whether Defendants properly compensated Plaintiffs and Class members for all hours worked;

f) Whether Defendants operated their business with a policy of failing to pay Plaintiffs and Class members for all their hours worked due to a policy of time-shaving;

g) Whether Defendants failed to pay Plaintiffs and Class members for all their hours worked due to detrimental rounding;

h) Whether Defendants paid Plaintiffs and Class members their lawful wages in a timely manner;

i) Whether Class members were workers required to be paid weekly pursuant to NYLL;

j) Whether Defendants provided proper wage statements informing employees of information required to be provided on wage statements as required under the NYLL and applicable state laws; and

k) Whether Defendants provided proper wage and hour notice to employees, including, among others, the rate of compensation, trade name of employer, pursuant to the requirements of the NYLL and applicable laws.

## **STATEMENT OF FACTS**

*Plaintiff Giitou Neor*

24.    In or around January 2019, Plaintiff GIITOU NEOR was hired by Defendants to work as a Social Worker for Defendants' converted shelter located at 311 East 175th Street, Bronx, NY 10457. Plaintiff's employment by Defendants terminated in or around May 14, 2020.

25.    Plaintiff NEOR applied to work for Defendants' PROMESA. Nonetheless, her interview, hiring, training, and employment was under the control of Defendants' ACACIA NETWORK. More precisely, Plaintiff worked at Defendants' ACACIA NETWORK

headquarters. At all relevant times, Plaintiff NEOR reported to and was under the supervision of ACACIA NETWORK.

26.    During her employment with Defendants, Plaintiff NEOR was compensated at a rate of $37.2726 per hour.

27.    Throughout her employment, Plaintiff NEOR was regularly scheduled to work five (5) days per week, from Mondays to Thursdays and on Sundays from 8:00 a.m. to 4:00 p.m. with one (1) unpaid hour break. On a daily basis, despite of the set schedule, Plaintiff was required to continue working until 6:00 p.m. Thus, Plaintiff worked for a total of fifty (50) hours per week.

28.    During Plaintiff's NEOR employment, Defendants failed to compensate Plaintiff for all her worked hours. Daily, Plaintiff NEOR was required to continue working without taking a free and clear break. Despite that Plaintiff was working through her meal breaks, Defendants automatically deducted one hour. Thus, Defendants failed to compensate Plaintiff NEOR five (5) hours per workweek. Similarly, FLSA Collective Plaintiffs and Class members engaged in off-the-clock work without compensation.

29.    Moreover, Defendants had a policy of detrimentally rounding Plaintiff's NEOR worked hours. When Plaintiff began working, Defendants rounded up her working time to the next quarter. Following, when Plaintiff clocked out at the end of her shift, Defendants rounded down Plaintiff's worked time to the previous quarter. For example, if Plaintiff clocked in at 9:03 a.m., Defendants would record the time as 9:15, and, if Plaintiff finished working at 5:08 p.m., Defendants would record the time entry as 5:00 p.m. This impermissible rounding may be seen in Plaintiff's paystubs. Attached as **Exhibit J** are samples of Plaintiff's paystubs reflecting that Defendants compensated Plaintiff based on quarters of an hour and failed to compensate Plaintiff

for her actual working time. As a result, Defendants failed to compensate Plaintiff for all her worked hours. Similarly, FLSA Collective Plaintiffs and Class members suffered unpaid wages from Defendants non-neutral rounding policies detrimental to Class members.

30.    Furthermore, Plaintiff NEOR regularly worked shifts exceeding ten (10) hours in duration. However, she never received any spread of hours premium for working such shifts, as required under NYLL. Similarly, FLSA Collective Plaintiffs and Class members worked shifts that exceeded ten (10) hours in duration without receiving the corresponding Spread of Hours premium.

*Plaintiff Tyrone Wallace*

31.    In or around March 21, 2018, Plaintiff TYRONE WALLACE was hired by Defendants to work as a Housing Specialist for Defendants' converted shelter located at Comfort Inn, 353 38th Street, Brooklyn, NY 11232. Plaintiff's Wallace employment with Defendants terminated on December 28, 2021.

