UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
--------------------------------------------------------------X
GIITOU NEOR and TYRONE WALLACE, *on*
*behalf of themselves, FLSA Collective Plaintiffs, and*
*the Class,*                                                    Case No. 22-cv-04814-ER

                          Plaintiffs,

            -against-

ACACIA NETWORK, INC.,
       d/b/a ACACIA NETWORK,
ACACIA NETWORK HOUSING, INC.
       d/b/a ACACIA NETWORK,
PROMESA RESIDENTIAL HEALTH CARE
FACILITY, INC.,
       d/b/a PROMESA, and,
JOHN DOES CORP 1-100,

                          Defendants.
--------------------------------------------------------------X


**DEFENDANTS' MEMORANDUM OF LAW IN SUPPORT OF THEIR PARTIAL
MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED CLASS ACTION
COMPLAINT PURSUANT TO FED. R. CIV. P. 12(b)(1) AND (6)**


**LEWIS BRISBOIS BISGAARD & SMITH LLP**
*Attorneys for Defendants Acacia Network, Inc.,*
*Acacia Network Housing, Inc, and Promesa*
*Residential Health Care Facility, Inc.*
77 Water Street, Suite 2100
New York, New York 10005
Tel: 212.232.1300

## **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................. 1

ARGUMENT ........................................................................................................... 3

    I.     THE APPLICABLE LEGAL STANDARDS FOR A MOTION TO DISMISS ... 3

        A.    Fed. R. Civ. P. 12(b)(1) ................................................................. 3

        B.    Fed. R. Civ. P. 12(b)(6) ................................................................. 3

        C.    *Twombly* and *Iqbal* Pleading Standards ....................................... 4

    II.  PLAINTIFFS' CLAIM FOR UNTIMELY WAGE PAYMENTS MUST BE
        DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD ANY FACTS TO
        SUPPORT THIS CLAIM AND THE NYLL'S REQUIREMENT FOR WEEKLY
        WAGE PAYMENTS DOES NOT APPLY TO NOT-FOR-PROFIT
        ORGANIZATIONS ............................................................................... 5

    III.    PLAINTIFFS' CLAIM OF UNLAWFUL ROUNDING PRACTICES SHOULD
        BE DISMISSED AS A MATTER OF LAW BECAUSE THE FLSA AND NYLL
        PERMITS ROUNDING TO THE NEAREST QUARTER OF AN HOUR ......... 6

    IV.    PLAINTIFFS' CLAIM FOR SPREAD-OF-HOURS COMPENSATION
        PURSUANT TO THE NYLL MUST BE DISMISSED AS A MATTER OF LAW
        BECAUSE PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO
        SUPPORT THIS CLAIM ....................................................................... 8

    IV.    PLAINTIFFS CANNOT MAINTAIN A CLASS OR COLLECTIVE ACTION
        FOR FAILURE TO PROVIDE WAGE STATEMENTS AND WAGE NOTICES
        UNDER THE NYLL PURSUANT TO RULE 12(b)(1) ....................................... 9

    IV.    LEAVE TO AMEND SHOULD BE DENIED BECAUSE ANY ATTEMPT
        WOULD BE FUTILE ......................................................................... 10

CONCLUSION ..................................................................................................... 11

## PRELIMINARY STATEMENT

Acacia Network, Inc. ("Acacia"), Acacia Network Housing, Inc. ("Acacia Network"), and Promesa Residential Health Care Facility, Inc. ("Promesa") (collectively, "Defendants"), by their attorneys Lewis Brisbois Bisgaard & Smith LLP, respectfully submit this memorandum of law in support of their motion to dismiss, pursuant to Federal Rule of Civil Procedure ("Fed. R. Civ. P.") 12(b)(1) and (6), certain counts of the First Amended Class Action Complaint ("Amended Complaint") (Dkt. 20) filed by Plaintiffs Giitou Neor ("Neor") and Tyrone Wallace ("Wallace") (collectively, "Plaintiffs").

On June 8, 2022, Plaintiffs filed a class/collective action litigation against Defendants for alleged violations of the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), including claims for unpaid overtime due to time shaving and rounding practices under the FLSA and NYLL, compensation for late payment of wages under the NYLL, unpaid spread of hours premiums under the NYLL, and failure to provide proper wage statements and wage notices under the NYLL. (See Dkt. 1, Complaint).

By letter to the Court, dated August 4, 2022, Defendants outlined various deficiencies in Plaintiffs' Complaint and requested permission to file a motion to dismiss pursuant to Fed R. Civ. P. 12(b)(1) and (6). (Dkt. 17). On August 9, 2022, the Court granted Defendants leave to move after Plaintiffs filed an amended complaint. (Dkt. 19). On August 12, 2022, Plaintiff filed their Amended Complaint in an attempt to cure the defects stated in Defendants' pre-motion letter. Plaintiffs continue to erroneously assert, however, that Defendants' rounding policies are unlawful under the FLSA and NYLL, even though the applicable regulation explicitly permits it.  Further, although the Amended Complaint includes additional details regarding the basis for Plaintiffs' alleged overtime claims, it omits significant, mandatory details related to their alleged claim that

1

Defendants failed to pay them spread-of-hours compensation and failed to provide proper wage statements and wage notices pursuant to the NYLL. It also fails to specify any details to substantiate Plaintiffs' claim for untimely wage payments. In fact, the only reference to such claims is contained in the introductory paragraphs and/or demand for damages. As such, it appears that Plaintiffs have withdrawn their causes of action for failure to pay spread-of-hours premiums, failure to provide accurate wage statements and wage notices, and untimely wage payments pursuant to the NYLL.

To the extent these claims have not been withdrawn, they should be dismissed for lack of standing and failure to state a claim for relief pursuant to Fed. R. Civ. P. 12(b)(1) and (6), respectively. As demonstrated below, Plaintiffs have failed to state a claim under Rule 12(b)(6) because Defendants' rounding policy is permissible under the law, and Plaintiffs have not plead their causes of action for late payments and spread-of-hours pay with the requisite degree of specificity needed to sustain such a claim. Additionally, Defendants, as not-for-profit organizations,  are not subject to the NYLL's requirement for weekly wage payments. Plaintiffs also lack standing to bring class or collective claims for failure to receive proper wage statements or notices under Rule 12(b)(1) because technical statutory violations, such as of the wage statement and wage notice provisions of the NYLL, are insufficient to confer Plaintiffs Article III standing in federal court.

## ARGUMENT

## I.

## THE APPLICABLE LEGAL STANDARDS FOR A MOTION TO DISMISS

### A.  Fed. R. Civ. P. 12(b)(1)

Unlike a 12(b)(6) motion, under Rule 12(b)(1) a court may properly dismiss a claim for lack of subject matter jurisdiction when it "lacks the statutory or constitutional power to adjudicate it." *Cortlandt St. Recovery Corp. v. Hellas Telecomms.*, S.A.R.L., 790 F.3d 411, 416-17 (2d Cir. 2015). "A plaintiff asserting subject matter jurisdiction has the burden of proving by a preponderance of the evidence that it exists." *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000). Thus, while the movant bears the burden of proof on a 12(b)(6) motion, "the plaintiff invoking the court's jurisdiction bears the burden on a 12(b)(1) motion." *Alphas v. City of N.Y. Bus. Integrity Comm's*, No. 1:15-CV-03424, 2017 WL 1929544, at *2 (S.D.N.Y. May 9, 2017). Accord *Keepers, Inc. v. City of Millford*, 807 F.3d 24, 38 (2d Cir. 2015).

### B.  Fed. R. Civ. P. 12(b)(6)

Pursuant to Fed. R. Civ. P. Rule 8(a), a pleading must give "fair notice" of both the claim and "the grounds upon which it rests" in order to enable the opposing party to answer, prepare for trial and identify the nature of the case." *Dura Pharm., Inc. v. Broudo*, 444 U.S. 336, 346 (2005) (citation omitted). Under Rule 8(a)(2), a pleading must contain a "short and plain statement of the claim showing that the pleader is entitled to relief, in order to give the defendant fair notice of what the  . . . claim is and the grounds upon which it rests." *Twombly*, 550 U.S. at 545-55 (internal quotations omitted).  Accordingly, the plaintiff "must allege . . . those facts necessary to a finding of liability." *Amron v. Morgan Stanley Invest. Advisors Inc.*, 464 F.3d 338, (2d Cir. 2006) (citing *Broudo*, 444 U.S.at 346-7).

