UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GIITOU NEOR *and* TYRONE WALLACE *on behalf of themselves, FLSA Collective Plaintiffs, and the Class*,

                        Plaintiffs,

– against –

ACACIA NETWORK, INC., d/b/a ACACIA NETWORK, ACACIA NETWORK HOUSING INC., d/b/a ACACIA NETWORK, PROMESA RESIDENTIAL HEALTH CARE FACILITY, INC., d/b/a PROMESA, *and* JOHN DOE CORP 1-100,

                        Defendants.

**OPINION & ORDER**

22-cv-4814 (ER)

---

Ramos, D.J.:

      Giitou Neor and Tyrone Wallace (collectively "Plaintiffs") bring this action against defendants Acacia Network, Inc., d/b/a Acacia Network, Acacia Network Housing Inc., d/b/a Acacia Network, Promesa Residential Health Care Facility, Inc., d/b/a Promesa, and John Doe Corporations 1-100 (collectively, "Acacia"). Plaintiffs allege that defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and request damages consisting of unpaid wages, including overtime, unpaid spread of hours premium, compensation for late payment of wages, statutory penalties, liquidated damages, and attorneys' fees and costs. Pending before this Court is Acacia's motion for partial dismissal pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6). Acacia is moving to dismiss the claims alleging (1) untimely wage payments, (2) non-neutral rounding, (3) failure to pay spread of hours wages, and (4) failure to provide wage notices and statements. Doc. 23. For the reasons set forth below, Acacia's motion is GRANTED in part and DENIED in part.

I. BACKGROUND

A. Factual Background

Plaintiffs bring this class action on behalf of employees who worked for Acacia on or after the date six years before the Plaintiffs' first Complaint was filed on June 8, 2022. Doc. 20 ¶ 12.

Acacia Network is a domestic not-for-profit corporation that subleases hotels and accommodations to the government to use as housing and assistance centers for the homeless in New York City. *Id.* ¶¶ 7, 8. Acacia Network owns and operates over 56 hotels turned shelters and assistance centers, 750 individual family units, and 4 buildings in New York. *Id.* ¶ 7(b). Acacia Network also controls Promesa Residential Health Care Facility, Inc. ("Promesa"). *Id.* ¶ 7(d). All of the locations operate as a single integrated enterprise under the control of Acacia Network. *Id.* ¶ 7(f). Acacia collectively operates from its headquarters located on 175th Street in Bronx, New York. *Id.* ¶ 7(a).

Neor, one of the named plaintiffs, was hired by Acacia as a Promesa youth social worker in January 2019. *Id.* ¶¶ 24, 25. She was regularly scheduled to work from 8:00 a.m. to 4:00 p.m., five days per week. *Id.* ¶ 27. She was entitled to a one-hour unpaid daily lunch break. *Id.* ¶ 29. During her lunch hour, Neor would clock out, but Acacia consistently required her to continue working. *Id.* Furthermore, when her shift ended at 4:00 p.m., she was tasked with continuing to care for children past 4:00 p.m. *Id.* ¶¶ 31–33. Twice a week, she worked until 5:15 p.m., and three times a week she worked until 6:00 p.m., transporting children between Acacia's facilities to attend therapy and consultations sessions. *Id.* Yet, multiple times a week, a supervisor would require her to clock out at the end of her officially scheduled shift. *Id.* ¶ 35. Because she was often required to clock out and continue working, Neor was not paid for her work during her lunch hour or after her scheduled shift. *Id.* Neor's employment with Acacia ended on May 14, 2020. *Id.* ¶ 24.

