

Peter T. Shapiro
77 Water Street, Suite 2100
New York, New York 10005
Peter.shapiro@lewisbrisbois.com
Direct: 212.232.1322

September 6, 2023

**VIA ECF**
Hon. Edgardo Ramos, U.S.D.J.
United States District Court
Southern District of New York
40 Foley Square
New York, NY 10007

      Re:    *Neor, et ano. v. Acacia Network, Inc., et. al.*
             No. 22-cv-04814 (ER)

Dear Judge Ramos:

      On behalf of Defendants Acacia Network, Inc. ("Acacia"), Acacia Network Housing, Inc. ("ANHI"), and Promesa Residential Health Facility, Inc. ("Promesa"), this letter responds to Plaintiff's August 7, 2023 correspondence regarding a dispute about class discovery (Dkt. No. 44) which the Court will be addressing during a conference set for September 8, 2023. As explained below, the Court should order only the limited discovery related to Plaintiffs' class and collective claims rather than the overly broad and unduly burdensome discovery Plaintiffs seek. As demonstrated below, Plaintiffs cannot meet their burden to show that they are similarly situated to the thousands of members of the putative class and collective.

      By way of background, Plaintiff Neor was employed by ANHI as a Licensed Master Social Worker (LMSW), and Plaintiff Wallace was employed by Promesa, Inc. as a Housing Specialist. Plaintiffs' wage and hour claims are premised on allegations that their supervisors required them to work through their lunch breaks and perform off-the-clock work without compensation and also that they were subject to improper rounding policies.[1] See the Third Amended Class Action Complaint (the "Complaint"; Dkt. No. 31).[2] The parties' discovery dispute stems from Plaintiffs' definition of "Covered Employee" as defined in their discovery requests and as described in that pleading. (Plaintiffs have not submitted the requests or responses to the Court; Defendants would be pleased to do so if the Court so directs.) Specifically, Plaintiffs' document demands seek the production of documents for "Covered Employees" which they define as "all non-exempt employees employed by Defendants." Similarly, the Complaint seeks relief "…on behalf of all non-exempt employees

---

[1] Defendants' motion to dismiss the Complaint insofar as it alleges violations of the New York Wage Theft Prevention Act is sub judice.
[2] Acacia did not employ either Plaintiff, and it has no employees.

ARIZONA • CALIFORNIA • COLORADO • CONNECTICUT • DELAWARE • FLORIDA • GEORGIA • ILLINOIS • INDIANA • KANSAS • KENTUCKY • LOUISIANA
MARYLAND • MASSACHUSETTS • MINNESOTA • MISSOURI • NEVADA • NEW JERSEY • NEW MEXICO • NEW YORK • NORTH CAROLINA
OHIO • OREGON • PENNSYLVANIA • RHODE ISLAND • TEXAS • UTAH • VIRGINIA • WASHINGTON • WASHINGTON D.C. • WEST VIRGINIA
129075011.1

Hon. Edgardo Ramos
September 6, 2023
Page 2

(including, but not limited to, housing specialists, social workers, case managers, counselors, assistants, drivers, nurses, receptionists, aides, custodians, and security guards) employed by Defendants on or after the date that is six years before the filing of the Complaint in this case …" The definition in and of itself discloses how disparate the members of the group are.

Counsel have twice met and conferred regarding the scope of discovery, including e-discovery, for the potential collective. Defendants objected to the definition of "Covered Employee" and the class-wide documents Plaintiffs seek pursuant to that definition as overly broad as it encompasses thousands of individuals who were not employed by the two entities that employed the two Plaintiffs, but some of whom had different employers, who held different job titles and positions, performed different duties than Plaintiffs, reported to different supervisors, and worked at different worksites (of the many worksites that Defendants operate in a myriad of locations). In this regard, the Court should be aware that Defendants' missions at different locations are much different; for example, some locations provide housing to the homeless, some provide substance abuse counseling, others provide mental health services, youth development, and detox and rehabilitation services. To get a sense of the scope of Plaintiffs' request, as of July 2023 ANHI had 1,150 employees and Promesa, Inc. had 601. Of course, the class and collective proposed by Plaintiffs would be far larger as it would encompass all employees during the limitations period including those who have resigned or been terminated.

