UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

GIITOU NEOR *and* TYRONE WALLACE *on behalf of themselves, FLSA Collective Plaintiffs, and the Class*,

                        Plaintiffs,

– against –

ACACIA NETWORK, INC., d/b/a ACACIA NETWORK, ACACIA NETWORK HOUSING INC., d/b/a ACACIA NETWORK, PROMESA RESIDENTIAL HEALTH CARE FACILITY, INC., d/b/a PROMESA, *and* JOHN DOE CORP 1–100,

                        Defendants.

**OPINION & ORDER**

22-cv-04814 (ER)

RAMOS, D.J.:

      Giitou Neor and Tyrone Wallace (collectively "Plaintiffs") bring this action against defendants Acacia Network, Inc., d/b/a Acacia Network, Acacia Network Housing Inc., d/b/a Acacia Network, Promesa Residential Health Care Facility, Inc., d/b/a Promesa, and John Doe Corporations 1-100 (collectively, "Acacia"). Plaintiffs allege that Acacia violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL"), and request damages consisting of unpaid wages, including overtime, statutory penalties, liquidated damages, interest, and attorneys' and expert fees. Pending before the Court is Acacia's partial motion to dismiss the NYLL claim alleging failure to provide proper wage statements and notices for lack of subject matter jurisdiction. Doc. 35 at 1. Also before the Court is Acacia's motion to strike ¶¶ 29–31 and ¶¶ 38–39 of Plaintiffs' Third Amended Complaint ("TAC") for exceeding the Court's grant of leave to amend. *Id.* For the reasons set forth below, Acacia's partial motion to dismiss is GRANTED, and its motion to strike is DENIED.

I.  BACKGROUND

   A. Factual Background[1]

Plaintiffs bring this class action on behalf of employees who worked for Acacia on or after June 8, 2016 (six years before Plaintiffs filed their first Complaint on June 8, 2022). Doc. 31 at ¶ 12. Acacia is a not-for-profit corporation, headquartered in the Bronx, that subleases hotels and accommodations to the government to use as housing and assistance centers for the homeless in New York City. *Id.* at ¶¶ 7–8. Acacia controls defendant Promesa Residential Health Care Facility, Inc. ("Promesa"). *Id.* at ¶ 7(d).

Neor worked at Promesa as a youth social worker from January 2019 until May 14, 2020. *Id.* at ¶¶ 24–25. She was scheduled to work from 8:00 am to 4:00 pm, five days per week with a one-hour unpaid lunch break. *Id.* at ¶ 27. Acacia consistently required her to work through her lunch break and after her shift ended at 4:00 pm, even though her supervisor frequently required her to "clock out" at 4:00 pm. *Id.* at ¶¶ 28–31. Neor was never paid for her work during her lunch hour and rarely paid for her work after her scheduled shift. *Id.* at ¶ 31.

Wallace worked for Acacia from March 21, 2018, until December 28, 2021. *Id.* at ¶ 34. He was regularly scheduled to work from 9:00 a.m. to 5:00 p.m., five days per week, with a one-hour unpaid lunch break. *Id.* at ¶¶ 36–37. He also was required to work during his unpaid lunch break and after his shift ended at 5:00 pm. *Id.* at ¶¶ 37–38.

Plaintiffs claim that Acacia provided them with improper wage statements and notices under the Wage Theft Protection Act ("WTPA") of the NYLL. *Id.* at ¶ 41. Specifically, Plaintiffs allege that the number of hours listed on the wage statements they received from Acacia was inaccurate because the statements understated the number of hours they worked. *Id.* at ¶ 44. They argue that the wage statements were improper

---

[1] The facts alleged in the TAC, Doc. 31, are substantially similar to the allegations in Plaintiffs' First Amended Complaint ("FAC"). Doc. 20. The Court's recitation of the facts in its Opinion & Order on February 7, 2023 ("February 2023 Order"), is adopted herein, Doc. 26 at 2–3, a brief summary of which is provided below along with any newly alleged and pertinent facts.

