**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

GIITOU NEOR and TYRONE WALLACE,
*on behalf of themselves, FLSA Collective Plaintiffs,*
*and the Class,*

                        Plaintiffs,

     v.

ACACIA NETWORK, INC.,
    d/b/a ACACIA NETWORK,
ACACIA NETWORK HOUSING INC.,
    d/b/a ACACIA NETWORK,
PROMESA RESIDENTIAL HEALTH CARE
FACILITY, INC.,
    d/b/a PROMESA, and
JOHN DOE CORP 1-100

                    Defendants.

Case No.: 22-cv-04814 (ER)

---

**REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF PLAINTIFFS'**
**MOTION FOR CONDITIONAL COLLECTIVE CERTIFICATION**

C. K. Lee, Esq.
**Lee Litigation Group, PLLC**
148 West 24th Street, 8th Floor
New York, NY 10011
Tel: (212) 465-1188
Fax: (212) 465-1181
*Attorneys for Plaintiffs,*
*FLSA Collective Plaintiffs,*
*and the Class*

## <u>TABLE OF CONTENTS</u>

**INTRODUCTION** ................................................................................................................. 1

**ARGUMENT** ....................................................................................................................... 1

I.   Purported Inconsistences in Declarations and Deposition Testimony Are Fabricated and/or Irrelevant to Conditional Certification ........................................................................ 1

II.   Plaintiffs Have Made the Modest Factual Showing Required for Conditional Certification ................................................................................................................ 4

III.   Purported Variations in Job Duties and Locations Are Irrelevant ........................................ 8

IV.   Purported Variations in the Application of Defendants' Common Policy Are Irrelevant ...11

V.   An FLSA Collective Would Not Require Individualized Inquiries .................................. 14

VI.   Any Purported Employees of Promesa, Inc. Are Also Employees of Acacia Network, Inc. and Acacia Network Housing, Inc. ................................................................................ 14

# TABLE OF AUTHORITIES

## Cases

*Ahmed Hegazy v. Halal Guys, Inc.*, 2022 U.S. Dist. LEXIS 159160 (S.D.N.Y. Sept. 1, 2022) .... 6

*Amador v. Morgan Stanley & Co. LLC*, 2013 U.S. Dist. LEXIS 19103, at *26-27 (S.D.N.Y. Feb. 7, 2013) .................................................................................................................................. 4

*Balverde v. Lunella Ristorante, Inc.*, 15-cv-5518, 2016 U.S. Dist. LEXIS 62397, 2016 WL 2757430, at *4 (S.D.N.Y. May 11, 2016) .................................................................................. 8

*Camesi v. Univ. of Pittsburgh Med. Ctr.*, 2009 U.S. Dist. LEXIS 40571, at *11-12 (W.D. Pa. May 14, 2009) ................................................................................................................... 13

*Chang Yan Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654, 2021 U.S. Dist. LEXIS 8011, 2021 WL 135248, at *4 (S.D.N.Y. Jan. 14, 2021) ................................................................. 6

*Chui v. Am. Yuexianggui of Li LLC*, 2020 U.S. Dist. LEXIS 117296 (E.D.N.Y. July 2, 2020) ..... 8

*Colon v. Major Perry St. Corp.*, No. 12 Civ. 3788, 2013 U.S. Dist. LEXIS 93021 (S.D.N.Y. July 2, 2013) ............................................................................................................................... 6

*Garcia v. Four Bros. Pizza*, 13-cv-1505, 2014 U.S. Dist. LEXIS 76015, at *20-21 n.7 (S.D.N.Y. May 23, 2014) ....................................................................................................................... 4

*Hamelin v. St. Luke's Healthcare*, 274 F.R.D. 385, 395 (N.D.N.Y. 2011) .................................. 13

*Hernandez v. JRPAC Inc.*, 2016 U.S. Dist. LEXIS 75430, *18 (S.D.N.Y. June 9, 2016) ............ 7

*King v. Fedcap Rehab. Servs.*, 2022 U.S. Dist. LEXIS 18090 (S.D.N.Y. Feb. 1, 2022) .............. 9

*Kuznyetsov v. W. Penn Allegheny Health Sys.*, 09-cv-00379, 2009 U.S. Dist. LEXIS 47163, (W.D. Pa. June 1, 2009) ....................................................................................................... 12

*Meyers v. Crouse Health Sys.*, 274 F.R.D. 404 (N.D.N.Y. March 8, 2011) ..................... 12, 13, 14