32.    During his employment with Defendants, Plaintiff WALLACE was compensated as follows:

  a)  From March 21, 2018 to in or around March 2020, Plaintiff was compensated at a rate of $21.30 per hour.

  b)  From in or around March 2020 to December 2021, Plaintiff was compensated at a rate of $22.12 per hour.

33.    Throughout his employment, Plaintiff WALLACE was regularly scheduled to work five (5) days per week, from Mondays to Fridays from 9:00 a.m. to 5:00 p.m. with one (1) unpaid hour break. On a daily basis, despite of the set schedule, Plaintiff was required to continue working until 6:00 p.m. Thus, Plaintiff worked for a total of forty (40) hours per week.

34.     During Plaintiff WALLACE employment, Defendants failed to compensate Plaintiff for all his worked hours. On a daily basis, Plaintiff WALLACE was required to continue working without taking a free and clear break. Despite that Plaintiff was working through his meal breaks, Defendants automatically deducted one hour. Thus, Defendants failed to compensate Plaintiff WALLACE five (5) hours per workweek. Similarly, FLSA Collective Plaintiffs and Class members engaged in off-the-clock work without compensation.

35.     Moreover, Defendants had a policy of detrimentally rounding Plaintiff's WALLACE worked hours. When Plaintiff began working, Defendants rounded up his working time to the next quarter. Following, when Plaintiff clocked out at the end of his shift, Defendants rounded down Plaintiff's worked time to the previous quarter. As a result, Defendants failed to compensate Plaintiff for all his worked hours. Similarly, FLSA Collective Plaintiffs and Class members suffered unpaid wages from Defendants rounding policies.

36.     Furthermore, Plaintiff WALLACE regularly worked shifts exceeding ten (10) hours in duration. However, he never received any spread of hours premium for working such shifts, as required under NYLL. Similarly, FLSA Collective Plaintiffs and Class members worked shifts that exceeded ten (10) hours in duration without receiving the corresponding Spread of Hours premium.

37.     Throughout his employment, Defendants regularly failed to pay Plaintiff WALLACE his wages within seven (7) days of the end of the week in which Plaintiff earned them, in violation of the NYLL § 191(1)(a)(i).[1] Defendants would provide Plaintiff WALLACE his wages via paychecks biweekly despite the NYLL requiring employees like Plaintiff be compensated on a weekly basis. Therefore, Plaintiff WALLACE and Class members are owed

---

[1] *See Vega v. CM & Assoc. Constr. Mgmt., LLC*, 2019 NY Slip Op 06459, ¶¶ 1-2, 175 A.D.3d 1144, 1145-46, 107 N.Y.S.3d 286, 287-88 (App. Div. 1st Dept.)

liquidated damages equal to the late payment of wages and accrued interest on the delayed payments.

38.     Under New York Labor Law, all 'manual worker(s)' must be paid on a weekly basis.  Pursuant to the New York State Department of Labor, manual workers include non-exempt employees who spend more than twenty-five percent (25%) of their working time performing physical labor.  Here, Plaintiff WALLACE and Class members spent the majority of their day engaged in physical labor. Among other activities, Plaintiff and the Class engaged in the following: (i) cleaning the office; (ii) receiving patients and housing tenants from the waiting room and seating them in the corresponding office; (iii) escorting patients and housing tenants to their designated shelter; (iv) transporting patients and housing tenants to different locations outside the shelter such as hospitals, court house, police stations, among others; (v) cleaning rooms and accommodations; (vi) make reparations in apartments or units on an as needed basis.

39.     Further, manual workers generally include those employees like Plaintiff WALLACE and Class members whose labor is easily interchangeable with other able-bodied individuals.  As it can be seen on Defendants' job postings for positions similar to those of Plaintiff WALLACE and Class members (attached as **Exhibit K**) employees do not require specialized skills, licenses, or certifications, demonstrating the interchangeability of Class members. NYLL §191 was passed to protect individuals in the types of interchangeable jobs occupied by Plaintiff WALLACE and the Class.  Plaintiff WALLACE and the Class hold positions with Defendants which are easily trained and may be easily replaced by other able-bodied workers. The ease of replacement makes employees dependent upon their weekly earnings.  This dependance and lack of job security places Plaintiff and the Class directly in the

category of workers that NYLL intended to protect by ensuring they receive their wages on a weekly basis.