A motion to dismiss tests the legal sufficiency of the claim stated in the complaint.  Fed. R. Civ. P. 12(b)(6).  *Conley v. Gibson*, 355 U.S. 41, 45-46 (1957).  Rule 12(b)(6) allows a party to move for dismissal based on the pleader's "failure to state a claim upon which relief can be granted."  The Court should dismiss under Rule 12(b)(6) a pleading that lacks any cognizable basis in law and should disregard "legal conclusions, deductions or opinions couched as factual allegations." *In re NYSE Specialists Sec. Litig.,* 503 F.3d 89, 95 (2d Cir. 2007); *United States v. Bonanno Organized Crime Family of La Cosa Nostra*, 879 F. 2d 20, 27 (2d Cir. 1989). To survive a Rule 12(b)(6) motion to dismiss, a complaint must plead "enough facts to state a claim to relief that is plausible on its face." *Ruotolo v. City of New York*, 514 F.3d 184, 188 (2d Cir. 2008) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544 (2007)). The Court "must accept as true all allegations in the complaint and draw all reasonable inferences in favor of the non-moving party." *Vietnam Ass'n for Victims of Agent Orange v. Dow Chem. Co.,* 517 F.3d 104, 115 (2d Cir. 2008). However, a case will not be allowed to proceed absent "a complaint with enough factual matter (taken as true) to suggest the required element[s]" of a claim.  *Twombly*, 550 U.S. at 556.

### C. *Twombly* and *Iqbal* Pleading Standards

As the Supreme Court has explained, a "plaintiff's obligation to provide the 'grounds' of his 'entitle[ment] to relief" requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do[.]" *Id*. at 555. To survive a Rule 12(b)(6) motion, a complaint must set forth sufficient factual allegations that are "enough to raise a right to relief above the speculative level." *Id*. A complaint must contain sufficient factual matter to state a claim that is plausible on its face, or it must be dismissed.  *Ashcroft v. Iqbal,* 129 S. Ct. 1937, 1949 (2009).

Where the facts alleged are "merely consistent with" defendant's liability, the complaint "stops short of the line between possibility and plausibility of 'entitlement to relief.'" *Iqbal*, 129 S. Ct. at 1949 (citing *Twombly*, 550 U.S. at 557).  If the "well-pleaded facts do not permit the court to infer more than the mere possibility of misconduct, the complaint has alleged – but it has not shown – that the pleader is entitled to relief." *Id.* at 1950 (internal quotations omitted). Specifically, where plaintiffs' complaint has not "nudged their claims across the line from conceivable to plausible, their complaint must be dismissed." *Twombly*, 550 U.S. at 570.

## II.

### PLAINTIFFS' CLAIM FOR UNTIMELY WAGE PAYMENTS MUST BE DISMISSED BECAUSE PLAINTIFFS FAIL TO PLEAD ANY FACTS TO SUPPORT THIS CLAIM AND THE NYLL'S REQUIREMENT FOR WEEKLY WAGE PAYMENTS DOES NOT APPLY TO NOT-FOR-PROFIT ORGANIZATIONS

Plaintiffs broadly allege pursuant to Count II that Defendants failed to pay them timely wages in violation of the NYLL. (Amended Complaint ("A.C.") ¶ 2). Glaringly, however, Plaintiffs fail to plead any specific details to substantiate this claim, including what Plaintiffs' designated pay days were, when Plaintiffs were actually paid, when they *should* have been paid under the law, and the frequency of the alleged late payments. In fact, aside from demanding compensation for late payments, Plaintiffs allege *no* facts whatsoever regarding the basis for their claim, their damages/injuries, how Defendants violated the NYLL, or any specific instance of a late payment.[1]

Courts have dismissed claims for late payments for lack of particularity even when additional facts are pleaded. For example, in *Pressley*, plaintiff's allegations that two defendants

---

[1] Paragraphs 37-40 of the Complaint regarding late wage payments were not included in the Amended Complaint.

"routinely waited more than one month before paying [plaintiff]" for work performed were wholly conclusory and could not withstand dismissal. *Pressley v. Ford Models, Inc*., 2018 N.Y. Misc. LEXIS 1790, *22, 2018 NY Slip Op. 30892(U) (Sup. Ct. N.Y. Co. May 9, 2018). Because Plaintiffs fail to sufficiently plead enough facts to state a claim for relief, their claim for untimely payments should be dismissed. *See Morgan v. Ward*, No. 1:14-CV-7921 (GHW), 2016 WL 427913, at *3 (S.D.N.Y. Feb. 2, 2016) (Woods, J.) (citations omitted) (the gravamen of the complaint must be "more than an unadorned, the-defendant-unlawfully-harmed me accusation.").

Plaintiffs' claim should also be dismissed for another reason. Assuming *arguendo* that Plaintiffs are alleging that Defendants violated the NYLL by failing to pay them on a weekly basis, such requirement is not applicable to non-profit organizations.  As Plaintiffs admit, Acacia, Acacia Network, and Promesa are each "domestic-not-for-profit corporation[s] organized under the laws of New York." (A.C. ¶¶  8(a), (b), (c). NYLL § 191(1)(a)(i) provides that employees of non-profitmaking organizations shall be paid in accordance with the agreed terms of employment but not less frequently then semi-monthly. As such, Plaintiffs' claim should be dismissed for failure to state a claim because Defendants were not required to pay Plaintiffs on a weekly basis.

### III.

**PLAINTIFFS' CLAIM OF UNLAWFUL ROUNDING PRACTICES SHOULD BE DISMISSED AS A MATTER OF LAW BECAUSE THE FLSA AND NYLL PERMITS ROUNDING TO THE NEAREST QUARTER OF AN HOUR**

Plaintiffs contend in Count I and II that Defendants implemented unlawful rounding policies. Specifically, they allege that Defendants rounded their "clock-in times up and clock-out times down in order to minimize employee compensation." (A.C. ¶¶ 37, 46). The examples Plaintiffs provide to illustrate Defendants' supposedly impermissible rounding reflect that Defendants rounded to the nearest quarter. But the claim is not valid because such rounding is

permissible under state and federal law. 29 CFR §785.48(b) states that the practice of rounding employees' start and stop time "to the nearest 5 minutes, or the nearest one-tenth or *quarter of an hour*" is permissible provided it does not result over a period of time in failure to compensate employees properly for all the time they have actually worked (emphasis added). The regulation points out that this arrangement presumably averages out so the employees are compensated for all the time they actually work. *Id*. As this Court has recognized, although no New York statute or regulation addresses the permissibility of rounding policies, the New York State Department of Labor follows the FLSA and related regulations in enforcing Articles 6 and 19 of the NYLL. *Canelas v. World Pizza*, No. 14-CV-7748(ER), 2017 U.S. Dist. LEXIS 501615, *25 (S.D.N.Y. Mar. 31, 2017) (internal citation omitted); *See also,* Request for Opinion re: Rounding of Time, R0-09-0129, at 1-2 (N.Y. Dept. of Labor, Feb. 25, 2010) (stating, "It has been the Department's longstanding policy to follow the principles set forth in 29 CFR §785.48(b) in its enforcement of Articles Six (Payment of Wages) and Nineteen (Minimum Wage) of the [NYLL]") (this Opinion Letter is annexed as an Appendix). Further, courts have also held that rounding to nearest quarter is "precisely the type of policy found to be permissible under the FLSA…" *Vazquez v. Victor's Café 52nd St. Inc.,* No. 18-CV-10844, 2019 U.S. Dist. LEXIS 165963, *9 (S.D.N.Y. Sept. 26, 2019).

As such, Defendants' rounding policies are not unlawful, and Plaintiffs' claims should be dismissed for failure to state a claim.

**IV.**

**PLAINTIFFS' CLAIM FOR SPREAD-OF-HOURS COMPENSATION PURSUANT TO THE NYLL MUST BE DISMISSED AS A MATTER OF LAW BECAUSE PLAINTIFFS FAIL TO PLEAD SUFFICIENT FACTS TO SUPPORT THIS CLAIM**

Count II of the Amended Complaint fails to state a claim for relief against Defendants for spread-of-hours violations because this claim is insufficiently detailed. Although Plaintiffs are not required to plead their hours with mathematical precision, they are required to draw on their memory and experience to file complaints that present sufficiently detailed factual allegations. *Ahmed v. Dominos Pizza LLC*, No. 21-cv-3113, 2022 U.S. Dist. LEXIS 122111, *14 (S.D.N.Y. July 11, 2022) (internal citation omitted). Here, both Plaintiffs fail to plead that they worked shifts that exceeded 10 hours in duration or any other relevant details to support their claim, including the specific number of hours worked for which spread-of-hours pay should have been paid, or how many times per week they worked over 10 hours per shift. Conspicuously, all substantive allegations regarding their spread-of-hours claims in the initial Complaint were removed from the Amended Complaint.[2] The only spread-of-hours references that are made in the Amended Complaint are contained in the introductory paragraph and demand for damages. (A.C. ¶¶ 2, 74). Further, Plaintiff Wallace admits that he only worked nine hours per day – not 10. (A.C. ¶ 45).

As such, it appears that Plaintiffs have withdrawn their cause of action for unpaid spread-of-hours premiums; and if they have not, it should nonetheless be dismissed for failure to state a claim.

---

[2] Paragraphs 30 and 36 from the Complaint were not included in the Amended Complaint.