Named plaintiff Wallace was hired by Acacia on March 21, 2018 as a Housing Specialist to work at Acacia's shelter in Brooklyn, New York. *Id.* ¶ 39.  He was regularly scheduled to work from 9:00 a.m. to 5:00 p.m., five days a week. *Id.* ¶ 41.  He too was entitled to a one-hour unpaid lunch break but like Neor, as he would clock out for his lunch break, he was regularly required to work—attending mandatory zoom calls, training sessions, and meetings— during his lunch hour and was not paid for that time. *Id.* ¶¶ 42, 43.  Additionally, when Wallace clocked out after ending his shift at 5:00 p.m., Acacia would require Wallace to continue working by "doing paperwork, cleaning . . . rooms, calling other [d]efendants' locations to check on availability, [and] preparing documents for [New York] City." *Id.* ¶ 44.  Wallace was not paid for his work during his lunch hour or after his scheduled shift. *Id.* ¶¶ 43–44.  Wallace's employment with Acacia was terminated on December 28, 2021. *Id.* ¶ 39.

Plaintiffs also claim that Acacia had a policy of rounding employees' hours in a way that consistently decreased the hours they worked by rounding clock-in times up and rounding clock-out times down, leading to more lost wages. *Id.* ¶¶ 37, 46.  Finally, Plaintiffs allege that, in violation of NYLL § 195, they never received wage notices and, because their hours were miscalculated, due to various forms of time-shaving, Acacia failed to provide Plaintiffs and class members with accurate wage statements. *Id.* ¶¶ 48–49, 52–53.

### B. Procedural Background

Plaintiffs filed this action on June 8, 2022.  Doc. 1.  Acacia submitted a letter to this Court outlining deficiencies in Plaintiffs' Complaint and requested permission to file a motion to dismiss pursuant to Federal Rules of Civil Procedure 12(b)(1) and (6).  Doc. 17.  On August 9, 2022, this Court granted Acacia leave to move to dismiss after Plaintiffs filed a First Amended Complaint ("FAC").  On August 12, 2022, Plaintiffs filed the FAC.  Doc. 20.  On August 26, 2022, Acacia moved to partially dismiss the FAC for Plaintiffs' failure to plead sufficient facts to support their claims for (1) untimely wage

payments,[1] (2) non-neutral rounding, (3) spread of hours compensation,[2] and (4) failure to provide wage notice and wage statements because Plaintiffs lack standing to maintain a class or collective action.  Doc. 23.

## II.     LEGAL STANDARD

### A.  Rule 12(b)(1):  Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case.  Fed. R. Civ. P. 12(b)(1).  The party asserting subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists.  *Morrison v. Nat'l Australia Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues.  *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (internal citation omitted); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

### B.  Rule 12(b)(6):  Failure to State a Claim

When ruling on a motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), the court must accept all factual allegations in the complaint as true and draw all reasonable inferences in the plaintiff's favor.  *Nielsen v. Rabin*, 746 F.3d 58, 62 (2d Cir.

---

[1] Plaintiffs have withdrawn this claim.  Doc. 24 at 5.  Accordingly, the Court need not address the untimely wage payments claim.

[2] Plaintiffs have withdrawn this claim.  Doc. 24 at 5.  Accordingly, the Court need not address the spread of hours claim.

2014). The court is not required to credit "mere conclusory statements" or "threadbare recitals of the elements of a cause of action." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (citing *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007)); *see also id.* at 681 (citing *Twombly*, 550 U.S. at 551). "To survive a motion to dismiss, a complaint must contain sufficient factual matter . . . to 'state a claim to relief that is plausible on its face.'" *Id.* at 678 (quoting *Twombly*, 550 U.S. at 570). A claim is facially plausible "when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.* (citing *Twombly*, 550 U.S. at 556). More specifically, the plaintiff must allege sufficient facts to show "more than a sheer possibility that a defendant has acted unlawfully." *Id.* If the plaintiff has not "nudged [his] claims across the line from conceivable to plausible, [the] complaint must be dismissed." *Twombly*, 550 U.S. at 570; *Iqbal*, 556 U.S. at 680.