In lieu of what Plaintiffs seek, Defendants proposed production of time and pay records for similarly situated employees only, that is, employees who held the same positions as Plaintiffs and who worked at the same locations as Plaintiffs during the applicable statute of limitations period. Plaintiffs rejected Defendants' proposal and continued to press for discovery as to *all* non-exempt employees across three organizations.

Defendants maintain that the discovery Plaintiffs seek, that is, collective/class-wide documents, class size information and contact information for all of non-exempt employees at ANHI and Promesa is overly broad, unduly burdensome, and amounts to a fishing expedition so that Plaintiffs' counsel can both identify new clients and impose such a massive burden that these non-profit entities will have to consider settling rather than being burdened by huge discovery costs. Each topic is addressed below.

    **I.     Class-Wide Documents**

As a preliminary manner, although Plaintiffs' August 7 and 25 letters assert that their document requests asked for a "sampling" of class-wide documents (Dkt. Nos. 44 and 46), no such request was made in either their document requests or at any time during the parties' meet and confer conferences. Rather, Plaintiffs have repeatedly pressed for all responsive information and documents for *all* non-exempt employees, not samples.

Defendants do not object to providing appropriate class and collective discovery at this stage.

Hon. Edgardo Ramos
September 6, 2023
Page 3

However, as stated above, they should not be required to search for and produce documents for all non-exempt employees given the facts concerning Defendants' myriad of operations and locations and the lack of any indication that the employees who worked in other locations and in other positions were similarly situated. Plaintiffs' requests are overly broad and unduly burdensome and seek documents that are not relevant or reasonably calculated to lead to the discovery of admissible evidence. The burden is disproportionate and should not be imposed on Defendants, which are not-for-profit entities, given the thin reed on which Plaintiffs seek such discovery. Accordingly, the Court should adopt Defendants' proposal to appropriately narrow the scope by limiting the production to records of employees who are similarly situated to Plaintiffs rather than adopting Plaintiffs' definition of similarly situated employees that consists of every single non-exempt worker employed for an extended period for both ANHI and Promesa.

To determine whether plaintiffs are similarly situated under the FLSA, district courts typically look to the "(1) disparate factual and employment settings of the individual plaintiffs, (2) defenses available to defendants which appear to be individual to each plaintiff; and (3) the fairness and procedural considerations counseling for and against [collective active treatment]." *Morano v. Intercontinental Capital Group, Inc.*, 10-cv-02192 (KBF), 2012 WL 2952893 (S.D.N.Y. July 17, 2012) (denying certification motion). For certification of a collective, Plaintiffs must show based on pleadings and affidavits that the putative class members were victims of a common policy or plan that violated the law. *Cardenas v. AAA Carting,* 12-cv-7178 (VB), 2013 WL 4038593, *1 (S.D.N.Y. Aug. 9, 2013) (quoting *Hoffman v. Sbarro, Inc.*, 982 F. Supp. 249, 261 (S.D.N.Y. 1997)). Appropriately then, the threshold question in determining whether to order broad pre-certification discovery including whether to authorize notice to employees under the FLSA depends on whether the plaintiff has demonstrated that the potential opt-ins are similarly situated to the individual plaintiff. *Charles v. Nationwide Mut. Ins. Co.,* 09-cv-94 (ARR), 2010 U.S. Dist. LEXIS 143487, *6, 2010 WL 7132173 (E.D.N.Y. May 27, 2010), citing *Patton v. Thompson Corp.,* 364 F. Supp. 2d, 263, 266-67 (E.D.N.Y. 2005). The courts will consider the nature of the named plaintiff's claims, and **evidence** that other potential class members have the same job duties and assignments and are paid in the same manner as the named plaintiff. *Id*. at 267. (emphasis added).