2

because they did not include the "*actual* number of hours that employees worked." Doc. 37 at 7.

### B. Procedural Background[2]

On February 7, 2023, the Court issued the February 2023 Order denying Acacia's motion to dismiss Plaintiffs' non-neutral rounding claim, Doc. 26 at 7, but granting its motion to dismiss Plaintiffs' claim alleging failure to provide proper wage statements and notices under the NYLL. *Id.* at 9. However, the Court permitted Plaintiffs to amend their complaint to replead their claims under the WTPA. *Id.* at 10.

On March 9, 2023, Plaintiffs filed the Second Amended Complaint ("SAC"). Doc. 27. On March 30, 2023, Acacia requested leave to file another motion to dismiss Plaintiffs' WTPA claims. Doc. 28. The Court held a premotion conference on April 5, 2023, at which it granted Plaintiffs leave to file a TAC to cure defects with its WTPA claim. Min. Entry dated April 5, 2023.

On April 10, 2023, Plaintiffs filed the TAC. Doc. 31. On April 28, 2023, Acacia filed this motion to dismiss Plaintiffs' WTPA claim and strike certain paragraphs of the TAC. Doc. 35.

### C. Complaint History

Acacia asks the Court to strike five paragraphs of the TAC, ¶¶ 29–31 and ¶¶ 38–39, because they "exceeded the leave to amend granted by the Court." Doc. 35 at 1. As described below, the slight amendments made to the various iterations of the Complaints did not exceed the Court's grant of leave to amend.

*1. Plaintiffs' Allegations Regarding Plaintiff Neor in ¶¶ 29–31 of the TAC.*

In their original Complaint, Plaintiffs alleged that

> [t]hroughout her employment, [] NEOR was regularly scheduled to work five (5) days per week … from 8:00 am to 4:00 pm with one (1) unpaid hour break. On a daily basis, despite [] the set schedule, [she] was *required to continue working until 6:00 pm*.

---

[2] A recitation of the procedural history prior to February 7, 2023, is set forth in the February 2023 Order. Doc. 26 at 3–4.

3

Doc. 1 at ¶ 27 (emphasis added).  Plaintiffs also asserted that Neor was required to work through her lunch breaks.  *Id.* at ¶ 28.  Thus, according to the original complaint, Neor allegedly worked fifty hours per week.  *Id.* at ¶ 27.

In the FAC, Plaintiffs explained that Neor was compensated according to her official schedule (still 8:00 am to 4:00 pm, five days per week), which only required her to work thirty-five hours each week.  Doc. 20 at ¶ 27.  Plaintiffs once again claimed that Neor was required to work through her lunch break, *id.* at ¶ 29, and also provided additional detail on Neor's work after 4:00 pm.  *Id.* at ¶¶ 31–33.  Specifically, the FAC alleged that

> [t]hree times a week at 4:00 pm, [Neor] was required to transport children … for various consultations or appointments, during which time she was required to stay with the children.  After the appointment or consultation was over, [] NEOR then had to bring the children back …  The whole process lasted at least two (2) hours, meaning that three (3) days a week [Neor] did not finish working until at least 6:00 pm.

*Id.* at ¶ 32.  The FAC further alleged that on the other two days each week, Neor would "attend children's therapy groups at 4:00 [pm]," which lasted forty-five minutes.  *Id.* at ¶ 33.  After these therapy sessions, Neor would spend thirty minutes returning the children to their shelter accommodations.  *Id.*  Thus, twice per week, Neor worked until approximately 5:15 pm.  *Id.*  In sum, the FAC alleges that Neor worked forty-eight hours and thirty minutes each week.  *Id.* at ¶ 34.