*Perez v. Isabella Geriatric Ctr.*, 2016 U.S. Dist. LEXIS 136855 (S.D.N.Y. Sept. 30, 2016) ...... 14

*Rodney v. Casella Waste Sys., Inc.*, No. 2:21-cv-00196, 2023 U.S. Dist. LEXIS 9290, at *18 (D. Vt. Jan. 19, 2023) ................................................................................................................. 4

*Sharma v. Burberry Ltd.*, 52 F. Supp. 3d 443, 456 (E.D.N.Y. 2014) ........................................... 4

*Tay v. The New York and Presbyterian Hospital*, 2024 U.S. Dist. LEXIS 173097, at *2 (S.D.N.Y. Sep. 24, 2024) ..................................................................................................10, 11

*Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 403 (S.D.N.Y. 2012) ....................................... 6

*Worley v. City of New York*, No. 17-CV-4337, 2020 U.S. Dist. LEXIS 32931, 2020 WL 915809, at *5 (S.D.N.Y. Feb. 26, 2020) ........................................................................................... 14

*Yu G. Ke v. Saigon Grill, Inc.*, 595 F. Supp. 2d 240 (S.D.N.Y. 2008) ......................................... 7

*Zhang v. Sabrina USA Inc.*, 18-cv-12332, 2019 U.S. Dist. LEXIS 213318, at *8-9 (S.D.N.Y. Dec. 10, 2019) ..................................................................................................................... 3

## Regulations

29 C.F.R. § 785.13 ................................................................................................................... 12

## INTRODUCTION

Plaintiffs submit this memorandum of law in reply to Defendants' opposition to their motion for conditional 216(b) collective certification. As detailed below, Defendants' arguments are entirely meritless.

## ARGUMENT

### I. Purported Inconsistences in Declarations and Deposition Testimony Are Fabricated and/or Irrelevant to Conditional Certification

Defendants' argument against certification largely depends on the claim that the deposition testimonies of Named and Opt-In Plaintiffs contradict either their individual declarations or the general allegations on which this motion rests. Defendants do not, however, quote very much deposition testimony and, instead, purport to paraphrase the testimony. For example, on page 25 of their brief, Defendants state that "despite acknowledging that overtime authorization from a supervisor was required prior to performing overtime work, Plaintiffs and several Opt-In Plaintiffs testified that they did not seek such authorization for some or all of that time, which gives rise to the defense that supervisors may not have been aware that employees were working overtime." Defendants then cite to the page/line numbers of multiple Named and Opt-in Plaintiffs, one of which Neor. Tr. 64:5-65:2.

However, the actual text of this discussion entirely undercuts Defendants' characterization and, indeed, reveals that characterization to be in bad faith, especially if one begins slightly earlier at the end of page 63 (not included in Defendants' excerpt):

> Q. Was your work past 4:00 p.m. authorized?
> A. I was -- I was still working on the clock. I was still providing services, so, yes.
> Q. Did Ms. Vasquez, Ms. Follweiler or Mr. Carridice approve you working past
> four o'clock?
> A. They knew they had sent me out on the work trip, so, yes.
> Q. Did you ever have to submit any type of documentation for authorization to work late or work
> overtime?
> A. No.
> Q. Do you know if authorization was typically required before you worked past four o'clock?

1

A. Yes.
Q. What's the process for obtaining authorization?
A. That they have notice that you're working over your hours.
Q. Did you have to inform them?
A. No. They were aware I was working over my hours because they were the ones who instructed me to do the task.
Q. But did you have to inform them in any other way? Did you have to give them heads-up that you were working late or submit any type of documents to show that?
A. No. They are tasks that they assigned.

Second Declaration of C.K. Lee ("Lee Decl. II"), **Exhibit 25** (Neor Tr. 63:19-65:1)

The entire point of Plaintiff Neor's testimony is that there was no need to seek formal authorization from her supervisors for overtime work outside her regular, compensated schedule because her supervisors were the very people who had personally instructed her to perform that work—a point Plaintiff Neor is forced to reiterate twice. It is, therefore, *not* true that Plaintiff Neor's testimony "gives rise to the defense that supervisors may not have been aware that employees were working overtime." On the contrary, it supports the opposite inference.