40.     Due to Defendants' improper, untimely bi-weekly payments, Plaintiff WALLACE would struggle to timely pay her own bills. Plaintiff would be forced to pay rent and credit-card bills late as he waited for his owed compensation to become available. Class members would similarly struggle to timely pay debts due to Defendants' untimely compensation policies.

41.     Defendants failed to provide Plaintiffs and Class members with proper wage statements because they failed to accurately reflect the employees' hours worked due to Defendants' policy of time shaving and rounding. *See* **Exhibit J** and **K**, where it is evident that Defendants were rounding detrimentally Plaintiffs and Class members worked time to the closest quarter and Defendants failed to compensate Plaintiffs for all their worked time.

42.     At no time during the relevant periods did Defendants provide Plaintiffs or Class members with proper wage notices, at the beginning of their employment and annually thereafter as required by the NYLL.

43.     Defendants knowingly and willfully operated their business with a policy of time shaving Plaintiffs, FLSA Collective Plaintiffs, and Class members in violation of the FLSA and NYLL.

44.     Defendants knowingly and willfully operated their business with a policy of detrimentally rounding Plaintiffs, FLSA Collective Plaintiffs, and Class members in violation of the FLSA and NYLL.

45.     Defendants knowingly and willfully operated their business with a policy of not compensating Plaintiffs and Class members the statutory Spread of Hours premiums in violation of the NYLL.

46.     Defendants knowingly and willfully operated their business with a policy of issuing late payments to compensate Plaintiff WALLACE and Class members in violation of the NYLL.

47.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements as required by the NYLL

48.     Defendants knowingly and willfully operated their business with a policy of not providing proper wage notices, at the beginning of employment and annually thereafter, pursuant to the requirements of the NYLL.

49.     Plaintiffs retained Lee Litigation Group, PLLC to represent Plaintiffs in this litigation and have agreed to pay the firm a reasonable fee for its services.

## STATEMENT OF CLAIM

### COUNT I

### VIOLATION OF THE FAIR LABOR STANDARDS ACT

50.     Plaintiffs reallege and reaver all the foregoing paragraphs of this Complaint as if fully set forth herein.

51.     At all relevant times, Defendants were and continue to be employers engaged in interstate commerce and/or the production of goods for commerce within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a). Further, Plaintiffs and FLSA Collective Plaintiffs are covered individuals within the meaning of the FLSA, 29 U.S.C. §§ 206(a) and 207(a).

52.     At all relevant times, Defendants employed Plaintiffs and FLSA Collective Plaintiffs within the meaning of the FLSA.

53.     At all relevant times, Corporate Defendants had gross annual revenues in excess of $500,000.

54.     At all relevant times, Defendants had a policy and practice of time-shaving that failed to pay Plaintiffs and FLSA Collective Plaintiffs for all hours worked, including overtime compensation.

55.     At all relevant times, Defendants had a policy and practice of detrimentally rounding that failed to pay Plaintiffs and FLSA Collective Plaintiffs for all hours worked, including overtime compensation.

56.     Defendants failed to pay Plaintiffs and FLSA Collective Plaintiffs their wages, including overtime, in the lawful amount for all hours worked due to a policy of time-shaving.

57.     Defendants failed to pay Plaintiffs and FLSA Collective Plaintiffs their wages, including overtime, in the lawful amount for all hours worked due to a policy of detrimental rounding.

58.      Records, if any, concerning the number of hours worked by Plaintiffs and FLSA Collective Plaintiffs and the actual compensation paid to Plaintiffs and FLSA Collective Plaintiffs should be in the possession and custody of the Defendants. Plaintiffs intend to obtain these records by appropriate discovery proceedings to be taken promptly in this case and, if necessary, will then seek leave of Court to amend this Complaint to set forth the precise amount due.

59.     Defendants knew of and/or showed a willful disregard for the provisions of the FLSA as evidenced by their failure to compensate Plaintiffs and FLSA Collective Plaintiffs their

proper wages, including their proper overtime premium, when Defendants knew or should have known such was due.

60.     Defendants failed to properly disclose or apprise Plaintiffs and FLSA Collective Plaintiffs of their rights under the FLSA.

61.     As a direct and proximate result of Defendants' willful disregard of the FLSA, Plaintiffs and FLSA Collective Plaintiffs are entitled to liquidated (i.e., double) damages pursuant to the FLSA.