**V.**

**PLAINTIFFS CANNOT MAINTAIN A CLASS OR COLLECTIVE ACTION FOR FAILURE TO PROVIDE WAGE STATEMENTS AND WAGE NOTICES UNDER THE NYLL PURSUANT TO RULE 12(b)(1)**

Plaintiffs allege in Count II that Defendants failed to provide them and class and collective members with proper wage statements and wage notices. (A.C. ¶¶ 48, 49). Recent caselaw, however, makes clear that Plaintiffs lack standing to assert such claims on a class wide basis under the NYLL. For example, in *Sevilla v. House of Salads One LLC*, No. 20-cv-6072, 2022 U.S. Dist. LEXIS 58496, **3-4, 2022 WL 954740 (E.D.N.Y. Mar. 30, 2022), a group of employees brought claims on behalf of a putative class alleging, *inter alia*, that their employer failed to provide them with accurate wage statements and notices. The Court (Chen, J.) ruled that the failure to provide notices was a "technical violation" that did not cause injury to the plaintiffs. *Id*. at 18. The Court then dismissed the plaintiffs' wage statement and wage notice claims for lack of subject matter jurisdiction because "[t]echnical statutory violations that do not lead 'to either a tangible injury or something akin to a traditional cause of action' cannot sustain Article III standing in federal court." *Id*. (citations omitted). *Accord Wang v. XBB, Inc.*, No. 18-CV-7341, 2022 U.S. Dist. LEXIS 57481, *35, 2022 WL 912592  (E.D.N.Y. Mar. 29, 2022); *Francisco v. NY Tex Care, Inc.*, No. 19-CV-1649, 2022 U.S. Dist. LEXIS 55633 *17, 2022 WL 900603 (E.D.N.Y. Mar. 28, 2022) (declining to certify a class under Rule 23(a) because the failure to receive wage statements setting forth deductions, gross wages and the employer's phone number was not a tangible injury sufficient to create standing) citing *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) ("It is well established that 'a plaintiff must demonstrate standing for each claim she seeks to press.'") quoting *DaimlerChrysler Corp. v. Cuno*, 547 U.S. 332, 335, 126 S. Ct. 1854 589 (2006); *Garrido v. House of Salads One LLC*, No. 20-CV-6072, 2022 U.S Dist. LEXIS 58496, *18, 2022 WL 954740

9

(E.D.N.Y. Mar. 30, 2022) (dismissing plaintiffs' claims of failure to provide wage statements and wage notices due to lack of standing).

Magistrate Judge Netburn in the Southern District recently addressed this same issue. She required briefing because:

> Our sister courts have consequently found that allegations of 'technical' violations of the New York Labor Law (NYLL), specifically the NYLL's wage notice and statement requirements, are insufficient alone to confer Article III standing on plaintiffs with respect to those claims.

*Shi v. TL & CG Inc.*, No. 19-CV-08502, 2022 U.S. Dist. LEXIS 103609, *1 (S.D.N.Y. June 9, 2022) citing *Sevilla*, 2022 U.S. Dist. LEXIS 58496; *Wang*, 2022 U.S. Dist. LEXIS 57481; *Francisco*, 2022 U.S. Dist. LEXIS 55633.  Magistrate Netburn then ruled that the plaintiff in that case lacked standing to maintain a claim for wage statement violations.  *Shi v. TL & CG Inc.*, 19-CV-08502 (SN) (July 11, 2022) (this decision is annexed as an Appendix).[3]

In sum, Plaintiffs cannot maintain a class or collective action for failure to receive accurate wage statements or wage notices and their claims should be dismissed pursuant to Fed. R. Civ. P. 12(b)(1).

## VI.

## LEAVE TO AMEND SHOULD BE DENIED
## BECAUSE ANY ATTEMPT WOULD BE FUTILE

Fed. R. Civ. P. 15(a)  instructs that leave to amend must be freely given. *Foman v. Davis*, 371 U.S. 178, 182 (1962).  However, it is "well established that leave to amend a complaint need not be granted when amendment would be futile." *Ellis v. Chao*, 336 F.3d 114, 127 (2d Cir. 2003);

---

[3] Plaintiffs would fare no better in state court. Class action claims in New York state court must be certified pursuant to Section 901 of the CPLR, which prohibits the certification of statutory claims seeking to recover penalties on a class-wide basis (unless the statute specifically authorizes class actions, which NYLL §198(1-d) does not).

*See Leonelli v. Pennwalt Corp.*, 887 F.2d 1195, 1198 (2d Cir.1989) ("It is hardly self-evident that they could transform the facts pleaded into a sufficient allegation").

Here, Plaintiffs have already filed an amended complaint. They had an opportunity to amend their pleadings to include sufficient allegations to state a claim for untimely wage payments, impermissible rounding, unpaid spread-of-hours compensation, and failure to provide proper wage statements and notices, yet they have not done so. Plaintiff should not be allowed to waste additional judicial resources in what will ultimately be an unsuccessful third try. *See Joblove v. Barr Labs, Inc.*, 466 F.3d 187, 220 (2d Cir. 2006) ("Granting leave to amend is futile if it appears that plaintiff cannot address the deficiencies identified by the court and allege facts sufficient to support the claim").

Therefore, the Court should not grant Plaintiffs leave to amend the Amended Complaint as doing so would be futile and a waste of judicial resources.

## CONCLUSION

For the foregoing reasons, it is respectfully submitted that Defendants' motion to dismiss be granted in its entirety. Plaintiffs' claims of untimely wage payments, unlawful rounding policies, unpaid spread-of-hours compensation, and class claims of failure to provide proper wage statements and wage notices in the Amended Complaint should be dismissed with prejudice, and Defendants should be awarded reasonable attorneys' fees and costs incurred in defending these claims, along with any other and further such relief as the Court sees fit.

Dated: New York, New York
        August 26, 2022

11

LEWIS BRISBOIS BISGAARD & SMITH LLP

By:  /s/ Simi Bhutani
     Simi Bhutani, Esq.
     Peter T. Shapiro, Esq.
     *Attorneys for Defendants Acacia Network, Inc.,*
     *Acacia Network Housing, Inc., and Promesa*
     *Residential Health Care Facility, Inc.*
     77 Water Street, Suite 2100
     New York, New York 10005
     212-232-1362
     Simi.Bhutani@lewisbrisbois.com
     Peter.Shapiro@lewisbrisbois.com

12

**<u>CERTIFICATE OF SERVICE</u>**

Simi Bhutani, an attorney duly admitted to practice before this Court, certifies that on

August 26, 2022, she caused Defendants' Memorandum of Law in Support of Their Partial Motion

to Dismiss Plaintiff's First Amended Class Action Complaint, to be filed and served via ECF upon:

C.K. Lee (via ECF)
LEE LITIGATION GROUP, PLLC
148 West 24th St., Eighth Flo.
New York, New York 10001
*Attorneys for Plaintiffs, FLSA*
*Collective Plaintiffs, and the Class*

/s/ Simi Bhutani_____
Simi Bhutani

13

# APPENDIX



**New York State Department of Labor**
**David A. Paterson,** *Governor*
**Colleen Gardner,** *Commissioner*

February 25, 2010



Re:   Request for Opinion
       Rounding of Time
       RO-09-0129

Dear ███████████:

  This letter is written in response to your letter of September 15, 2009 in which you request an opinion as to whether an employer's rounding practice described therein is permissible under the New York State Labor Law. Please accept my apology for the delay in responding to your letter. Your letter states that an employer which operates a hotel containing a full-service restaurant uses an electronic punch clock to record the employees' hours worked. The bookkeeping software used by the employer automatically rounds the "punch time" to the nearest seven minute interval. In the example used in your letter, an employee who punches in at 7:54 or 8:06 is credited with punching in at 8:00. As your letter poses six questions arising under these circumstances, the questions posed in your letter are quoted and addressed individually below in the order posed by you.

*1. Is the above-described rounding practice lawful under [the] New York Labor Law?*

  Federal regulation 29 CFR §785.48(b) provides as follows:

> (b) "Rounding" practices. It has been found that in some industries, particularly where time clocks are used, there has been the practice for many years of recording the employees' starting time and stopping time to the nearest 5 minutes, or to the nearest one-tenth or quarter of an hour. Presumably, this arrangement averages out so that the employees are fully compensated for all the time they actually work. For enforcement purposes this practice of computing working time will be accepted, provided that it is used

in such a manner that it will not result, over a period of time, in
failure to compensate the employees properly for all the time they
have actually worked.

It has been this Department's longstanding policy to follow the principles set forth in 29 CFR
§785.48(b) in its enforcement of Articles Six (Payment of Wages) and Nineteen (Minimum
Wage) of the Labor Law. Applying those principles to the situation described in your letter, it
appears that the rounding practice you describe does not, on its face, violate the requirements of
the New York State Labor Law.