The question in a Rule 12 motion to dismiss "is not whether a plaintiff will ultimately prevail but whether the claimant is entitled to offer evidence to support the claims." *Sikhs for Justice v. Nath*, 893 F. Supp. 2d 598, 615 (S.D.N.Y. 2012) (quoting *Villager Pond, Inc. v. Town of Darien*, 56 F.3d 375, 278 (2d Cir. 1995)) (internal quotation marks omitted). "[T]he purpose of Federal Rule of Civil Procedure 12(b)(6) 'is to test, in a streamlined fashion, the formal sufficiency of the plaintiff's statement of a claim for relief without resolving a contest regarding its substantive merits,'" and without regard for the weight of the evidence that might be offered in support of the plaintiff's claims. *Halebian v. Berv*, 644 F.3d 122, 130 (2d Cir. 2011) (quoting *Global Network Commc'ns, Inc. v. City of New York*, 458 F.3d 150, 155 (2d Cir. 2006)).

### III. ANALYSIS

#### A. Unlawful Rounding Practice Under FLSA and NYLL

Plaintiffs claim they were undercompensated due to detrimental rounding of the times they clocked in and clocked out. Doc. 20 ¶ 37. Plaintiffs allege that Acacia rounded their hours in a way that systematically undercompensated them in violation of

5

29 C.F.R. § 785.48(b).  Doc. 24 at 6.  Acacia maintains that it employed a permissible form of rounding under state and federal law and therefore, that Plaintiffs' claim fails as a matter of law.  Doc. 23 at 8–9.  The Court finds that the FAC describes a policy that consistently undercompensates employees in a prohibited fashion, and therefore, that Plaintiffs have sufficiently pleaded facts to support a claim for detrimental rounding to survive a Rule 12 motion to dismiss.

"Rounding practices are not *per se* unlawful under the FLSA."  *Canelas v. World Pizza, Inc.*, No. 14 Civ. 7748 (ER), 2017 WL 1233998, at *10 (S.D.N.Y. Mar. 31, 2017) (internal quotation marks omitted).  "Although no New York statute or regulation addresses the permissibility of rounding policies, New York's Department of Labor generally follows the FLSA and related regulations."  *Id.* (internal quotation marks omitted).  Under § 785.48(b), rounding practices to the *nearest* quarter hour are tolerated because, presumably, such rounding "averages out so that the employees are fully compensated for all the time they actually work."  29 C.F.R. § 785.48(b).  "In contrast, rounding policies have been held to violate § 785.48(b) where they favor the employer and systematically undercompensate employees."  *Boone v. PrimeFlight Aviation Servs., Inc.*, No. 15 Civ. 6077 (JMA) (ARL), 2018 WL 1189338, at *7 (E.D.N.Y. Feb. 20, 2018).

Acacia does not dispute that it rounds its employees' hours each day and pays wages only for those rounded hours.  Acacia states that Plaintiffs "contend that their hours were regularly rounded to the nearest quarter hour."  Doc. 25 at 3.  However, Plaintiffs assert that their hours were not rounded to the *nearest* quarter hour.  Rather, they maintain that Acacia's system rounded up to the next quarter hour at clock-in and rounded down to the previous quarter hour at clock-out.  Doc. 20 ¶¶ 37, 46.  For example, Neor states that if she "arrived to work a few minutes late, say at 8:03, and clocked in then, the time system would treat her as having arrived at 8:15," and "[i]f she happened to finish working at 6:10, the system treated her as having worked until 6:00."  *Id.* ¶ 37.  If the system were to round the *nearest* quarter hour, an 8:03 a.m. clock-in time would

6

round to 8:00 a.m. and a 6:10 p.m. clock-out time would round to 6:15 p.m. Acacia's rounding practice thus caused Neor to lose wages she was owed. *Id.* Wallace was similarly undercompensated. *Id.* ¶ 46. Plaintiffs sufficiently detail that the rounding policies alleged in the FAC would necessarily result in consistent underpayment of wages. Doc. 24 at 7. Accordingly, Plaintiffs appropriately plead that Acacia's policy is precisely the kind of unlawful, non-neutral rounding policy prohibited under § 785.48(b). Therefore, the motion to dismiss this claim is DENIED.