Plaintiffs have not come forward with any evidence that employees in other locations working for other employers were subjected to the same requirements to work through lunch and work off-the-clock that form the basis for Plaintiffs' claims. Instead they rely on speculation. They have not made and cannot make a credible showing that they are entitled to class-wide documents and class size information and contact information concerning all of the thousands of hourly employees employed by Defendants over a protracted time period in light of the evident differences pertaining to the circumstances of their employment, including as to duties, locations, manager identification, applicable time-keeping practices, and most critically whether Defendants uniformly imposed the same lunch policies, work off-the-clock practices and unlawful rounding at all of their multiple locations serving different client populations and carrying out a myriad of different job responsibilities. There is simply no basis from the pleadings or otherwise to credit any claim that an appropriate collective or class would consist of employees who obviously were not similarly situated

Hon. Edgardo Ramos
September 6, 2023
Page 4

to Plaintiffs in terms of their job duties, titles, supervisors, locations, time-keeping and other obligations.

Although the courts do not require plaintiffs to show at the conditional certification stage that they held identical jobs or require that plaintiffs come forward with the names of similarly situated employees, plaintiffs are required to establish that they and the putative class members held common job responsibilities, as this Court so ruled in *Zambrano v. Strategic Delivery Solutions, LLC,* 15-cv-8410 (ER), 2022 U.S. Dist. LEXIS 146669, *15, 2016 WL 3369597 (S.D.N.Y. Aug. 16, 2022). By extension, this principle should extend to the discovery phase, and requests for the production of documents regarding employees who are not similarly situated to the named-plaintiffs should be denied.

In this regard, the Court should be made aware that Defendants are non-profit organizations that operate homeless shelters and provide social services to underserved populations throughout New York City and beyond. They employ numerous employees in different capacities with varying reporting structures across many departments, divisions and work locations. Employee job duties are dictated by the needs of the specific program they service and facility in which they work. In fact, Plaintiffs Neor and Wallace themselves had vastly different roles and duties in light of their positions and work locations (as described herein), which not only makes the unfettered collective and class-wide discovery that Plaintiffs seek inappropriate at this stage but should also defeat class and collective certification or limit its scope when and if the case reaches that stage. *See Morano,* 2012 U.S. Dist. LEXIS 100830, at *23-24 (denying class certification because members of the class were not similarly situated in light of the classes' branch location, payment structure, whether the plaintiff signed an employment agreement, timekeeping and payment procedures, differences in supervising directives and defendants' separate defenses); *Contrera v. Langer*, 278 F. Supp. 3d 702, 719 (S.D.N.Y. 2017) (limiting scope of the proposed collective to superintendents who worked at defendants' buildings in Upper Manhattan and the Bronx only); *Hamadou v. Hess Corp.,* 915 F. Supp. 2d 651, 667 (S.D.N.Y. 2013) (conditionally certifying class of employees at defendant's gas stations in Queens and the Bronx, but not state- or nation-wide, because "the allegations only reach[ed] as far as the management of the territories encompassing the Queens and Bronx stations" and "[n]othing in the record suggest[ed] that similar failures" extended to other territories).

Plaintiffs' wage and hour claims are premised on allegations that are not likely to be common throughout the organizations and different offices. Assuming that these two Plaintiffs were required by their supervisors to work through lunch and off-the-clock, that does not suggest that other supervisors also required their subordinates to work through lunch and off-the-clock. Likewise, it is unsupported that all employees were subjected to the same improper rounding policies. The alleged obligation to work through lunch breaks and perform off-the-clock work are highly-fact intensive inquiries given that Plaintiffs and Defendants' other workers held vastly diverse job functions, worked at different worksites, were employed by separate employers, reported to different managers, and serviced different populations and programs. The fact is that even these two Plaintiffs themselves are not similarly situated. Plaintiff Neor was a LMSW who worked with underserved youth populations

Hon. Edgardo Ramos
September 6, 2023
Page 5

in a non-shelter setting and was a union member subject to a CBA, while Plaintiff Wallace was a Housing Specialist who worked with the client population at homeless shelters and was not a union member. Additionally, they were subject to different timekeeping policies as Plaintiff Neor tracked her time by punching in/out through an electronic time clock, whereas Plaintiff Wallace tracked his time by completing timesheets. As such, Plaintiffs cannot credibly argue that they are similarly situated to all of Defendants' thousands of hourly workers. Therefore, the Court should not credit Plaintiffs' speculative contention in support of their argument for class-wide discovery that all non-exempt employees suffered the same injuries as Plaintiffs.