In the SAC, Plaintiffs realleged nearly identical facts to the FAC.  Doc. 27 at ¶¶ 27–31.  Specifically, Plaintiffs alleged that Neor was scheduled to work from 8:00 am to 4:00 pm with one unpaid hour for her lunch break five days per week.  *Id.* at ¶ 27.  However, Neor was required to work through her lunch break, *id.* at ¶ 28, and after her scheduled shift ended at 4:00 pm.  *Id.* at ¶¶ 29–30.  The SAC alleged that in total, Neor worked approximately forty-eight hours and thirty minutes each week.  *Id.* at ¶ 31.

In the TAC, Plaintiffs similarly claim (almost verbatim to the FAC and SAC) that

4

> approximately three (3) times a week at 4:00 pm after she had clocked out of her shift, [] NEOR was required to transport children … for various consultations or appointments, during which time she was required to stay with the children. After the appointment or consultation was over, [] NEOR then had to bring the children back …. The whole process lasted at least two (2) hours, meaning that three (3) days a week [Neor] did not finish working until at least 6:00 pm.

Doc. 31 at ¶ 29. Plaintiffs once again assert that Neor "was required to attend children's therapy groups after her shift ended at 4:00 pm" twice per week. *Id.* at ¶ 30. These sessions, along with Neor's duty to return the children afterwards, lasted approximately one hour and fifteen minutes (or until 5:15 pm). *Id.* Thus, Plaintiffs allege that Neor worked approximately forty-eight hours and thirty minutes each week, for which she was not adequately compensated. *Id.* at ¶ 31.

    2. *Plaintiffs' Allegations Regarding Plaintiff Wallace in ¶¶ 38–39 of the TAC.*

In the original Complaint, Plaintiffs alleged that Wallace was scheduled to work from 9:00 am to 5:00 pm five days per week. Doc. 1 at ¶ 33. Plaintiffs alleged that he was required to work through his unpaid lunch break and until 6:00 pm daily "off-the-clock." *Id.* at ¶¶ 33–34. In the FAC, Plaintiffs similarly explained that Wallace "clocked out" while he worked through his lunch break, Doc. 20 at ¶ 42, and when he performed additional work at the end of his scheduled shift from 5:00 pm until 6:00 pm. *Id.* at ¶ 44. Thus, Plaintiffs concluded that Wallace worked forty-five hours each week but was only compensated for thirty-five of these hours. *Id.* at ¶ 45. Plaintiffs repeated those same allegations, with non-substantive alterations, in the SAC, Doc. 27 at ¶¶ 38–39, and then again (verbatim to the SAC) in the TAC. Doc. 31 at ¶¶ 38–39.

## II. LEGAL STANDARD

### A. Rule 12(b)(1): Lack of Subject Matter Jurisdiction

Federal Rule of Civil Procedure 12(b)(1) requires that an action be dismissed for lack of subject matter jurisdiction when the district court lacks the statutory or constitutional power to adjudicate the case. Fed. R. Civ. P. 12(b)(1). The party asserting

5

subject matter jurisdiction carries the burden of establishing, by a preponderance of the evidence, that jurisdiction exists. *Morrison v. Nat'l Austl. Bank Ltd.*, 547 F.3d 167, 170 (2d Cir. 2008) (quoting *Makarova v. United States*, 201 F.3d 110, 113 (2d Cir. 2000)).  On a Rule 12(b)(1) motion challenging the district court's subject matter jurisdiction, evidence outside of the pleadings may be considered by the court to resolve the disputed jurisdictional fact issues. *Zappia Middle E. Constr. Co. v. Emirate of Abu Dhabi*, 215 F.3d 247, 253 (2d Cir. 2000) (internal citation omitted); *see also Morrison*, 547 F.3d at 170 (citing *Makarova*, 201 F.3d at 113).  When evaluating a motion to dismiss for lack of subject matter jurisdiction, the court accepts all material factual allegations in the complaint as true but does not necessarily draw inferences from the complaint favorable to the plaintiff.  *J.S. ex rel. N.S. v. Attica Cent. Sch.*, 386 F.3d 107, 110 (2d Cir. 2004) (citing *Shipping Fin. Servs. Corp. v. Drakos*, 140 F.3d 129, 131 (2d Cir. 1998)).