We find another distortion only a few lines below (page 25), where Defendants state that Plaintiff Williams "testified that her supervisors did not observe her working past her shift because their shift ended earlier than hers," citing to Williams Tr. 69:12-21. As with the previous citation, Defendants' point is that their supervisors did not know, and had no reason to know, that employees were working outside regular shifts. But, here too, the actual text, and its broader context that starts a page earlier, undermines this conclusion:

Q. Are there any other employees that witnessed that you worked past your scheduled shift, if you know?
A. Yes. Yeah.
Q. What are their names?
A. Jovanna, Camilla, Ms. Bell, and –
Q. And do you know if your managers or supervisors ever saw you work past your shift?
A. Well, yes, Ms. Bell saw me. Well -- well she saw all -- all of us, Ms. Bell.

Q. So Ms. Bell worked 9:00 to 5:00 and you worked 4:00 to 12:00, right?
A. Yeah. Uh-huh.
Q. So how did she see you work past your shift if -- wasn't she already gone?
A. No, because I'm talking about the weekends. On -- on the weekends I worked from 9:00 to 5:00.

Lee Decl. II, **Exhibit 26** (Williams Tr.) 68:9-17; 69:19-70:3

Plaintiff Williams did *not* "testif[y] that her supervisors did not observe her working past her shift." To the contrary, she testified that a supervisor *did* observe this. Dissatisfied with this testimony, Defendants' counsel then attempted to catch Plaintiff Williams in a contradiction by a highlighting a difference in work schedules that would make such observation impossible, whereupon Plaintiff Williams clarified that she was referring to *weekend* shifts, when she and supervisor Bell had identical shifts. It was, therefore, perfectly possible for supervisor Bell to observe that Plaintiff Williams was working past her shift when, at 5:00 p.m., Plaintiff Williams was still immersed in work tasks that she was not putting down. Defendants' citation to the deposition transcript (69:12-21) ends right before the clarification.

Plaintiffs cannot, within the limits imposed by a reply memorandum, expose all of Defendants' mischaracterizations and lies of omission. Indeed, Plaintiffs have just expended almost three pages highlighting the disingenuousness of just two of the dozens of deposition citations that are peppered throughout Defendants' brief. As the adage goes, a lie travels halfway around the globe while the truth is still putting on its shoes. Accordingly, Plaintiffs urge the Court not to take Defendants' many quoteless citations to the deposition testimony at face value, given their demonstrated propensity for mendacious interpretations.

Even if the Court were to discover some bona fide inconsistencies, courts have recognized that "inconsistencies in [a plaintiff's] testimony and affidavits regarding facts of [their employment] could be attributed to a faulty memory or inability to precisely recall details from [many] years prior." *Zhang v. Sabrina USA Inc.*, 18-cv-12332, 2019 U.S. Dist. LEXIS 213318, at *8-9 (S.D.N.Y. Dec. 10, 2019). This is one reason why courts have declined to "engage in a person-by-person fact intensive inquiry of the declarations and deposition testimony of each plaintiff [] in an attempt to iron out inconsistencies," as "this type of individualized inquiry sought by Defendant

is premature at the conditional certification stage and has been specifically rejected by courts within this Circuit." *Sharma v. Burberry Ltd*., 52 F. Supp. 3d 443, 456 (E.D.N.Y. 2014). *See also Garcia v. Four Bros. Pizza*, 13-cv-1505, 2014 U.S. Dist. LEXIS 76015, at *20-21 n.7 (S.D.N.Y. May 23, 2014) (declining to address inconsistences in deposition testimony because the court may not make credibility determinations on a motion for conditional certification); *Amador v. Morgan Stanley & Co. LLC*, 2013 U.S. Dist. LEXIS 19103, at *26-27 (S.D.N.Y. Feb. 7, 2013) (same).

## II.    Plaintiffs Have Made the Modest Factual Showing Required for Conditional Certification

Defendants accuse Plaintiffs of "[t]acitly conceding that they cannot identify any actual unlawful policy to support the allegations of 'off-the-clock' work." Opp. at 14. However, "[a] facially unlawful policy is not a prerequisite for conditional certification. Instead, it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations." *Rodney v. Casella Waste Sys., Inc*., No. 2:21-cv-00196, 2023 U.S. Dist. LEXIS 9290, at *18 (D. Vt. Jan. 19, 2023) (internal quotes and citation omitted).