62.     Due to the intentional, willful, and unlawful acts of Defendants, Plaintiffs and FLSA Collective Plaintiffs suffered damages in an amount not presently ascertainable of unpaid wages and unpaid overtime, plus an equal amount as liquidated damages.

63.     Plaintiffs and FLSA Collective Plaintiffs are entitled to an award of their reasonable attorneys' fees and costs pursuant to 29 U.S.C. § 216(b).

**COUNT II**

**<u>VIOLATION OF THE NEW YORK LABOR LAW</u>**

64.     Plaintiffs reallege and reaver all the foregoing paragraphs of this Complaint as if fully set forth herein.

65.     <u>At all relevant times, Plaintiffs and Class members were employed by the Defendants within the meaning of the New York Labor Law, §§2 and 651.</u>

66.     Defendants knowingly and willfully violated Plaintiffs' and Class members' rights by failing to pay them wages in the lawful amount for all hours worked due to a policy of time-shaving.

67.     Defendants knowingly and willfully violated Plaintiffs' and Class members' rights by failing to pay them wages in the lawful amount for all hours worked due to a policy of

detrimental rounding.

68.    Defendants knowingly and willfully violated Plaintiffs' and Class members' rights by failing to pay them the statutory Spread of Hours premium.

69.    Defendants knowingly and willfully violated Plaintiff's Wallace and Class members' rights by failing to pay them their wages within seven (7) days of the end of the week in which they were earned, in violation of NYLL § 191(1)(a)(i).

70.    Defendants knowingly and willfully operated their business with a policy of not providing Plaintiffs and Class members proper wage notices, at date of hiring and annually thereafter, as required under the NYLL.

71.    Defendants knowingly and willfully operated their business with a policy of not providing proper wage statements, as required under the NYLL.

72.    Due to Defendants' NYLL violations, Plaintiffs and Class members are entitled to recover from Defendants unpaid wages due to time-shaving, unpaid wages due to detrimental rounding, unpaid spread of hours premium, reasonable attorneys' fees, liquidated damages, statutory penalties, and costs, and disbursements of the action, pursuant to the NYLL.

## **PRAYER FOR RELIEF**

WHEREFORE, Plaintiffs on behalf of themselves, FLSA Collective Plaintiffs, and Class members, respectfully requests that this Court grant the following relief:

a.    A declaratory judgment that the practices complained of herein are unlawful under the Federal Labor Standards Act and New York Labor Law;

b.    An injunction against Defendants and their officers, agents, successors, employees, representatives and any and all persons acting in concert with them as

provided by law, from engaging in each of the unlawful practices, policies, and patterns set forth herein;

c. An award of unpaid compensation, including overtime, due to Defendants' policy of time-shaving;

d. An award of unpaid compensation, including overtime, due to Defendants' policy of detrimental rounding;

e. An award of unpaid Spread of Hours premium;

f. An award of liquidated damages and interest for each late payment of wages pursuant to NYLL § 191(1)(a)(i);

g. An award of statutory penalties, prejudgment, and post judgment interest, costs and expenses of this action together with reasonable attorneys' and expert fees and statutory penalties;

h. Designation of this action as a class action pursuant to sections 901 and 902 of the C.P.L.R.;

i. Designation of Plaintiffs as Representatives of the FLSA Collective Plaintiffs;

j. Designations of Plaintiffs as Representatives of the Class; and

k. Such other and further relief as this Court deems just and proper.

## <u>JURY DEMAND</u>

Pursuant to Rule 38(b) of the Federal Rules of Civil Procedure, Plaintiffs demand trial by jury on all issues so triable as of right by jury.

Dated: June 8, 2022          Respectfully submitted,
      New York, New York

                      By:   */s/ C.K. Lee*          
                            C.K. Lee, Esq.

                        **LEE LITIGATION GROUP, PLLC**
                        C.K. Lee (CL 4086)
                        Anne Seelig (AS 3976)
                        148 W. 24th Street, 8th Floor
                        New York, NY 10011
                        Tel.: 212-465-1180
                        Fax: 212-465-1181
                        *Attorneys for Plaintiffs*
                        *FLSA Collective Plaintiffs,*
                        *and the Class*