2. *Does the Department of Labor have a guideline to determine what is appropriate
rounding of punch records under [the] New York Labor Law? As noted above, the
employer utilizes an electronic time clocks [sic] and software later rounds [sic] the
punch using seven-minute increments, which we understand is relatively common in the
hospitality industry.*

The Department, as noted above, follows the principles set forth in 29 CFR §785.48(b)
with regard to rounding. That regulation recognizes that rounding is commonly accepted in
industry at intervals ranging from five to fifteen minutes. Accordingly, since the rounding
interval described in your letter falls within the permissible intervals in 29 CFR §785.48(b), it is
the opinion of this Department that such interval is permissible under the New York State Labor
Law.

3. *If a non-exempt employee is scheduled to work 37.5 hours per week, but the punch reflect
38.75 hours for the week, does the rounding of 1.25 hours of punch time back to 37.5
hours violate [the] New York Labor Law?*

As stated above, rounding practices are permissible provided that they are used in such a
manner that it will not result in a failure to compensate employees properly for all the time they
have actually worked over a period of time. Your question does not provide enough information
to evaluate whether the rounding of 38.75 punch hours to 37.5 hours violates the provisions
described above since the other surrounding workweek's rounding practices were not provided.
However, so long as the employee is compensated properly for all hours worked over a period of
time, e.g. through rounding 36.25 punch hours to 37.5 hours worked in the previous week, such
practice, as described, is permissible under the New York State Labor Law.

4. *Assume that an employee is regularly scheduled to work 37.5 hours per week. If he or
she begins work early or works after the regular finishing time, is additional straight time
compensation due under [the] New York Labor Law? Under the FLSA, no such payment
would be required assuming the employee was paid more than the minimum wage and
did not exceed 40 hours of work in a workweek. See, Wage and Hour Opinion Letter,
FLSA 2008-7NA, (May 15, 2008). Does New York follow the federal law on this issue, or
does [the] New York Labor Law specifically require the employee to be paid for all hours
worked at the stated, regular, hourly rate of pay?*

In responding to this question, it is important to note that the underpayment which you describe does not appear to be the result of a rounding practice. Therefore, federal regulation 29 CFR §785.48(b) is inapplicable to justify the non-payment of wages for all hours worked during the workweek based on prior or subsequent rounding of time. Section 191 of the Labor Law requires employees be paid for all hours worked no later than the time period specified by that Section. Please be advised that the FLSA does not prevent the states from enacting wage and overtime laws and regulations that are more beneficial to workers than the FLSA (*see* 29 U.S.C. §218; *Manliguez v. Joseph*, 226 F. Supp.2d 377 (EDNY 2002)). Therefore, the requirement in Section 191 of the Labor Law that employees be paid for all hours worked is enforceable upon employers in New York State notwithstanding any provision in or interpretation of the FLSA that provides otherwise.

5. *Would the Department of Labor change its response to Question 4 if the employee was advised in writing to punch in and out within 7 minutes of their start time, not to work any unrecorded or "off the clock" work hours at any time and not to work overtime unless such time was pre-approved, all under threat of disciplinary action?*

Employees must be paid for all hours suffered or permitted to work regardless of whether such time was approved or in disregard of the employer's policies. Therefore, the response to question 4 would remain unchanged.

6. *If an employee receives premium pay that is not otherwise due (e.g., time and one half for working over 8 hours in a day) can the employer use that as a credit against any additional straight time pay or overtime pay that may be due in that workweek?*

Assuming you are referring to the State minimum wage requirement with your use of the phrase "straight time pay," please be advised that the New York State Labor Law requires that employees be paid for all hours worked per workweek at a rate not less than the minimum wage specified therein. (12 NYCRR §142-2.1 *et seq.*) Nothing in the New York State Labor Law prohibits an employer from taking credit for "premium pay" not otherwise required to be paid to the employee in satisfaction of its weekly minimum wage obligation, so long as taking such a credit does not contravene any other provision contained therein and such credit is provided as part of the employee's rate of pay. For example, an employer that pays its employees at the minimum wage rate of $7.25 per hour plus an additional five dollars per hour for all night shift hours may use the additional night shift payment to satisfy any other minimum wage obligations owed to that employee for that work week, including spread of hours and call-in pay. Therefore, an employer can use "premium pay" as a credit against its State minimum wage obligations.

With regard to the overtime pay requirements of the New York State Labor Law, please be advised that employees are generally required to be paid for all overtime hours at a rate not less than one and one-half times their regular rate of pay. (12 NYCRR §142-2.2.) When an employee's regular rate of pay is on a non-hourly basis, as would be the case where credits are taken for previous increased rates of pay, the employee's regular rate is determined by dividing the total hours worked during the week into the employee's total earnings, which necessarily takes any additional "premium pay" into account. (*see*, 12 NYCRR §142-2.16.) Under the example in the preceding paragraph, an employer may not use the night shift premium pay as a

credit for satisfaction of any overtime paid to an employee. Any amounts paid to the employee, including the night shift premium, must be included in the employee's regular rate of pay by which that employee's overtime rate is calculated. Therefore, an employer cannot use such "premium pay" as a credit against additional overtime pay due to an employee in any workweek, since that pay must be included in determining the employee's regular rate of pay.

This opinion is based on the information provided in your letter of September 15, 2009. A different opinion might result if the circumstances outlined in your letter changed, if the facts provided were not accurate, or if any other relevant fact was not provided.

Very truly yours,

Maria L. Colavito, Counsel

By:   Jeffrey G. Shapiro
      Associate Attorney

JGS:mp
cc:    Carmine Ruberto

 Neutral

As of: August 26, 2022 7:59 PM Z

# *Shi v. TL & CG Inc.*

United States District Court for the Southern District of New York

July 11, 2022, Decided; July 11, 2022, Filed

19-CV-08502 (SN)

**Reporter**

2022 U.S. Dist. LEXIS 121980 *; 2022 WL 2669156

YUEFENG SHI, Plaintiff, -against- TL & CG INC., et al., Defendants.

**Prior History:** *Yuefeng Shi v. TL & CG Inc., 2020 U.S. Dist. LEXIS 142853, 2020 WL 4586359 (S.D.N.Y., Aug. 10, 2020)*

## Core Terms

notice, employees, summary judgment, minimum wage, overtime, per hour, tip, hired, per day, bicycle, damages, spread, summary judgment motion, Counter, records, wages, electric, rate of pay, non-movant's, promised, parties, meal, service employee, material fact, prejudgment, allowance, earnings, monthly, attorney's fees, credibility

**Counsel: [*1]** For Yuefeng Shi, on his own behalf and on behalf of others similarly situated, Plaintiff: Leanghour Lim, LEAD ATTORNEY, Aaron B. Schweitzer, John Troy, Troy Law PLLC, Flushing, NY.

For TL & CG Inc., doing business as, Han, Guoyong Chen, also known as, Guo Yong Chen, also known as, John 01 Doe, Guoqing Chen, also known as, Guo Qing Chen, also known as, Peter Chen, also known as, Peter Doe, Yi Nen Chen, also known as, Yinen Chen, Defendants: Joel Spivak, The Law Firm of Joel Spivak, Great Neck, NY.

**Judges:** SARAH NETBURN, United States Magistrate Judge.

**Opinion by:** SARAH NETBURN

## Opinion

### OPINION & ORDER

**SARAH NETBURN, United States Magistrate Judge**:

From February 2018 until July 2019, Plaintiff Yuefeng Shi worked as a deliveryman for TL & CG Inc. d/b/a Han Sushi and its owners/operators Guoyong Chen a/k/a Guo Yong Chen, Guoqing Chen a/k/a Guo Qing Chen a/k/a Peter Chen, Jian Xiang Yang a/k/a Jianxiang Yang, and Yi Nen Chen a/k/a Yinen Chen (collectively, "the Defendants").[1] Defendants' compensation practices allegedly violated the *Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 et seq.*, and the New York Labor Law ("NYLL"). Plaintiff now moves for summary judgment on all claims and seeks compensatory, statutory, and liquidated damages, prejudgment interest, and an award of reasonable **[*2]** attorneys' fees and costs.[2] The motion is DENIED.

### BACKGROUND

The following facts are taken from Plaintiff's Statement of Undisputed Material Facts, ECF No. 78 Ex. 10 (Pl.'s 56.1), and Defendants' Counterstatement of Undisputed Material Facts, ECF No. 82 (Defs.' Counter 56.1), and other documents, including the record and the Court's prior opinions. See *Fed. R. Civ. P. 56(c)(3)*.

Plaintiff worked as a deliveryman at Han Sushi from February 8, 2018, until October 4, 2018, and again from November 21, 2018, to July 30, 2019. Pl.'s 56.1 ¶ 14. He was not exempt from receiving overtime. Id. ¶ 15. During the period relevant to this case, TL & CG Inc. was a business engaged in interstate commerce with gross sales in excess of $500,000 per year, was incorporated in New York, and had more than

---

[1] Plaintiff also named Defendant Jian Xiang Yang a/k/a Jianxiang Yang in his complaint but does not move for summary judgment against him. Because Jianxiang Yang has not appeared, Plaintiff plans to move separately for a default judgment against him. See ECF No. 79 (Pl. Br.) at 1 n.1.