### B. Failure to Plead Class Standing for Statutory Violations of the Wage Theft Protection Act

Plaintiffs allege that Acacia failed to provide them with proper wage notices and wage statements. Doc. 20 ¶¶ 48–49. The Wage Theft Protection Act ("WTPA") of the NYLL requires that employers provide a wage notice at the time of hiring to employees and provide each employee with accurate wage statements. NYLL § 195(1), (3). The NYLL provides statutory damages that an employee is entitled to if the employee does not receive a wage notice within ten business days of his or her first day of employment. NYLL § 198(1-b). Employees are also entitled to statutory recovery for each wage statement that is not provided. NYLL § 198(1-d). Acacia argues that Plaintiffs did not sufficiently plead any injury that would grant them standing to assert claims on a class wide basis for violations of wage notice and statement requirements under NYLL § 195. Doc. 23 at 11.

At the motion to dismiss stage, the plaintiff "bears the burden of alleging facts that affirmatively and plausibly suggest" they have standing. *Calcano v. Swarovski N. Am. Ltd.*, 36 F.4th 68, 75 (2d Cir. 2022) (citation omitted). Because Plaintiffs have not alleged facts of a plausible harm that would grant them Article III standing, they have not met their burden.

In *Spokeo, Inc. v. Robins*, the Supreme Court ruled that a plaintiff cannot "allege a bare [statutory] procedural violation, divorced from any concrete harm, and satisfy the

injury-in-fact requirement of Article III." 578 U.S. 330, 341 (2016). To evaluate standing "it is instructive to consider whether an alleged intangible harm has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id*. A plaintiff cannot solely rely on the fact that the defendant committed a statutory violation because an "injury in law" does not amount to an "injury in fact" for purposes of Article III standing. *TransUnion LLC v. Ramirez*, 141 S. Ct. 2190, 2205 (2021). In *TransUnion*, the Court found that the named plaintiff in a class action suit suffered an injury similar to the tort of defamation when TransUnion actually sent a dealership an inaccurate credit report stating that he was on government terrorist list. *Id.* at 2209. In contrast, the plaintiffs that did not have misleading credit information actually sent to potential creditors, suffered "no concrete harm." *Id.* at 2210. The Court in *TransUnion* also noted that plaintiffs who claimed an injury that they personally received inaccurate information by mailing, "did not demonstrate[] that … TransUnion's mailings caused them a harm with a close relationship to a harm traditionally recognized as providing a basis for a lawsuit in American courts." *Id.* at 2213.

In the instant case, the FAC does not allege any harm stemming from a lack of accurate wage notices or statements. In their Memorandum of Law in Opposition, Plaintiffs argue that the injury from "failure to provide notices and paystubs listing all hours and rates of pay, including overtime hours and overtime rates, deprived employees of the ability to contest the Defendants' calculations, thus facilitating Defendants' wrongdoing." Doc. 24 at 10. But that is not a plausible injury because Plaintiffs admit that Acacia furnished wage statements that would show a lower number of hours recorded than Plaintiffs actually worked. Doc. 20 ¶ 48. The inaccuracies in the wage statements would immediately alert the Plaintiffs to the fact that they were not being properly compensated by Acacia.