The courts recognize that discovery should be "conducted with an eye to relevance and proportionality." *Chow v. Sentosacare, LLC*, 19-cv-3541 (FB)(SJB), 2020 U.S. Dist. LEXIS 20770, *7, 2020 WL 559704 (E.D.N.Y. Jan., 23, 2020) (holding that discovery should be limited to the specific practices suffered by the named plaintiff because the complaint did not identify any other patient who suffered from similar conditions to plaintiff and the discovery requests were based on an unsupported hypothesis that such other plaintiffs must exist even though no testimony, complaints or other pre-complaint discovery were cited).[3] Doing so here mandates adopting Defendants' proposal for limited discovery instead of Plaintiffs' proposal for limitless discovery.

Notably, Your Honor recently denied another plaintiff's motion for leave to take discovery to discern the identities of proposed class members and calculate damages. In *Katz v. Total Mobile Ultrasound, Inc.,* 22-cv-7342 (ER), 2023 WL 2945847 (S.D.N.Y. Apr., 14, 2023), the Court held: "While '[p]re-certification discovery is often necessary in order to provide the court with sufficient information to determine whether certification is appropriate'….the defendant must, however, be protected from discovery which is overly burdensome, irrelevant, or which invades privileged or confidential areas.'" (internal citations omitted). The same principle should apply here, and Plaintiffs' request for the production of a huge volume of class-wide documents – without sufficiently tailoring the scope – should be denied.

## II.     Class Size Information and Contact Information

Defendants objected to providing class size information and contact information for all hourly employees because the definition of the collective/class remain an open issue before the Court.

---

[3] *See also United States ex rel. CKD Project, LLC v. Fresenius Med. Care AG & Co. KGAA*, 333 F.R.D. 25 (E.D.N.Y. 2019) (denying nationwide discovery where the plaintiff only had knowledge about misconduct in one state, and only alluded to misconduct elsewhere without any specific allegations and without appropriate limits to connect class discovery to the named plaintiff's claim and proofs); *Cronas v. Willis Grp. Holdings Ltd.*, No. 06-CV-15295 (GEL), 2008 WL 4548861, at *2 (S.D.N.Y. Oct. 8, 2008) ("[T]here is nothing to suggest that nationwide discovery would be relevant to plaintiffs' substantive claims of discrimination. If the adverse decisions regarding plaintiffs were made locally rather than nationally, as the evidence indicates, any discrimination revealed by nationwide discovery would be the result of decisions and policies unrelated to the decisions and policies that affected plaintiffs.").

Hon. Edgardo Ramos
September 6, 2023
Page 6

Accordingly, Defendants have declined to agree to engage in the herculean task of searching for and identifying all of their hourly employees who were employed by three organizations, in different roles, locations, and reporting structures, for a lengthy period of time unless and until the Court ruled on the issue.

 Defendants' position is well taken while Plaintiffs' is not. Based on the foregoing arguments and applicable authorities, it would be appropriate only to require that Defendants provide the available contact information for employees who held the same positions and worked at the same locations as the Plaintiffs during the applicable FLSA period only. At this early juncture, the Court should deny Plaintiffs' request for class-wide discovery of all hourly employees for huge employers over a long time period.

 We look forward to further discussing this matter at the conference scheduled for September 8, 2023.

        Respectfully,

        */s/ Peter T. Shapiro*

        Peter T. Shapiro of
        LEWIS BRISBOIS BISGAARD & SMITH LLP

cc: All counsel of record (via ECF)