### B.  Rule 12(f):  Request to Strike Plaintiffs' Allegations

Federal Rule of Civil Procedure 12(f) allows a court to "strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f).  Motions to strike are generally disfavored.  *Cnty. Vanlines Inc. v. Experian Info. Sols., Inc.*, 205 F.R.D. 148, 152 (S.D.N.Y. 2002).  Thus, "courts should not tamper with the pleadings unless there is a strong reason for so doing." *Lipsky v. Commonwealth United Corp.*, 551 F.2d 887, 893 (2d Cir. 1976).  However, motions to strike "may be appropriate where a plaintiff has exceeded the scope of his leave to amend." *Miles v. City of New York*, No. 14-cv-9302 (VSB), 2018 WL 3708657, at *5 (S.D.N.Y. Aug. 3, 2018).  In this Circuit, district courts have "dismissed claims in amended complaints where the court granted leave to amend for a limited purpose and the plaintiff filed an amended complaint exceeding the scope of the permission granted." *Palm Beach Strategic Income, LP v. Salzman*, 457 F. App'x 40, 43 (2d Cir. 2012).

### III.  ANALYSIS

#### A.  Plaintiffs Failed to Plead Class Standing for Violations of the WTPA.

The WTPA of the NYLL requires employers to provide each employee at the time of hire with a notice, which contains their hourly rate and other basic wage information.  NYLL § 195(1)(a).  A violation of this provision exposes the employer to damages that accumulate at $50 per day up to $5,000.  NYLL § 198(1-b).  The WTPA also requires employers to provide employees with accurate wage statements each time they are paid.  NYLL § 195(3).  If the employer fails to provide proper wage statements, the employer is liable for damages for each violation, which accumulate at $250 per day up to $5,000.  NYLL § 198(1-d).  Plaintiffs allege that Acacia failed to provide them with proper wage notices and statements.  Doc. 31 ¶ 41.

Plaintiffs argued that Acacia's wage statements deprived them of the ability to easily recognize the inadequacy of their pay.  Doc. 24 at 10.  The Court found this injury to be implausible because the wage statements showed a "lower number of hours recorded than Plaintiffs actually worked … [which] would immediately alert the Plaintiffs to the fact that they were not being properly compensated."  Doc. 26 at 8.  Thus, the Court found that Plaintiffs had "fail[ed] to demonstrate how the lack of accurate wage notices and statements led to either a 'tangible injury or something akin to a traditional cause of action.'"  *Id.* at 9 (quoting *Francisco v. NY Tex Care, Inc.*, No. 19-cv-1649 (PKC), 2022 WL 900603, at *7 (E.D.N.Y. Mar. 28, 2022)).  The Court therefore dismissed Plaintiffs' claim for lack of standing.  Doc. 26 at 9.

In the TAC, Plaintiffs now argue that the injury they suffered from Acacia's improper wage statements was a "weaken[ed] [] ability to contest the sufficiency of [Acacia's] wage payments to them." Doc. 31 at ¶ 43. In other words, Plaintiffs contend that the inaccurate wage statements had a detrimental impact on their "lawsuit's *strength*," Doc. 37 at 10, by depriving them of "incontestable documentary evidence" of their WTPA claim. Doc. 31 at ¶ 48. Plaintiffs argue that the statements were required to report the number of hours they actually worked—not just the number of hours for which they were paid. *Li v. 6688 Corp.*, No. 12-cv-6401 (TPG), 2013 WL 5420319, at *2–4 (S.D.N.Y. Sept. 27, 2013) (granting conditional class certification when plaintiffs alleged the wage statements that they were provided omitted work conducted off-hours); *Copper v. Cavalry Staffing, LLC*, 132 F. Supp. 3d 460, 468 (E.D.N.Y. 2015) (holding that wage statements that report the number of hours plaintiffs were paid instead of the number of hours plaintiffs worked could be the basis for a NYLL § 195(3) claim). Plaintiffs assert that had the wage statements listed their *actual* hours worked, there would have been a "clear, unambiguous, and indisputable discrepancy between the number of hours that Plaintiffs worked and the number of hours for which they were paid." Doc. 31 at ¶ 45. Thus, the injury Plaintiffs allege in the TAC was a deprivation of valuable evidence of time-shaving. Doc. 37 at 5.