Here Plaintiffs have amply attested, often in considerable detail, that, while an automatic meal break deduction may not be per se unlawful, Defendants consistently took advantage of the deduction to cause employees to perform uncompensated work. Plaintiffs' Declarations show not merely that employees performed uncompensated meal-time work but also that supervisors were perfectly *aware* of this, because they were the ones directing that such work be performed. *See* Chestnut Decl. ¶ 5 ("Based on my observations, all employees worked through their breaks because they were either interrupted by managers or were overworked and pressed on time to finish their work."); Exolas Decl. ¶ 4 ("Defendants gave me too much work to do and made me work through my breaks" and "Defendants knew that I always ate while working at the same time"); Neor Decl. ¶ 10 ("Defendants would constantly give me work to do while I was clocked

out for my meal break! For example, during these supposed lunchbreaks, Defendants required me to attend meetings, pick up or transport children to other locations or appointments, and watch over the children while they had lunch."); Robinson Decl. ¶ 6 ("I was never able to actually take a real meal break because I had such a heavy caseload and there was always work to do. On top of this, if someone called out, I would have to cover their workload that day, and there was no break room where we could sit in peace to take a real break."); Wallace Decl. ¶ 6 ("during my meal breaks, Defendants required me to attend mandatory zoom calls, trainings, and meetings, or I was required to assist clients, show the premises to prospective tenants, perform light repairs or cleaning, communicate with the hotel owners, contact pest control services, or perform any number of other miscellaneous tasks.").

Plaintiffs have also described the circumstances under which they were required to perform other off-the-clock work at the end of their shifts. *See* Chestnut Decl. ¶ 4 ("Twice every week, I was required to work past my scheduled shift for approximately one hour each time"); Exolas Decl. ¶ 2 ("no matter which schedule I was assigned, almost every shift, Defendants would instruct me to stay past my shift and keep working for 30 minutes to an hour"); Robinson Decl. ¶ 5 ("On a daily basis, Defendants would direct me to continue working after the end of my shift, which was supposed to be 5 pm."); Wallace Decl. ¶ 4 ("Throughout my employment, Defendants scheduled me to work 5 days per week, from 9:00 a.m. to 5:00 p.m., for a total of 40 hours per week. However, almost every workday, Defendants would direct me to continue working, which I did until 6:00 p.m.").

Plaintiffs explain that the unlawful policies to which they were subjected were also applied to fellow employees. Chestnut Decl. ¶¶ 4, 7; Exolas Decl. ¶¶ 1, 2, 4; Neor Decl. ¶¶ 3, 7, 8, 9, 10, 11; Robinson Decl. ¶¶ 3, 6; Wallace Decl. ¶¶ 3, 6, 7, 8, 9. In many cases, Plaintiffs describe their

conversations with other employees, many of whom worked at a variety of locations other than those worked at by Plaintiffs. While this is hearsay, such is permissible on a motion for conditional certification. *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 403 (S.D.N.Y. 2012) ("The Court will afford any such hearsay statements the weight to which they are entitled."). Lest Defendants still insist they were unaware their employees were working unpaid overtime hours, three Plaintiff Declarations recount complaining to management about this. *See* Exolas Decl. ¶ 2 ("However, I never got paid for any of these extra hours. I complained about this to my supervisor, but nothing changed."); Neor Decl. ¶ 9 ("Any time that an employee raised a work-related complaint to a manager or to Acacia Network's HR, Defendants would threaten back with lawsuits or punishment. Defendants told us several times that if we complained about their wage policies, Defendants would sue us for violating Defendants' privacy agreement."); Robinson Decl. ¶ 5 ("Whenever I asked my supervisors about this, they always said 'We didn't approve the overtime, so you won't get paid.'").

Facts alleged in the pleadings or a plaintiff's declaration "are assumed to be true" for purposes of 216(b) collective certification. *Ahmed Hegazy v. Halal Guys, Inc*., 2022 U.S. Dist. LEXIS 159160, *3 (S.D.N.Y. Sept. 1, 2022). Courts "have routinely granted conditional collective certification" based on much less than Plaintiffs have offered here, including allegations based on "personal observations [in] one plaintiff's affidavit." *Chang Yan Chen v. Lilis 200 W. 57th Corp.*, No. 19-CV-7654, 2021 U.S. Dist. LEXIS 8011, 2021 WL 135248, at *4 (S.D.N.Y. Jan. 14, 2021) (collecting cases) (alteration omitted). While Defendants have submitted affidavits denying the existence of a de facto unlawful policy to time-shave employees, they "may not defeat a court's determination that Plaintiffs are similarly situated by submitting their own affidavits." *Colon v. Major Perry St. Corp*., 2013 U.S. Dist. LEXIS 93021, at *14 (S.D.N.Y. July 2, 2013).