[2] On February 28, 2020, Plaintiff moved for conditional certification of a FLSA collective. ECF No. 32. The Court granted that motion, ECF No. 55, and authorized Plaintiff's proposed notice and consent to join, ECF No. 59. There is no evidence that any opt-in plaintiffs have sought to join the case. Accordingly, I resolve Plaintiff's motion for summary judgment as to him only.

10 employees at all times. Id. ¶¶ 3-6. Guoyong Chen was president of TL & CG Inc. and owned 100% of its shares. Id. ¶¶ 7-8. He had the power to hire and fire employees of TL & CG Inc., supervised and controlled employee work schedules and conditions of employment at Han Sushi, determined employees' rates and methods of payment, and maintained employee records for TL & CG Inc. Id. ¶ 9.

Plaintiff alleges that Guoqing Chen hired him, [*3] paid him, and arranged his working schedule. Id. ¶ 10. Citing two checks dated March 31, 2018, and July 31, 2019, Plaintiff also claims that Guoqing Chen signed his paychecks. Id. ¶ 11; ECF No. 78 Ex. 6. Defendants respond that Guoqing Chen was the person who interviewed, hired, and paid Plaintiff and who provided him with his wage notice, but that sometimes, when Guoyong Chen was not present, Guoqing Chen would sign checks for restaurant deliveries or wage payment. Defs.' Counter 56.1 ¶¶ 10-11. Additionally, Plaintiff claims that Guoqing Chen's wife, Yinen Chen, hired and fired workers at Han Sushi and from time to time arranged his schedule. Pl.'s 56.1 ¶ 13. Defendants respond that she was a part-time cashier, not a manager or supervisor, did not hire anyone, could not fire anyone, and had no role in determining employees' schedules. Defs.' Counter 56.1 ¶ 13. Only Guoyong Chen authorized time off or schedule changes. Id.

At the time of his hiring (approximately February 8, 2018), Plaintiff says that he was shown a blank wage notice that he signed, which Defendants filled in after the fact and did not provide him with a copy. Pl.'s 56.1 ¶ 16; see ECF No. 78 Ex. 5 (blank, undated wage [*4] notice with Plaintiff's signature; partially completed wage notice with Plaintiff's signature dated February 6, 2018; partially completed wage notice with Plaintiff's signature dated January 1, 2019). Defendants retort that Plaintiff did sign a proper wage notice when he was first hired and again when his pay rate changed. Defs.' Counter 56.1 ¶ 16; see ECF No. 80 Ex. A (partially completed wage notice with Plaintiff's signature dated February 6, 2018; partially completed wage notice with Plaintiff's signature dated January 1, 2019).

The February 6, 2018 wage notice stated that Plaintiff's pay rate was $10 per hour, his overtime pay rate was $16 per hour, $2 per hour would be taken as a tip credit, and $3.35 would be taken per meal as a meal allowance. ECF No. 78 Ex. 5 at 2. The wage notice did not specify a regular payday or pay period. Id. The New York Department of Labor poster in Han Sushi announcing the minimum wage for December 31, 2017, through December 30, 2018, provided that, for similarly situated hospitality industry employees, the minimum wage was $13 per hour, and $10.85 per hour for service employees after the permitted tip credit. ECF No. 78 Ex. 4 at 1. The overtime wage [*5] for similarly situated hospitality industry employees was $19.50, and $17.35 for service employees after the permitted tip credit. Id.; see 12 N.Y.C.R.R. §§ 146-1.3(a)(1)(i)(a), 146-1.4. Defendants did not record, or keep and maintain records of, Plaintiff's working time, and he was not provided a New York law-compliant wage statement during his employment. Pl.'s 56.1 ¶¶ 30, 34.

The January 1, 2019 wage notice stated that Plaintiff's pay rate was $11.25 per hour, his overtime pay rate was $18 per hour, $2.25 per hour would be taken as a tip credit, and $3.75 would be taken per meal as a meal allowance. ECF No. 78 Ex. 5 at 3. The wage notice did not specify a regular payday or pay period. Id. The New York Department of Labor poster in Han Sushi announcing the minimum wage for December 31, 2018, through December 30, 2019, provided that, for similarly situated hospitality industry employees, the minimum wage was $15 per hour, and $12.75 per hour for service employees after the permitted tip credit. ECF No. 78 Ex. 4 at 2. The overtime wage for similarly situated hospitality industry employees was $22.50, and $20.25 for service employees after the permitted tip credit. Id.; see 12 N.Y.C.R.R. §§ 146-1.3(a)(1)(i)(a), 146-.1.4.

Plaintiff claims that he was promised a flat salary [*6] of $50 per day but was paid a flat salary of $45 per day (or $225 per five-day week) that did not include pay for overtime or spread of hours pay. Pl.'s 56.1 ¶¶ 24-25, 28. He also says that he regularly worked 50 hours per week, from 11:00 a.m. to 10:00 p.m. five days a week (with a single one-hour break), and regularly worked over 10 hours each day. Id. ¶¶ 31-32. He claims that he regularly spent more than two hours per day performing non-tipped work. Id. ¶ 33.

Defendants disagree. They claim that Plaintiff worked five days a week, from 11:00 a.m. to 10:00 p.m. with three breaks totaling two hours (one half-hour for lunch, one half-hour for dinner, and a one-hour afternoon break). Defs.' Counter 56.1 ¶¶ 18, 31. His pay was calculated based on those breaks and the meal allowance deduction. Id. He received tips and did not have to return any of his pay to any Defendant. Id. He had no duties unrelated to his deliveries. Id. ¶ 33.

Plaintiff was paid via checks for $1,500 per month. Pl.'s 56.1 ¶ 26. He was paid $4,500 in Quarter 2 of 2018, $6,751 in Quarter 3 of 2018, $6,751 in Quarter 4 of 2018, $4,500 in Quarter 1 of 2019, $4,498 in Quarter 2 of 2019, and $1,499 in Quarter 3 of 2019. [*7] See ECF No. 78 Ex. 3 (TL & CG Inc. quarterly wage reporting filings). Plaintiff alleges that he had to "kick back" the difference between his pay by check and the $45 that he received per day. Pl.'s 56.1 ¶ 27. Defendants deny this. Defs.' Counter 56.1 ¶ 27.

Plaintiff claims that the February 2018 and January 2019 wage notices misrepresented his rate of pay, as did TL & CG

Inc.'s quarterly wage reporting filings. Pl.'s 56.1 ¶¶ 23, 29. Defendants reiterate that Plaintiff's pay was calculated based on his work schedule and the meal allowance deduction, and that he received tips but did not have to return any of his pay to any Defendant. Defs.' Counter 56.1 ¶¶ 23, 29.

Finally, Plaintiff claims that, in order to do his job, he had to purchase and maintain an electric bicycle to make deliveries. Pl.'s 56.1 ¶ 35. He spent $1,500 on his first electric bicycle, $800 on a second-hand replacement, and $250 on a battery. Id. He was not reimbursed. Id. Defendants respond that he was not required to use his electric bicycle for work, and that he had an electric bicycle before he came to work at Han Sushi. Defs.' Counter 56.1 ¶ 35.

## DISCUSSION

Plaintiff moves for summary judgment on the following grounds: [*8] (i) the liability of Defendants Guoqing Chen and Yinen Chen as employers under both the FLSA and the NYLL; (ii) Defendants' failure to pay overtime under the FLSA and NYLL; (iii) Defendants' failure to pay minimum wage under the FLSA and NYLL; (iv) Defendants' failure to pay "spread of hours" pay under the NYLL; (v) Defendants' failure to pay the promised wage under the NYLL; (vi) Defendants' failure to provide wage notices or wage statements under the NYLL; (vii) Defendants' failure to reimburse Plaintiff for tools of the trade; (viii) Plaintiff's entitlement to liquidated damages on his FLSA and NYLL claims; (ix) Plaintiff's entitlement to prejudgment interest on his NYLL claims; and (x) Plaintiff's entitlement to reasonable attorneys' fees and costs.

## I. Summary Judgment Standard of Review

A "court shall grant summary judgment if the movant shows that there is no *genuine* dispute as to any material fact and the movant is entitled to judgment as a matter of law." *Fed. R. Civ. P. 56(a)* (emphasis added); see *Celotex Corp. v. Catrett, 477 U.S. 317, 322-23, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986)*; *Holt v. KMI-Continental, Inc., 95 F.3d 123, 128 (2d Cir. 1996)*. Because the moving party bears the burden of showing that there is no genuine issue of material fact, the court "must view the evidence in the light most favorable to the party against whom summary [*9] judgment is sought and must draw all reasonable inferences in [its] favor." *L.B. Foster Co. v. Am. Piles, Inc., 138 F.3d 81, 87 (2d Cir. 1998)* (citing *Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587, 106 S. Ct. 1348, 89 L. Ed. 2d 538 (1986)*). "It is the movant's burden to show that no genuine factual dispute exists." *Vt. Teddy Bear Co. v. 1-800 Beargram Co., 373 F.3d 241, 244 (2d Cir. 2004)*.