Plaintiffs also cite a number of cases finding standing when a plaintiff alleges failure to receive wage notices and statements. Doc. 24 at 8–9. Plaintiffs rely on *Imbarrato v. Banta Mgmt. Services*, for the proposition that the WTPA "was enacted to further protect an employee's concrete interest in being paid what he or she is owed under the NYLL." No. 18 Civ. 5422 (NSR), 2020 WL 1330744, at *8 (S.D.N.Y. Mar. 20, 2020). *Imbarrato* highlights that the "New York State Assembly passed the WTPA to address studies showing that a large number of employees were not being paid the wages owed to them, and that many employers were not adequately informing their employees of their wages." *Id.* However, *Imbarrato*'s reliance on the New York State Assembly's reasoning cannot be used for Article III standing as a legislature cannot create standing. *Trichell v. Midland Credit Mgmt., Inc.*, 964 F.3d 990, 999, n. 2 (11th Cir. 2020) (stating that Congress' "say-so" is not enough to treat an injury as "concrete" for Article III standing). Acacia concedes the precedents cited by Plaintiffs but argues that more recently decided cases render that precedent inapplicable. Doc. 25 at 6. Indeed, this Court recently held that plaintiffs lacked standing where a complaint failed to plead facts of an actual injury associated with inaccurate wage statements. *Metcalf v. TransPerfect Translations Int'l, Inc.*, No. 19 Civ. 10104 (ER), 2022 WL 4661926, at *7 (S.D.N.Y. Sept. 30, 2022) (adopting an R&R from Judge Parker which found that "[p]laintiffs failed to sufficiently plead standing to bring claims pursuant to NYLL § 195(3) for TransPerfect's alleged failure to furnish its employees with accurate wage statements."). Accordingly, Plaintiffs here lack standing because they fail to demonstrate how the lack of accurate wage notices and statements led to either a "tangible injury or something akin to a traditional cause of action." *Francisco v. NY Tex Care, Inc.*, No. 19 Civ. 1649 (PKC) (ST), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022) (denying certification under Rule 23(a) because the failure to receive accurate wage statements was not a tangible injury sufficient to create standing). Therefore, the motion to dismiss is GRANTED.

9

### C. Leave to Amend

The Second Circuit has instructed Courts not to dismiss a complaint "without granting leave to amend at least once when a liberal reading of the complaint gives any indication that a valid claim might be stated." *Shabazz v. Bezio*, 511 F. App'x. 28, 31 (2d Cir. 2013) (quoting *Shomo v. City of New York*, 579 F.3d 176, 183 (2d Cir. 2009)) (internal quotation marks omitted). Here, while the Court has already granted Plaintiffs the opportunity to amend their original Complaint, it was not in the context of a motion to dismiss and the Court has therefore not provided guidance as to how their claims may be adequately made. In *Loreley Financing (Jersey) No. 3 Ltd. v. Wells Fargo Securities, LLC*, 797 F.3d 160 (2d Cir. 2015), the Second Circuit reaffirmed that the "liberal spirit" of the Federal Rule of Civil Procedure 15 embodies a "strong preference for resolving disputes on the merits." *See id.* at 190–91 (quoting *Williams v. Citigroup Inc.*, 659 F.3d 208, 212-13 (2d Cir. 2011)). *Loreley* thus counsels strongly against the dismissal of claims with prejudice prior to "the benefit of a ruling" that highlights "the precise defects" of those claims. *Id.* at 190–91.

As it is not apparent that any further opportunity to amend would be futile, Plaintiffs will be permitted to replead claims under NYLL § 195.

## IV. CONCLUSION

For the reasons stated above, Acacia's motion for partial dismissal is GRANTED in part and DENIED in part. Acacia's motion to dismiss Plaintiffs' unlawful rounding claims under FLSA and NYLL is DENIED. Acacia's motion to dismiss Plaintiffs' claims for violations of wage notice and wage statement provisions of NYLL § 195 is GRANTED. Plaintiffs are granted leave to file a Second Amended Complaint to replead their NYLL § 195 claim, and, if they choose to do so, they must file it by March 9, 2023. Defendants are directed to answer or otherwise respond to the FAC or Second Amended Complaint by March 30, 2023. The Clerk of the Court is respectfully directed to terminate the motion, Doc. 22.

It is SO ORDERED.

Dated:   February 7, 2023
          New York, New York

                                              EDGARDO RAMOS, U.S.D.J.