Acacia argues that Plaintiffs do not have standing to assert claims on a class wide basis for WTPA violations.[3] Doc. 36 at 6. With respect to Plaintiffs' wage statements claim, Acacia contends that Plaintiffs "have standing to claim they were underpaid …, but they lack standing to seek the penalty provided for by the WTPA." *Id.* at 13. Acacia argues that if the statements listed all the hours that Plaintiffs allegedly worked, then

---

[3] First, Acacia argues that Plaintiffs have failed to allege any injury by virtue of its alleged failure to "provide proper wage *notices*." Doc. 37 at 12 (emphasis added); *see also* Doc. 39 at 5. Thus, Acacia asserts that Plaintiffs are limited to their claim that the "wage *statements* were inaccurate." Doc. 36 at 12 (emphasis added). The Court agrees with Acacia that Plaintiffs have abandoned their claims with respect to wage *notices*, which are absent from Plaintiffs' opposition. *See generally* Doc. 37. Thus, Plaintiffs' claim related to NYLL § 195(1)(a) is dismissed.

8

there would be no WTPA violation because it is "inconceivable" that Acacia would not have then paid Plaintiffs for the hours listed on those statements. Doc. 39 at 5. Additionally, Acacia asserts that the alleged injury Plaintiffs complain of (a weakened lawsuit) is theoretical and an insufficient predicate for standing since they are still able to litigate the dispute and potentially recover damages notwithstanding this lack of valuable evidence. Doc. 39 at 6. Acacia also argues that the Court should ignore the cases cited by Plaintiffs in light of the recent Supreme Court decision, *TransUnion LLC v. Ramirez,* 141 S. Ct. 2190 (2021). [4] Acacia contends that the pre-*TransUnion* cases cited to by Plaintiffs are no longer good law. Doc. 36 at 10. Instead, Acacia urges the Court to follow a number of recent cases that have denied WTPA claims for lack of standing. *Id.* at 11–12.

       The Court agrees with Acacia that Plaintiffs have not sufficiently alleged a concrete injury to satisfy Article III standing requirements with respect to their claim regarding wage *statements*. "It is well established that [Plaintiffs] must demonstrate standing for each claim [they] seek[] to press." *Mahon v. Ticor Title Ins. Co.*, 683 F.3d 59, 64 (2d Cir. 2012) (internal quotations omitted). To satisfy Article III's standing requirements, Plaintiffs must do more than "allege a bare [statutory] procedural violation, divorced from any concrete harm." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 341 (2016); *TransUnion*, 141 S. Ct. at 2205 ("[A]n injury in law is not an injury in fact."). Physical and monetary harms are generally concrete. *TransUnion*, 141 S. Ct. at 2204. For intangible injuries to be concrete, the injury must be "'real,' and not 'abstract.'" *Spokeo*, 578 U.S. at 340. In evaluating the injury, the Court considers whether the alleged injury "has a close relationship to a harm that has traditionally been regarded as providing a basis for a lawsuit in English or American courts." *Id.* at 340–41. For example, harm to

---

[4] Plaintiffs concede that *TransUnion* sets "forth more exacting standards for establishing an injury-in-fact" in statutory causes of action. Doc. 37 at 10; *Beh v. Cmty. Care Companions, Inc.*, No. 19-cv-1417 (MJR), 2022 WL 5039391, at *8 (W.D.N.Y. Sept. 29, 2022), adopted by 2023 WL 1969370 (JLS) (W.D.N.Y. Jan. 26, 2023). Plaintiffs simply argue that those more exacting standards are met here.