Plaintiffs' evidence is not limited to their Declarations. The sampled time records in **Exhibit 19-A** show that, again and again, employees' work time is recorded in whole hours. These time records have not been rounded to the nearest quarter hour in accordance with a neutral rounding policy. Rather, they have been rounded down to the employees preset schedule (mostly 9-5). Given the absurd improbability that so many employees would be working shifts of exactly eight (8) hours, it is clear that Defendants are not actually recording the time employees worked. This robotic consistency only corroborates Plaintiffs' testimony that they were often required by supervisors to work past the end of their shifts without compensation. Courts have declined to accept at face value the "metronomic consistency" of time records that "are implausibly identical, week in and week out." *Hernandez v. JRPAC Inc*., 2016 U.S. Dist. LEXIS 75430, *18 (S.D.N.Y. June 9, 2016); *see also King v. Fedcap Rehab. Servs*., 2022 U.S. Dist. LEXIS 18090, *13-14 (S.D.N.Y. Feb. 1, 2022) (granting conditional collective certification after observing "that time worked was only ever recorded in whole numbers" and that this "suspicious uniformity" betokened "Defendants' policy of rounding down when employees worked past the end of their shift."). Indeed, the fact that many of Defendants' ostensible "time records" are really no such thing—but rather reproductions of pre-set schedules—shifts the burden to Defendants to prove that they paid employees properly. *See Yu G. Ke v. Saigon Grill, Inc*., 595 F. Supp. 2d 240, 254-55 (S.D.N.Y. 2008) ("In the absence of documentation, the employee may rely on [their] own recollection to meet [their] initial burden, in which case the employer must proffer evidence sufficient to rebut that recollection.") (citing *Anderson v. Mt. Clemens Pottery Co*., 328 U.S. 680, 687 (1946)).

In addition to all the foregoing, Plaintiffs direct the Court's attention to **Exhibit 24** of Lee Decl. II, a chart that reproduces testimony extracted from the deposition transcripts of all the named and opt-in Plaintiffs deposed by Defendants. Each one clearly recounts being subject to

Defendants unlawful policies, both as to working through meal breaks and performing off-the-clock work after the end of shifts.

### III.    Purported Variations in Job Duties and Locations Are Irrelevant

Defendants object that "Plaintiffs seek certification of a collective comprised of employees who held numerous different positions," arguing that "the motion fails to provide any basis for certification beyond their own positions." Opp. at 28. However, "[i]n the Second Circuit, courts routinely find employees similarly situated despite not occupying the same positions or performing the same job functions and in the same locations, provided that they are subject to a common unlawful policy or practice." *Balverde v. Lunella Ristorante, Inc.*, 15-cv-5518, 2016 U.S. Dist. LEXIS 62397, 2016 WL 2757430, at *4 (S.D.N.Y. May 11, 2016) (internal quotes and citation omitted). "The key question for the similarly situated inquiry is not whether plaintiff's job duties are identical to other potential opt-in plaintiffs, but rather, whether the proposed plaintiffs are similarly situated ... with respect to their allegations that the law has been violated." *Chui v. Am. Yuexianggui of Li LLC*, 2020 U.S. Dist. LEXIS 117296, at *12 (E.D.N.Y. July 2, 2020).

Defendants have acknowledged that their automatic meal deduction is applied uniformly across positions and locations. So, the fact that potential opt-ins might have different job titles or duties seems altogether irrelevant. At any rate, Named and current Opt-In Plaintiffs together have collectively occupied a wide range of positions, including (1) Social Worker; (2) Housing Specialist; (3) CASAC Counselor; (4) Case Manager; (5) Case Worker; (6) Shift Supervisor; (7) Client Care Coordinator; (8) Substance Abuse Counselor; (9) Sr. Case Manager. Defendants may also have other positions never occupied by Named or Opt-In Plaintiffs, but these individuals have occupied enough different roles that the Court can reasonably conclude that any other roles, too, were subject to Defendants' unlawful time-shaving policies.

Defendants also object that Plaintiffs seek to have a collective certified with respect to all Defendants' locations, arguing that "Plaintiffs improperly seek to include in the collective all non-exempt employees who worked anywhere in New York State at 97 locations" even though "Plaintiffs have offered information via discovery (including depositions) only as to 34 such locations." Opp. at 27. However, 34/97 is a significant fraction, and the Court can reasonably extrapolate that the same policies were in play in the 63 locations for which Plaintiffs did not provide information.