"However, when the burden of proof at trial would fall on the nonmoving party, it ordinarily is sufficient for the movant to point to a lack of evidence to go to the trier of fact on an essential element of the nonmovant's claim." *CILP Assocs., L.P. v. Pricewaterhouse Coopers LLP, 735 F.3d 114, 123 (2d Cir. 2013)* (cleaned up). Then, "the nonmoving party must come forward with admissible evidence sufficient to raise a genuine issue of fact for trial in order to avoid summary judgment." Id. The non-moving party must cite to "particular parts of materials in the record" or demonstrate "that the materials cited [by the movant] do not establish the absence . . . of a genuine dispute" as to a material fact. *Fed. R. Civ. P. 56(c)(1)*; see also *Wright v. Goord, 554 F.3d 255, 266 (2d Cir. 2009)* ("When a motion for summary judgment is properly supported by documents or other evidentiary materials, the party opposing summary judgment may not merely rest on the allegations or denials of his pleading . . . .").

At summary judgment, the court should consider only evidence that would be admissible at trial. See *Nora Beverages, Inc. v. Perrier Group of Am., Inc., 164 F.3d 736, 746 (2d Cir. 1998)*. "[W]here a party relies on affidavits . . . to establish facts, the statements [*10] 'must be made on personal knowledge, set out facts that would be admissible in evidence, and show that the affiant . . . is competent to testify on the matters stated.'" *DiStiso v. Cook, 691 F.3d 226, 230 (2d Cir. 2012)* (quoting *Fed. R. Civ. P. 56(c)(4)*).

"[D]istrict courts may not weigh evidence or assess the credibility of witnesses at the summary judgment stage." *Jeffreys v. City of New York, 426 F.3d 549, 551 (2d Cir. 2005)*; see also *Vital v. Interfaith Med. Ctr., 168 F.3d 615, 622 (2d Cir. 1999)* ("Assessments of credibility and choices between conflicting versions of the events are matters for the jury, not for the court on summary judgment." (citation omitted)). Where the evidence presents "a question of 'he said, she said,'" the court "cannot . . . take a side at the summary judgment stage." *Fincher v. Depository Tr. & Clearing Corp., 604 F.3d 712, 726 (2d Cir. 2010)*; see also *Kassel v. City of Middletown, 272 F. Supp. 3d 516, 535 (S.D.N.Y. 2017)* (noting that "it is not the role of the [c]ourt at summary judgment to resolve [a] factual clash"). Even if the non-movant's evidence is "thin, [a non-movant's] own sworn statement is adequate to counter summary judgment." *Scott v. Coughlin, 344 F.3d 282, 290-91 (2d Cir. 2003)* (holding that "[t]he credibility of [the non-movant's] statements and the weight of contradictory evidence may only be evaluated by a finder of fact").

## II. Liability Under the FLSA and NYLL

To prevail on a FLSA claim, a plaintiff must show that "(1) the defendant is an enterprise participating in commerce or the production of goods for the purpose of commerce; [**11**] (2) the plaintiff is an 'employee' within the meaning of the FLSA; and (3) the employment relationship is not exempted from the FLSA." *Pelgrift v. 335 W. 41st Tavern Inc., No. 14-cv-8934 (AJN), 2017 U.S. Dist. LEXIS 168091, 2017 WL 4712482, at \*7 (S.D.N.Y. Sept. 28, 2017)* (quoting *Jiaren Wei v. Lingtou Zhengs Corp., No. 13-cv-5164 (FB)(CLP), 2015 U.S. Dist. LEXIS 20622, 2015 WL 739943, at \*5 (E.D.N.Y. Feb. 20, 2005)*). An "enterprise engaged in commerce" is an enterprise that "has employees handling, selling, or otherwise working on goods or materials that have been moved in or produced for commerce by any person" and that has an "annual gross volume of sales made or business done . . . not less than \$500,000." *29 U.S.C. § 203(s)(1)(A)(i)-(ii)*. The parties do not dispute that TL & CG Inc. meets these criteria, that Plaintiff was an employee, or that he is not exempt from the FLSA's overtime requirement.

The NYLL's definition of employee and employer are almost identical to the FLSA's, but NYLL does not require that a defendant achieve a certain minimum in sales to be liable. See *Pelgrift, 2017 U.S. Dist. LEXIS 168091, 2017 WL 4712482, at \*7*; see also *N.Y. Lab. Law §§ 651(5)-(6)*. If Defendants are liable as employers for FLSA purposes, they are also liable under NYLL. See *Pelgrift, 2017 U.S. Dist. LEXIS 168091, 2017 WL 4712482, at \*7* (noting that the FLSA and NYLL tests for individual defendants are not meaningfully different). Under both laws, each Defendant is jointly and severally liable for any damages. See *Pineda v. Masonry Const., Inc., 831 F. Supp. 2d 666, 685-86 (S.D.N.Y. 2011)*.

## III. Individual Liability of Defendants Guoqing Chen and Yinen Chen

Plaintiff argues that Defendants Guoqing Chen and Yinen [**12**] Chen qualified as his "employers" at Han Sushi, and therefore can be held individually liable under FLSA and NYLL.

Personal liability may be imposed on employers for wage and hour violations under both the FLSA and NYLL. *Ansoumana v. Gristede's Operating Corp., 255 F. Supp. 2d 184, 192 (S.D.N.Y. 2003)*. Under the FLSA, "employer" is defined as "any person acting directly or indirectly in the interest of an employer in relation to an employee." *29 U.S.C. § 203(d)*. "The Supreme Court has emphasized the 'expansiveness' of the FLSA's definition of employer." *Herman v. RSR Sec. Servs. Ltd., 172 F.3d 132, 139 (2d Cir. 1999)* (quoting *Falk v. Brennan, 414 U.S. 190, 195, 94 S. Ct. 427, 38 L. Ed. 2d 406 (1973)*); see also *Ansoumana, 255 F. Supp. 2d at 192* (quoting *Reich v. Circle C Invs., Inc., 998 F.2d 324, 329 (5th Cir. 1993)* ("[T]he FLSA's definition of employer is sufficiently broad to encompass an individual who, though lacking a possessory interest in the 'employer' corporation, effectively dominates its administration or otherwise acts, or has the power to act, on behalf of the corporation vis-a-vis its employees.")). For FLSA purposes, the term "employer" is treated as a "flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances." *Barfield v. N.Y.C. Health & Hosps. Corp., 537 F.3d 132, 141-42 (2d Cir. 2008)*. Again, the tests for individual defendants under the FLSA and NYLL are not meaningfully different. See *Pelgrift, 2017 U.S. Dist. LEXIS 168091, 2017 WL 4712482, at \*7*.

In the Second Circuit, an employment relationship exists under the FLSA when the "economic reality" is such that the "alleged employer [**13**] possessed the power to control the workers in question." *Herman, 172 F.3d at 139* (citing *Carter v. Dutchess Cmty. Coll., 735 F.2d 8, 12 (2d Cir. 1984)*). An individual need not possess "formal control" over a worker to qualify as an employer; "functional control" is sufficient. *Zheng v. Liberty Apparel Co., 355 F.3d 61, 72 (2d Cir. 2003)*.

In considering whether an employer exercised "formal control" over a worker, the court considers four factors: "whether the alleged employer (1) had the power to hire and fire the employees, (2) supervised and controlled employee work schedules or conditions of employment, (3) determined the rate and method of payment, and (4) maintained employment records." *Carter, 735 F.2d at 12* (citation omitted). To determine if an employer had "functional control" over workers, the court weighs six "nonexclusive and overlapping" factors:

> (1) whether [a defendant]'s premises and equipment were used for the plaintiffs' work; (2) whether the [defendant] had a business that could or did shift as a unit from one putative joint employer to another; (3) the extent to which plaintiffs performed a discrete line-job that was integral to [the defendant]'s process of production; (4) whether responsibility under the contracts could pass from one subcontractor to another without material changes; (5) the degree to which the [defendants] or [**14**] their agents supervised plaintiffs' work; and (6) whether plaintiffs worked exclusively or predominantly for the [defendants].

*Zheng, 355 F.3d at 72, 75*. "Case law has recognized that the *Zheng* factors 'are most relevant in the context of subcontractor relationships.'" *Fernandez v. HR Parking Inc.,*

*407 F. Supp. 3d 445, 451 (S.D.N.Y. 2019)* (citation omitted). The inquiry under the *Zheng* fifth factor, the degree of control and supervision, "is largely the same as the inquiry under the second formal control factor and is the most relevant factor in determining whether a purported joint employer exercises functional control over plaintiffs." *Martin v. Sprint United Mgmt. Co., 273 F. Supp. 3d 404, 433 (S.D.N.Y. 2017)* (cleaned up).