9

one's reputation and privacy are intangible injuries that have been recognized as concrete. *TransUnion*, 141 S. Ct. at 2204 (citing *Meese v. Keene*, 481 U.S. 465, 473 (1987); *Davis v. Fed. Election Comm'n*, 554 U.S. 724, 733 (2008)). However, to establish Article III standing for an "informational injury,"[5] Plaintiffs must show that they had an "interest in using the information … beyond bringing [their] lawsuit." *Harty v. W. Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022) (quoting *Laufer v. Looper*, 22 F.4th 871, 881 (10th Cir. 2022)).

Since *TransUnion*, several courts in this circuit have found a defendant's failure to provide proper wage statements to its employees to be a "technical statutory violation[] that … cannot sustain Article III standing in federal court." *Sevilla v. House of Salads One LLC*, No. 20-cv-6072 (PKC), 2022 WL 954740, at *7 (E.D.N.Y. Mar. 30, 2022); *see also Chen v. Lilis 200 W. 57th Corp.*, No. 19-cv-7654 (VEC), 2023 WL 2388728, at *9 (S.D.N.Y. Mar. 7, 2023) (dismissing plaintiff's NYLL claims for lack of standing); *Beh v. Cmty. Care Companions Inc.*, No. 19-cv-1417 (MJR), 2022 WL 5039391, at *9 (W.D.N.Y. Sept. 29, 2022), adopted by 2023 WL 1969370 (JLS) (W.D.N.Y. Jan. 26, 2023) (doing the same). Perhaps most analogous to the instant dispute, the Court dismissed a plaintiff's wage statement claim for lack of standing when the injury plaintiff alleged was an inability to bring his lawsuit sooner. *Shi v. TL & CG Inc.*, No. 19-cv-8502 (SN), 2022 WL 2669156, at *8–9 (S.D.N.Y. July 11, 2022).

Plaintiffs argue that these decisions are inapposite because the plaintiffs in those cases did not argue that the alleged harm that they suffered was a weakened lawsuit, as they do here. Doc. 37 at 9. Plaintiffs specifically attempt to distinguish the instant case from *Shi* by arguing that the injury in *Shi* was "purely hypothetical," while the evidentiary value Plaintiffs allegedly were denied in the instant case is not. *Id.* at 9–10. The Court disagrees.

---

[5] The Second Circuit has defined an "informational injury" as one where an individual is "deprived of information to which he is entitled." *Harty v. West Point Realty, Inc.*, 28 F.4th 435, 444 (2d Cir. 2022).

10

Being placed in a weaker litigation position has no relationship to a harm that has been recognized as creating a traditional cause of action. *Cf. Spokeo*, 578 U.S. at 340–41. Plaintiffs would not be able to sue to recover damages for this injury. In fact, a weakened litigation posture might not ultimately result in harm at all, as a plaintiff may still prevail on their claim and obtain the same damages even from a less strong legal position. Thus, a plaintiff in such a circumstance may suffer no injury whatsoever. Therefore, the weakened litigation position that Plaintiffs complain of is not concrete and tangible but rather abstract and theoretical. Additionally, to establish Article III standing for an informational injury, Plaintiffs must establish they had an interest in the information apart from its utility in bringing the instant lawsuit. *Harty*, 28 F.4th at 444. However, Plaintiffs point to no such injury here. Thus, the statutory violation Plaintiffs assert is insufficient to establish an injury in fact for Article III standing. *TransUnion*, 141 S. Ct. at 2205. Therefore, Acacia's motion to dismiss is GRANTED.