In *King v. Fedcap Rehab. Servs.*, 2022 U.S. Dist. LEXIS 18090 (S.D.N.Y. Feb. 1, 2022), the court certified an FLSA collective of employees who were hired to perform work for "third-party companies under defendants' job placement program," the defendants being "nonprofit organizations focused on recruiting and job placement for individuals previously involved with the justice system, disconnected youth, and public assistance recipients." *Id*. at *2. The defendants therefore operated at a great number of locations with a great variety of work tasks, as they were essentially a staffing agency. And yet the court granted certification as to all locations notwithstanding that the named plaintiff had worked at only one.[1] In *Garcia v. Chipotle Mexican Grill, Inc.*, 2016 U.S. Dist. LEXIS 153531 (S.D.N.Y. Nov. 3, 2016), the court certified, on the basis of a *single* affidavit, a collective of Chipotle employees covering *over sixty* restaurant locations in New York City, even though plaintiff had worked at only a five of these and could not provide any information about the others other than that they used the same timekeeping system. *See* id. at *1 n.1, 5, 20 *See Garcia v. Chipotle Mexican Grill, Inc.*, 2016 U.S. Dist. LEXIS 153531,

---

[1] The organization's current website states that "Each year Wildcat works with thousands of individuals involved in or impacted by the criminal legal system" and that it "[w]ork[s] in partnership with city agencies, businesses, and community organizations to expand the work envisioned by its founders. https://wildcatnyc.org/get-to-know-us/

*1 n.1, 5 (S.D.N.Y. Nov. 3, 2016). The grounds for certification were things that apply to most businesses, such as the fact that "Defendant owns and operates all of its locations in the city" and that "hiring at all locations in the city is centrally managed." *Id*. at *25. These features are present in this case as well, and 34/97 is a far higher fraction than 5/60.

In *Meyers v. Crouse Health Sys.*, 274 F.R.D. 404, (N.D.N.Y. 2011), the court certified a subclass of employees subject to defendant's automatic meal break deduction policy, which consisted in the majority of defendants' 2,200 to 2,300 hourly employees. Id. at 414. The defendants objected that "because the proposed class would include over 241 different job titles, covering 145 different departments, and multiple facilities, the named plaintiff's claims are not common with or typical of the proposed class." *Id*. at 415. And yet the court granted certification across all locations. *Meyers* was a *Rule 23 motion for <u>class</u> certification*, not, as here, a 216(b) motion for collective certification, where the standard for certification is much laxer.

In *Tay v. The New York and Presbyterian Hospital*, 2024 U.S. Dist. LEXIS 173097, at *2 (S.D.N.Y. Sep. 24, 2024), the defendant "own[ed] and operat[ed] a non-profit network of sixteen hospitals and medical treatment centers in New York State," *id*. at 2, each of which housed myriad departments, centers, clinics, and units with which the named plaintiffs could not have had any direct experience. And yet the court certified a class based on automatic meal break allegations across all 16 locations even though plaintiffs had submitted only a handful of declarations:

> On that front, Plaintiff puts forward several declarations that satisfy her lenient burden. Most persuasive, especially regarding notice, is Plaintiff's declaration that she was "constantly interrupted by managers and required to work through [meal] breaks" yet failed to receive pay of that time. She references by name two other employees, with different jobs, that shared similar experiences. Buttressing her showing, evidence of violations "extends beyond [Plaintiff's] own circumstances" at Westchester Hospital. *See Jung v. Gina Grp., LLC*, No. 19-CV-8624, 2021 U.S. Dist. LEXIS 171200, 2021 WL 4120642, at *2 (S.D.N.Y. Sept. 9, 2021) (quotation marks and citation omitted). Guy, who worked at the Morgan Stanley Children's Hospital, stated he frequently worked through lunch without pay due to a lack of

> relief staff, and explained that similar issues were "common knowledge" throughout the hospital. Suarez attested to "pretty much never" taking a full break, something he says "happened every shift to everybody." And Teevan claimed that he "often" was unable "to take a free and clear meal break" with no backend compensation. Taken as true, these declarations demonstrate that—despite variation in job title and location—employees commonly worked through meal breaks without compensation. And the extent of that practice enables an inference, at minimum, that supervisors should have known that employees were regularly working off the clock.