The parties dispute the first three *Carter* factors: whether either Guoqing Chen or Yinen Chen had the power to hire and fire employees, set wages, schedules, or the method of payment, or otherwise directed Plaintiff in his work. Plaintiff provides no support that they kept or had the power to keep any employment records concerning him. The Court cannot conclude as a matter of law that either Guoqing Chen or Yinen Chen exercised formal control over Plaintiff.

Similarly, even assuming that the *Zheng* factors are relevant, the parties dispute the material facts that would allow the Court to reach a conclusion as to whether Guoqing Chen and Yinen Chen exercised **[*15]** functional control over Plaintiff: Plaintiff says Guoqing Chen signed his paychecks; Defendants say this happened only when Guoyong Chen was not present. Plaintiff says Yinen Chen hired and fired other workers and arranged his schedule from time to time; Defendants say she did not. Again, the Court cannot conclude that either Guoqing Chen or Yinen Chen exercised functional control over Plaintiff. Thus, Plaintiff has failed to show that Defendants Guoqing Chen and Yinen Chen are employers under the FLSA or NYLL. His motion for summary judgment is denied on this ground.[3]

## IV. Plaintiff's Federal and State Wage Law Claims

### A. Evidence of Plaintiff's Wages and Hours Worked

To recover unpaid minimum wages or overtime under the FLSA, "a plaintiff must prove that he performed work for which he was not properly compensated, and that the employer had actual or constructive knowledge of that work." *Kuebel v. Black & Decker Inc., 643 F.3d 352, 361 (2d Cir. 2011)*. "When the employer has kept proper and accurate records[,] the employee may easily discharge his burden by securing the production of those records." *Anderson v. Mt.*

*Clemens Pottery Co., 328 U.S. 680, 687, 66 S. Ct. 1187, 90 L. Ed. 1515 (1946)*. Both the FLSA and NYLL require employers to maintain records of the employee's work hours, see *29 U.S.C. § 211(c)*; *NYLL §§ 196-a*, *195(4)*, and that duty is non-delegable, *Kuebel, 643 F.3d at 363*.

On summary judgment, **[*16]** if an employer's records are inaccurate or inadequate, the employee may meet his burden by proving that "he has in fact performed work for which he was improperly compensated" and by "produc[ing] sufficient evidence to show the amount and extent of that work as a matter of just and reasonable inference." *Anderson, 328 U.S. at 687*. "[E]stimates based on his own recollection" are sufficient. *Kuebel, 643 F.3d at 362*; see also *Adams v. City of New York, No. 16-cv-3445 (RA), 2021 U.S. Dist. LEXIS 86117, 2021 WL 1791182, at *7 (S.D.N.Y. May 5, 2021)* (collecting cases finding same).

Under the FLSA, the burden then shifts to the employer to "come forward with evidence of the precise amount of work performed or with evidence to negative the reasonableness of the inference to be drawn from the employee's evidence." *Lanzetta v. Florio's Enters., Inc., 763 F. Supp. 2d 615, 618 (S.D.N.Y. 2011)* (quoting *Anderson, 328 U.S. at 687-88*). The New York standard is more demanding: the employer must prove by a preponderance of the evidence that the plaintiff was properly paid for the hours worked. *Doo Nam Yang v. ACBL Corp., 427 F. Supp. 2d 327, 337 n.15 (S.D.N.Y. 2005)*; see *Jiao v. Shi Ya Chen, No. 03-cv-165 (DF), 2007 U.S. Dist. LEXIS 96480, 2007 WL 4944767, at *3 (S.D.N.Y. Mar. 30, 2007)* (holding that the NYLL applies a more demanding burden-shifting analysis than the FLSA—thus, if defendants cannot meet their burden under the FLSA, they will necessarily fail under the NYLL (citing *Anderson, 328 U.S. at 687*)). Unlike the FLSA, the NYLL "does not permit an employer to discharge this burden by undermining the reasonableness of an employee's evidence that he was underpaid." *Gamero v. Koodo Sushi Corp., 272 F. Supp. 3d 481, 498 (S.D.N.Y. 2017)*, aff'd, **[*17]** *752 F. App'x 33 (2d Cir. 2018)*. The employer must demonstrate that it in fact paid its employees "wages, benefits, and supplements." *N.Y. Lab. Law § 196-a(a)*.

"In effect, in the absence of employer records, the employee's testimony assumes a 'rebuttable presumption of accuracy.'" *Garcia v. Vill. Red Rest. Corp., No. 15-cv-6292 (JCF), 2017 U.S. Dist. LEXIS 128989, 2017 WL 3493148, at *1 (S.D.N.Y. Aug. 14, 2017)* (quoting *Goett v. VI Jets Int'l, Inc., No. 14-cv-8256 (MHD), 2015 U.S. Dist. LEXIS 77263, 2015 WL 3616961, at *2 (S.D.N.Y. Apr. 22, 2015)*)). Under both the FLSA and NYLL, that presumption may be rebutted where the employee's attestations are materially inconsistent with the facts and/or contradicted by the employer's witnesses. See

---

[3] Defendants did not cross-move for summary judgment or to dismiss the case as to either Guoqing Chen or Yinen Chen. The Court does not interpret Defendants' statement that "the case against [Guoqing Chen and Yinen Chen] should be dismissed in its entirety" as a properly made request for such relief. ECF No. 81 (Opp.) at 6.

*2017 U.S. Dist. LEXIS 128989, [WL] at *2*; see also *Hernandez v. Sikka, No. 17-cv-4792 (SJF)(SIL), 2020 U.S. Dist. LEXIS 39550, 2020 WL 1083706, at *6 (E.D.N.Y. Mar. 6, 2020)* (noting same). The Court accordingly considers the evidence provided in both Plaintiff's and Defendants' declarations and supporting exhibits in evaluating Plaintiff's claims.

**B. Minimum Wage, Overtime, and Spread of Hours Claims**

I briefly set forth the standards for minimum wage, overtime pay, and spread of hours pay. In 2018, New York City employers with more than ten employees were required to pay their employees a minimum wage of $13 per hour, or $10.85 per hour for service employees after the permitted tip credit; in 2019, $15 per hour, and $12.50 per hour for service employees after the permitted tip credit. See *N.Y. Comp. Codes R. & Regs. tit. 12 §§ 146-1.2(a)(1)(i)(a), 146-1.3(a)(1)(i)(a)*. To calculate a salaried employee's minimum wage, the employee's total weekly earnings are divided "by the lesser of 40 hours or **[*18]** the actual number hours they worked." *Id.* at *§ 146-3.5*. Additionally, the FLSA requires employers to pay their employees the statutory minimum wage as well as a premium (150 percent of the employee's regular rate of pay) for hours worked above 40 hours per week. See *29 U.S.C. §§ 206(a)*, *207(a)(1)*. Similarly, the NYLL requires a 150 percent premium for overtime work. *12 N.Y.C.R.R. § 142-2.2*. And finally, under the NYLL, "on each day on which [an employee's] spread of hours exceeds 10, [they] shall receive one additional hour of pay at the basic minimum hourly rate." *12 N.Y.C.R.R. § 146-1.6(a)*.

As noted above, it is undisputed that Plaintiff's workdays lasted longer than 10 hours (so he would be entitled to spread of hours pay), but the parties dispute the number of hours that Plaintiff actually worked: Plaintiff says 50 hours per week, Defendant says 45 hours per week. Also, the parties agree that Plaintiff received monthly checks for $1,500, but Plaintiff argues that he was actually paid $225 per week, and that he was required to "kick back" the difference between his pay by check and the $45 that he received per day if he did not work enough days during the month to earn all $1,500. See ECF No. 78 Ex. 9 (Pl. Aff.) ¶ 21. Defendants say that Plaintiff did not give back **[*19]** any of his pay, that he received tips, and that his pay was based on his schedule. There is also evidence that, at least in the second quarter of 2018, Plaintiff was paid $6,751 for three months' work, or approximately $2,250 per month. See ECF No. 78 Ex. 3 at 9.

These are material inconsistencies that preclude summary judgment on Plaintiff's minimum wage, overtime, and spread

of hours claim under both the FLSA and NYLL. The only evidence before the Court as to Plaintiff's monthly earnings is the parties' warring affidavits, two scanned monthly checks for $1,500, and Defendants' quarterly combined withholding and wage reporting filings, some of which support the claim that Plaintiff made $1,500 per month and some of which suggest that he made more (though Plaintiff claims the filings misrepresent his earning). "Credibility assessments, choices between conflicting versions of the events, and the weighing of evidence are matters for the jury, not for the court on a motion for summary judgment." *Fischl v. Armitage, 128 F.3d 50, 55 (2d Cir. 1997)*.

If Plaintiff did indeed have to give back any of his monthly paycheck, the Court cannot determine his total monthly earnings without knowing how many days he worked every month (which, according **[*20]** to Plaintiff's affidavit, may have varied). And without Plaintiff's total monthly earnings, the Court cannot calculate his weekly or hourly wage, or whether he was paid enough to account for the NYLL's spread of hours pay requirement or Defendants' claimed tip credit. Accordingly, based upon the evidence before the Court, Plaintiff's motion for summary judgment is denied as to his FLSA and NYLL minimum wage and overtime claims and as to his NYLL spread of hours claim.