### B.  Plaintiffs did not Exceed the Scope of the Court's Leave to Amend.

Acacia also argues that Plaintiffs went "far beyond the leave granted by the Court" in amending ¶¶ 29–31 and ¶¶ 38–39 of the TAC. Doc. 36 at 15–16. Acacia alleges that Plaintiffs "never previously asserted the claims" that both Neor and Wallace were required to work off the clock daily. *Id.* at 16. Acacia claims it is "impossible" and "suspicious" that Plaintiffs make these allegations in the TAC since they "failed to assert such claims at the outset or … during the roughly nine months that this case has been pending." *Id.* at 16–17. In reply, Acacia separately argues that even if the allegations were present in the FAC, that they were "abandoned by the time Plaintiffs promulgated" the SAC. Doc. 39 at 7. Since Plaintiffs "took no steps to preserve those claims" in the SAC, *id.*, Acacia asks the Court to "see through this cynical gambit and strike" these portions of the TAC. Doc. 36 at 17.

Plaintiffs respond that this argument "has absolutely no factual foundation." Doc. 37 at 10. Plaintiffs submit a blackline comparing the TAC with the FAC, Doc. 38-1,

11

which purportedly proves any alterations made in the TAC to these paragraphs were "purely stylistic" and "edited for greater clarity." Doc. 37 at 13. Plaintiffs point out that the allegations contained in the TAC, which Acacia seeks to strike, were in the FAC—even if they were not in the original complaint. *Id.*

1. *Acacia's Motion to Strike ¶¶ 29–31 of the TAC related to Plaintiff Neor is Denied.*

The allegations in ¶¶ 29–31 of the TAC contain details relating to the claim that Neor worked unpaid five days per week during her lunch hour and after she clocked out at 4:00 pm. Doc. 31 at ¶¶ 29–31. The TAC alleges that Neor worked until 6:00 pm three times per week, and until 5:15 pm twice per week. *Id.* Thus, Neor purportedly worked forty-eight hours and thirty minutes each week, for which she was not adequately compensated. *Id.* at ¶ 31. These factual assertions are identical to those found in the FAC, Doc. 20 at ¶¶ 27–34, and the SAC. Doc. 27 ¶¶ 27–31. In fact, they are not even so attenuated from Plaintiff's *original* complaint, which alleged that Plaintiffs worked unpaid until 6:00 pm daily and without a lunch break for a total of fifty hours per week. Doc. 1 at ¶¶ 27–28. The Court may strike new allegations that were not present in prior pleadings. *Starostenko v. UBS AG*, No. 19-cv-9993 (KPF), 2022 WL 1082533, at *3 (S.D.N.Y. Apr. 7, 2022). However, the Court finds nothing new in ¶¶ 29–31 of the TAC, much less "suspicious" or "cynical," that would be appropriate to strike in this instance.

2. *Acacia's Motion to Strike ¶¶ 38–39 of the TAC related to Plaintiff Wallace is Denied.*

Beginning with their original complaint, Plaintiffs have repeatedly alleged that Wallace was scheduled to work from 9:00 am to 5:00 pm five days per week but regularly worked unpaid through his lunch break and after he clocked out for the day. Doc. 1 at ¶¶ 33–34. Those same allegations are repeated in greater detail in the FAC. Doc. 20 at ¶¶ 42–45. Then, the FAC's allegations are recited nearly verbatim in the SAC, Doc. 27 at ¶¶ 38–39, and the TAC. Doc. 31 at ¶¶ 38–39. The Court finds nothing in the evolution of these paragraphs indicating Plaintiffs have gone "far beyond the leave

12

granted by the Court" in drafting the TAC. Doc. 36 at 15. Thus, the Court declines to strike ¶¶ 38–39 of the TAC.

### IV. CONCLUSION

For the reasons stated above, Acacia's partial motion to dismiss the WTPA claim is GRANTED, and its motion to strike ¶¶ 29–31 and ¶¶ 38–39 of the Third Amended Complaint is DENIED. The Clerk of the Court is respectfully directed to terminate the motion. Doc. 35.

It is SO ORDERED.

Dated:   October 19, 2023
         New York, New York

                                                    _____
                                                    EDGARDO RAMOS, U.S.D.J.

13