*Id*. at *30-31 (some citations omitted)

The New York and Presbyterian Hospital system is a *much* larger organization than Acacia Network, yet the court granted collective certification based on the heighted "modest plus" standard that Defendants urge here. *See id*. at *16-17. The *Tay* plaintiffs submitted some time-records suggesting unlawful time-shaving, but so, too, have Plaintiffs here (**Exhibit 19-A**), who have also submitted a great deal of deposition testimony from many opt-ins, which was absent in *Tay*. So, the case for certification is that much stronger.

## IV.  Purported Variations in the Application of Defendants' Common Policy Are Irrelevant

Defendants also argue that certification is inappropriate because "whether employees worked overtime or during their lunch breaks and for how long was highly-contingent on the daily events and needs of each respective worksite." Opp. at 25. Defendants note Opt-In Plaintiffs' testimony that taking a meal break was easier on some days than others, and at some locations than others. *See* Opp. at 17. However, courts have consistently rejected this line of argument when certifying collectives or classes based on the allegation that employees worked through meal breaks for which they were being automatically deducted. The court in *Meyers* observed:

> Additionally, defendants' argument that class certification is inappropriate based on the varying number and frequency of missed meal breaks, how often the automatic deduction was cancelled, and whether supervisors discouraged employees from requesting payment for missed meal breaks is unpersuasive. That different employees suffered varying degrees of harm goes to damages, not liability.

> Likewise, the fact that only some supervisors, and not all, may have discouraged employees from requesting cancellation of the automatic deduction does not prevent class certification. Such inconsistencies in defendants' practices should not serve to punish plaintiff.

*Meyers*, 274 F.R.D. at 415. (N.D.N.Y. 2011)

Again, *Meyers* was a Rule 23 motion with a considerably higher standard for certification than the instant action. And yet the court certified a class notwithstanding what it acknowledged were variations in the experiences of employees, including *variations between supervisors, some of which may have been more compliant with the law than others*. In *Kuznyetsov v. W. Penn Allegheny Health Sys.*, 09-cv-00379, 2009 U.S. Dist. LEXIS 47163, (W.D. Pa. June 1, 2009), the court certified a collective of employees subject to defendants' automatic meal deduction notwithstanding defendants' argument "that since the implementation of KRONOS, over 413,659 automatic meal break deductions were cancelled for 7476 non-exempt employees." *Id*. at 15-16. The defendants also observed that all but one of the named plaintiffs "had the automatic meal deductions cancelled multiple times" and that "since October of 2006, the union at AGH has not raised a single grievance concerning the failure to pay for a missed meal period." *Id*. The court's reasoning was simple: "Neither argument [] alters the fact that the policies apply to all non-exempt employees and arguably shifts the responsibility to the employees to ensure that the deduction is cancelled." *Id*. This reasoning is consistent with federal regulations, which provide:

> In all such cases it is the duty of the management to exercise its control and see that the work is not performed if it does not want it to be performed. It cannot sit back and accept the benefits without compensating for them. The mere promulgation of a rule against such work is not enough. Management has the power to enforce the rule and must make every effort to do so.

29 C.F.R. § 785.13.

Accordingly, the unlawful common policy at issue here is not that of requiring every supervisor to force every employee to work through their meal breaks on every possible occasion

but of failing to "make every effort" to ensure that employees are not performing uncompensated work. While automatic meal break deductions may not be per se unlawful, it remains the employer's burden to ensure that employees are being compensated for all hours worked. Accordingly, employers may not implement an automatic deduction in a manner that effectively shifts the burden to employees—that is, without adequate safeguards to ensure that the deduction does not lead to uncompensated work. The prolific evidence of such work submitted by Plaintiffs strongly indicates that Defendants have failed in this responsibility, even if there is some variation in the circumstances under which employees performed the uncompensated work.

Many courts have ruled consistently with *Myers* and 29 C.F.R. § 785.13. *See Hamelin v. St. Luke's Healthcare*, 274 F.R.D. 385, 395 (N.D.N.Y. 2011) ("Accepting as true plaintiffs' allegation that defendants employ a company-wide automatic deduction policy yet delegate to department supervisors the task of overseeing the cancellations raises the common question of whether this delegation is in compliance with the law."); *Camesi v. Univ. of Pittsburgh Med. Ctr.*, 2009 U.S. Dist. LEXIS 40571, at *11-12 (W.D. Pa. May 14, 2009) ("Irrespective of whether or not UPMC's 'employee cancellation' policy ultimately is consistent with the FLSA, Defendants' arguable attempt to shift statutory responsibilities to their workers constitutes an 'employer policy' susceptible to challenge at this stage in the proceedings."); *Meyers*, 274 F.R.D. at 415 ("Here, it is not the automatic deduction policy alone that plaintiff claims is unlawful but instead the manner in which it is implemented. This gives rise to the common legal questions of whether the policy for voiding the automatic deduction and the alleged failure to ensure that breaks were taken constitute violations of the NYLL.").