**C. Promised Wage Claim**

Under the NYLL, a plaintiff can recover for unpaid time at the agreed-upon rate, even if it exceeds the minimum wage. See *Kernes v. Global Structures, LLC, No. 15-cv-659 (CM)(DF), 2016 U.S. Dist. LEXIS 17262, 2016 WL 880199, at *3 (S.D.N.Y. Mar. 1, 2016)*. *Section 191 of the NYLL* mandates that workers "be paid . . . in accordance with the agreed terms of employment." *N.Y. Lab. Law §§ 191(1)(a)(i), 191(1)(d)*. Plaintiff alleges that he was promised a flat salary of $50 per day but was only paid $45 per day. As with his minimum wage, overtime, and spread of hours claims, the material inconsistencies in the record preclude summary judgment on this issue. The Court cannot determine at this juncture whether Plaintiff was indeed promised $50 per day, whether he was actually paid $45 per day, or whether he was paid more. Plaintiff's motion for summary judgment is denied as to his NYLL promised wage **[*21]** claim.

**D. Wage Notice and Statement Claims**

The Wage Theft Prevention Act of the NYLL requires that employers provide annual wage notices to employees hired after April 9, 2011, and to provide each employee with accurate wage statements each time wages are paid. See *N.Y.*

*Lab. Law §§ 195(1)(a)* & *(3)*. *Section 195(1)* requires an employer to provide employees a notice at the time of hiring, containing, among other things, "the rate or rates of pay and basis thereof, whether paid by the hour, shift, day, week, salary, piece, commission, or other . . . [and] allowances, if any, claimed as part of the minimum wage, including tip, meal, or lodging allowances." *N.Y. Lab. Law § 195(1)(a)*. *Section 195(3) of the NYLL* requires that employers provide employees with certain wage statement information "with every payment of wages." *N.Y. Lab. Law § 195(3)*. An employer's failure to comply with either section of the law makes them liable for damages for each instance that the violations occurred or continued to occur. See *N.Y. Lab. Law § 198(1-b)* (stating that damages for wage notice violations under *§ 195(1)* accumulate at a rate of $50 per day, but not to exceed $5,000); *§ 198(1-d)* (stating that damages for wage statement violations under *§ 195(3)* accumulate at a rate of $250 per day, but not to exceed $5,000).

Even if Plaintiff did sign a wage notice when he was hired [*22] and when his pay rate changed, as Defendants argue, the wage notices submitted do not meet the NYLL's standards: they do not specify a pay period or pay date. See *Galvez v. 800 Ginza Sushi Inc., No. 19-cv-8549 (JPC), 2022 U.S. Dist. LEXIS 43523, 2022 WL 748286, at *16 (S.D.N.Y. Mar. 11, 2022)* (noting that the wage notice "must include the employee's . . . pay period and date"). Defendants failed to comply with the NYLL's wage notice requirement. And Defendants do not dispute that Plaintiff was not provided a NYLL-compliant wage statement.

Plaintiff nevertheless lacks standing to maintain these claims. "Article III standing requires plaintiffs to show (1) an 'injury in fact,' (2) a 'causal connection' between that injury and the conduct at issue, and (3) a likelihood 'that the injury will be redressed by a favorable decision.'" *Maddox v. Bank of N.Y. Mellon Tr. Co., N.A., 19 F.4th 58, 62 (2d Cir. 2021)* (quoting *Lujan v. Defs. of Wildlife, 504 U.S. 555, 560-61, 112 S. Ct. 2130, 119 L. Ed. 2d 351 (1992)*). To demonstrate an injury in fact, a plaintiff "must show the invasion of a [1] legally protected interest that is [2] concrete and [3] particularized and [4] actual or imminent, not conjectural or hypothetical." Id. (quoting *Strubel v. Comenity Bank, 842 F.3d 181, 188 (2d Cir. 2016)*). While a so-called "informational injury" (*i.e.*, failure to receive required information) can give rise to standing, see *TransUnion LLC v. Ramirez, 141 S. Ct. 2190, 2214, 210 L. Ed. 2d 568 (2021)*, the plaintiff must allege "downstream consequences" from failing to receive that information that show an interest in using the information [*23] "beyond bringing [this] lawsuit," *Harty v. W. Point Realty, Inc., 28 F.4th 435, 444 (2d Cir. 2022)* (first quoting *TransUnion, 141 S. Ct. at 2214*, then quoting *Laufer v. Looper, 22 F.4th 871, 881 (10th Cir. 2022)*).

Plaintiff fails to allege an injury in fact sufficient to confer standing. First, Plaintiff's claimed monetary harm is purely hypothetical. He explains that Defendants' lack of notice "facilitated" the underpayments at the heart of this case and should have prevented them from claiming a tip credit. But Plaintiff has not demonstrated how or why the amount of his wage underpayment is greater than it would have been if he had been given a proper wage notice or proper wage statements, especially given that Plaintiff says the January 2019 wage notice misrepresents his rate of pay as promised by Defendants. Nor has Plaintiff identified an informational injury with consequences beyond this lawsuit. Being able to challenge his underpayment sooner would have resulted in Plaintiff bringing the same lawsuit, just earlier—and, given the length of Plaintiff's employment with Defendants (approximately 333 workdays) would not have changed the damages due to him for Defendants' violations of *Sections 195(1)* and *195(3)*. Accordingly, Plaintiff's motion for summary judgment is denied as to his NYLL wage notice and statements claim.

## E. Tools-of-the-Trade Expenses [*24]

Under the FLSA, "if it is a requirement of the employer that the employee must provide tools of the trade which will be used in or are specifically required for the performance of the employer's particular work," it is a FLSA violation in any week "when the cost of such tools purchased by the employee cuts into the minimum or overtime wages required to be paid him under the Act." *29 C.F.R. § 531.35*; see also *12 N.Y.C.R.R. § 146-2.7(c)* ("If an employee must spend money to carry out duties assigned by his or her employer, those expenses must not bring the employee's wage below the required minimum wage."). "Vehicles such as bicycles . . . are considered 'tools of the trade' if employees are required to possess and utilize them in the course of their employment." *Guan Ming Lin v. Benihana Nat'l Corp., 755 F. Supp. 2d 504, 511 (S.D.N.Y. 2010)* (citation omitted).

Again, material inconsistencies in the record preclude summary judgment. Plaintiff claims that he had to purchase and maintain an electric bicycle to do his job, and that he was not reimbursed for the bicycle, its replacement, or its battery. Defendants respond that he was not required to use his electric bicycle for work, and that he had an electric bicycle before he became employed at Han Sushi. The parties' disagreement goes to the core of the issue, [*25] and without weighing the parties' credibility, the Court cannot determine whether Plaintiff was required to purchase and maintain an electric bicycle to perform his duties for Defendants. Plaintiff's motion for summary judgment is denied as to his FLSA and NYLL tools-of-the-trade claim.

2022 U.S. Dist. LEXIS 121980, *25

**F. Liquidated Damages and Pre-Judgment Interest**

Because Plaintiff is denied summary judgment on his claims for unpaid wages under the FLSA and NYLL, he may not seek liquidated damages under the FLSA and NYLL at this time.

Similarly, although New York law provides that plaintiffs are entitled to pre-judgment interest on unpaid wages, at a rate of nine percent per year, see *N.Y. CPLR § 5004*, prejudgment interest is available only on actual damages, *Underwood v. TAFSC Hous. Dev. Fund Corp., No. 18-cv-6664 (JPO), 2019 U.S. Dist. LEXIS 185344, 2019 WL 5485211, at \*5 (S.D.N.Y. Oct. 25, 2019)*. Because Plaintiff is denied summary judgment on his claims for unpaid wages under the FLSA and NYLL, he is not entitled to pre-judgment interest at this time.

**G. Reasonable Attorneys' Fees and Costs**

The FLSA and NYLL both entitle prevailing plaintiffs to reasonable attorneys' fees and costs. See *29 U.S.C. § 216(b)*; *N.Y. Lab. Law §§ 198(1-b)*, *198(1-d)*, *663*. Because Plaintiff's motion for summary judgment is denied, he is not entitled to attorneys' fees or costs under either the FLSA or NYLL at this time.

**CONCLUSION**

Plaintiff's motion **[\*26]** for summary judgment is DENIED. The Clerk of Court is respectfully requested to terminate the motion at ECF No. 77. The parties are ORDERED to appear at a telephone conference on July 19, 2022, at 11:30 a.m. to schedule pretrial proceedings and trial. At that time, the parties shall dial into the Court's dedicated teleconferencing line at (877) 402-9757 and enter Access Code 7938632, followed by the pound (#) key.

**SO ORDERED**.

/s/ Sarah Netburn

SARAH NETBURN

United States Magistrate Judge

Dated: July 11, 2022

New York, New York