## V.    An FLSA Collective Would Not Require Individualized Inquiries

Defendants argue that certification is inappropriate because "proof at trial necessarily will be inherently individualized," involving question about things like each collective members' overtime hours, authorization for such, and meal break activity. *See* Opp. at 23. But these are arguments one could make against the certification of *any* wage and hour class or collective. And yet these are routinely certified by courts. Individualized inquires will not be required because "[f]actual questions regarding whether [and the extent to which] hourly employees worked through meal breaks without compensation may possibly be answered with the testimony of a representative sample of employees," which would not be burdensome. *Meyers,* 274 F.R.D. at 418. "Damages arising from unrecorded time do not necessarily require individualized inquiries, because Plaintiffs are not required to prove such damages with exactitude. … As *Tyson Foods* makes clear, plaintiffs are permitted to 'introduce a representative sample to fill an evidentiary gap created by the employer's failure to keep adequate records.'" *Perez v. Isabella Geriatric Ctr.*, 2016 U.S. Dist. LEXIS 136855, *12-13 (S.D.N.Y. Sept. 30, 2016) (citing *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 456 (2016)); *see also Worley v. City of New York*, No. 17-CV-4337, 2020 U.S. Dist. LEXIS 32931, 2020 WL 915809, at *5 (S.D.N.Y. Feb. 26, 2020) ("[T]he fact that Defendants have identified individualized issues within each subgroup does not, by itself, establish that they are not similarly situated.").

## VI.    Any Purported Employees of Promesa, Inc. Are Also Employees of Acacia Network, Inc. and Acacia Network Housing, Inc.

Defendants argue that "because Plaintiffs have not named Promesa, Inc. (Plaintiff Neor and Opt-In Plaintiff's Brehm-Callaci, Privette and Reed's employer) as a defendant in this lawsuit, they have no right to certification with respect to employees of this non-party." Opp. at 26. But whether or not Plaintiff Neor and any of Defendants' other employees are employees of Promesa,

Inc., they are also employees of Acacia Network, Inc. and Acacia Network Housing, Inc., such that a collective may be certified with respect to them. Defendants have no basis to dispute this. Defendants have moved to dismiss twice. On neither occasion did they seek to dismiss Plaintiff Neor's claims on the grounds that none of the named Defendants were her employer. *See* Dkt. Nos. 23, 36. Moreover, Plaintiff Neor explains in her Declaration that while she was labeled a "Promesa" employee because she worked with children, she interviewed and was hired by Acacia Network, filled out her paperwork at Acacia Network, worked at the Acacia Network headquarters, and reported to Acacia Network supervisors. *See* Neor Decl. ¶ 2.

All this is amply supported by documents provided to her by Acacia Network, attached to the Second Lee Declaration as **Exhibit 46**. Most notably, her signed "Receipt of Pre-Employment Orientation Paperwork Packet Acknowledgement Form" refers to her "employment with Acacia Network." Her notice of rights under the FLSA is also from Acacia Network. In Plaintiff Neor's email to various supervisors, the first line of the signature block is "Gitour Neor, LMSW ACACIA NETWORK" while the second states "Promesa Youth Social Worker," indicating that Acacia Network was her employer while "Promesa" merely referred to her role within the Network (incidentally, this email offers contemporaneous evidence of her allegations, as it indicates that authorized overtime was insufficient to perform assigned tasks and that she had "to stay with our group for lunch"). Accordingly, Defendants should not be permitted to exclude any Covered Employees from notice on the grounds that they are employees of Promesa, Inc.

Date: March 11, 2025
      New York, New York

Respectfully submitted,

**LEE LITIGATION GROUP, PLLC**

By:    /s/ *CK Lee*
       C.K. Lee, Esq.
       C.K. Lee (CL 4086)
       Anne Seelig (AS 3976)
       148 West 24th Street, 8th Floor
       New York, NY 10011
       Tel.: (212)465-1180
       *Attorneys for Plaintiffs,*
       *FLSA Collective Plaintiffs,*
       *and the Class*