UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

---

GIITOU NEOR *and* TYRONE
WALLACE *on behalf of themselves,*
*FLSA Collective Plaintiffs, and the*
*Class*,

                    Plaintiffs,

      – *against* –

ACACIA NETWORK, INC., d/b/a
ACACIA NETWORK, ACACIA
NETWORK HOUSING INC., d/b/a
ACACIA NETWORK, PROMESA
RESIDENTIAL HEALTH CARE
FACILITY, INC., d/b/a PROMESA, *and*
JOHN DOE CORP 1-100,

                   Defendants.

---

**OPINION & ORDER**

22-cv-4814 (ER)

RAMOS, D.J.:

      Giitou Neor and Tyrone Wallace (collectively "Plaintiffs") bring this action against defendants Acacia Network, Inc., d/b/a Acacia Network, Acacia Network Housing Inc., d/b/a Acacia Network, Promesa Residential Health Care Facility, Inc., d/b/a Promesa, and John Doe Corporations 1-100 (collectively, "Defendants"). Plaintiffs allege that defendants violated the Fair Labor Standards Act ("FLSA") and the New York Labor Law ("NYLL") and request damages consisting of unpaid wages, including overtime, unpaid spread of hours premium, compensation for late payment of wages, statutory penalties, liquidated damages, and attorneys' fees and costs.

      Pending before this Court is Plaintiffs' motion for conditional certification of a collective action comprised of themselves and all current and former non-exempt employees including, but not limited to, housing specialists, social workers, case managers, case workers, counselors, certified addiction alcohol substance abuse counseling ("CASAC") counselors, direct care staff, and administrative staff employed by

Defendants throughout New York State, at any time within the last six years before the filing of the third amended complaint. Doc. 88. For the following reasons, Plaintiff's motion is GRANTED in part and DENIED in part. The Court will conditionally certify the proposed statewide collective action, but only as to those hourly employees who worked during the three years preceding the filing of the original complaint. The statute of limitations will be equitably tolled pending notice to the potential opt-in plaintiffs.

## I.     BACKGROUND

### A.  Factual Background

The Acacia Network ("Acacia") is a domestic not-for-profit corporation that subleases hotels and accommodations to the government to use as housing and assistance centers for the homeless in New York City. Doc. 31 ¶¶ 7, 8. Acacia owns and operates over 56 hotels turned shelters and assistance centers, 750 individual family units, and 4 buildings in New York. *Id.* ¶ 7. Acacia also controls Promesa Residential Health Care Facility, Inc. ("Promesa"). *Id.* Defendants collectively operate from their headquarters located at 175th Street in Bronx, New York. *Id.*

All of Defendants' locations are under the control of the president and chief executive officer ("CEO") Raul Russi and the board of directors. *See* Doc. 90-5. All the locations have a centralized platform for recruiting and a centralized department for hiring. *See* Docs. 90-15; 91 ¶¶ 1–4; 93 ¶¶ 1–3. All the locations have common personnel. *See* Docs. 90-14; 91 ¶¶ 1–12; 93 ¶¶ 1–11. Acacia's 2020 annual report shows that Defendants' combined annual revenue was $439,837,670.00, and does not distinguish between Defendants' various entities under the Acacia umbrella, including Promesa. *See* Doc. 90-4.

One of the named plaintiffs, Neor, was hired by Acacia as a Promesa social worker in January 2019. Doc. 31 ¶¶ 24, 25. She was regularly scheduled to work from 8:00 a.m. to 4:00 p.m., five days per week. *Id.* ¶ 27. She was entitled to a one-hour unpaid daily lunch break. *Id.* ¶ 28. During her lunch hour, Neor would clock out, but

Acacia consistently required her to continue working, including supervising and transporting children and attending the children's midday therapy group. *Id*. Furthermore, she was tasked with continuing to care for children past 4:00 p.m., when her shift ended. *Id.* ¶¶ 30–33. Yet, multiple times a week, despite the fact that she was required to keep working, a supervisor would require her to clock out at 4:00 p.m., the end of her officially scheduled shift. *Id.* ¶ 31. Because she was often required to clock out, Neor was not paid for her work during her lunch hour or after her scheduled shift. *Id*. Neor was subjected to further time-shaving due to Defendants' policies of rounding clock-in times up and clock-out times down. *Id.* ¶ 33. For example, when Neor clocked in at 8:03 a.m., the system would treat her as arriving at 8:15 a.m.; when Neor clocked out at 6:10 p.m., the system would treat her as ending at 6 p.m. *Id.* Neor's employment with Acacia ended on May 14, 2020. *Id.* ¶ 24.

Wallace, the other named plaintiff, was hired by Acacia on March 21, 2018 as a housing specialist to work at Acacia's shelter in Brooklyn, New York. *Id.* ¶ 34. He was regularly scheduled to work from 9:00 a.m. to 5:00 p.m., five days a week. *Id.* ¶ 36. He too was entitled to a one-hour unpaid lunch break but like Neor, he was required to clock out for his lunch break but was regularly expected to work—attending mandatory zoom calls, training sessions, and meetings—and was not paid for that time. *Id.* ¶ 37. Additionally, when Wallace clocked out at 5:00 p.m., Acacia would require him to continue working by "doing paperwork, cleaning vacated rooms, calling other Defendants' locations to check on availability, [and] preparing documents for [New York] City." *Id.* ¶ 38. Wallace was not paid for work performed during his lunch hour or after the end of his scheduled shift. *Id.* ¶¶ 37–38. Similar to Neor, Wallace was also subjected to time-shaving by Defendants' policies of rounding clock-in times up and clock-out times down. *Id.* ¶ 40. Wallace was terminated on December 28, 2021. *Id.* ¶ 34.

As of March 20, 2025, 37 plaintiffs have opted-in to the instant action: Melysa Exolas, Tearah Chestnut, Clarice Robinson, Akeem Ford, Amanda Alphonso, Cayon

Dennis, Diamond Clarke, Israel Cruz, Jaymie Butler, Melissa Fonseca, Michelle Banks, Porschea Clarke, Shanie Butler, Shantel Delaney, Tiffany Montanez, Vanessa Goersmeyer, Zenja Bostic, Mark Richards, Joanna Alvarez, Yaw Brobbey, Carolyn Privette, Karen Brehm-Callaci, Jennifer Stubbs, Shawntel Ferebee, Sharon David, Moises Figueroa, Otis Lester, Glenn Reid, Cynthia Cobos, Donna Gittens, Sharon Williams, Frances Rivera, Dayana Jean-Gilles, Josephine Rivera, Chawanda Osborne, Virgina Oyebade, and Miranda Guzman.[1]

Exolas, Chestnut, and Robinson provided affidavits in support of the motion for conditional certification. Docs. 94–96. Exolas worked as a case manager at Acacia Network's "Holiday Inn" location, located at 154-71 Brookville Blvd., Rosedale, NY, between March 2016 and February 2020. Doc 94 ¶ 1. Exolas' supervisor allegedly knew that she always worked during breaks. *Id.* ¶ 4. She was required to clock out for an hour lunch break each shift and did not get paid for that time. *Id.* She was instructed to stay past her shift and keep working for 30 minutes to an hour almost every day she worked. *Id.* ¶ 2. She was additionally required to work after her scheduled end time whenever her client had an emergency. *Id.* The periods she worked before and after her scheduled time were rounded up, i.e. she was always paid on either the whole or half-hour, regardless of her real start and end times each day. *Id.* ¶ 5. Exolas states that her co-workers were also required to continue working past their shifts and did not get paid for that extra time. *Id.* ¶ 2.

Chestnut worked as a case worker at Skyway Men's Shelter, located at 132-10 S Conduit Ave, Jamaica, NY, between February 2020 and October 2020. Doc. 95 ¶ 1. Defendants automatically deducted thirty minutes from Chestnut's pay every day for meal breaks. *Id.* ¶ 5. However, all employees at Chestnut's site had to work through

---

[1] Opt-in plaintiffs Marva Carberry, Angelina Lopez, Vivica Henry, Nafiya James, Erin McGilvray, Muhanunad Baaith, Alessa Bonner, Jeffrey Arroyo, Gary Whyte, Johnny Cruz, Unice Williams, Kayla Bernal, Richard Carberry, were dismissed with prejudice as against Acacia. Docs. 172, 191–192, 196, 200.

their lunch breaks every day because they were either interrupted by managers or were overworked and pressed to finish their work. *Id.* The hours Chestnut worked before and after her shift were rounded down and she was paid in exact 15 minutes increments. *Id.* ¶ 6. From her personal knowledge and conversations with co-workers, she believed that Defendants used standardized pay policies and practices across all locations. *Id.* ¶¶ 7–8. Defendants failed to provide her with proper wage statements. *Id.* ¶ 8–9.

Robinson worked for Defendants as a case manager at Acacia Network's Holiday Inn, location at 154-71 Brookville Blvd Rosedale, NY, between December 2018 and December 2019. Doc. 96 ¶ 1. Robinson never took a real meal break because she had a heavy caseload and had to occasionally cover her co-workers. *Id.* ¶ 6. She was required to work through her breaks at least two to three times a week but her hours were automatically deducted an hour per shift for her meal breaks. *Id.* Acacia also directed her to continue working after her shift ended at 5 p.m. because of her heavy caseload. *Id.* ¶ 5. Robinson worked an extra 1 to 2 hours each week in addition to her regular schedule but was usually not paid for this time. *Id.* The wage statements she received throughout her employment were inaccurate and did not include all the hours she worked due to Acacia's time shaving. *Id.* ¶ 8.

Katrina Jones was the senior vice president of human resources and talent management at Acacia and "overs[aw] the entire . . . HR function across the network . . . all human resource functions, hiring, training, benefits management, and leave management." Doc. 90-6 at 3. She testified that the wage policies for all non-exempt employees were the same at all Acacia locations. *Id.* at 4. She also confirmed that Acacia did not track employees' lunch hours. *Id.* at 10. Jones testified that employees who clocked out after their scheduled times would be subject to verbal reprimand. *Id.* at 8.

William Brooks was the controller for payroll of Acacia and also handled the payroll for Promesa. Doc. 90-7 at 3. Brooks testified that there was an auto-deduction

policy of employees' lunch hours from their pay and that the payroll department did not track the actual hours employees took for lunch. *Id.* at 6. He also testified that Acacia had a policy against employees clocking in before their scheduled hours and that Promesa had a written rounding policy. *Id.* at 5, 7.

### B. Procedural Background

Plaintiffs filed the original complaint on June 8, 2022 and a third amended complaint on April 10, 2023. Docs. 1, 31. On April 1, 2024, Plaintiffs filed a motion for conditional collective certification and for court facilitation of notice pursuant to 29 U.S.C. § 216(b). Doc. 88. Plaintiffs claim that Defendants failed to compensate overtime work performed due to automatic meal break deductions, post-shift time shaving, and impermissible rounding.[2] Doc. 89 at 19.

## II.    LEGAL STANDARD

Pursuant to the FLSA, an individual may file suit against an employer on behalf of himself and "other employees similarly situated" who give "consent in writing" to become party plaintiffs. 29 U.S.C. § 216. "District courts have discretion to facilitate this collective action mechanism by authorizing that notice be sent to potential plaintiffs informing them of 'the pendency of the action and of their opportunity to opt-in as represented plaintiffs.'" *Mark v. Gawker Media LLC*, No. 13 Civ. 4347 (AJN), 2014 WL 4058417, at *2 (S.D.N.Y. Aug. 15, 2014) (quoting *Myers v. Hertz Corp.*, 624 F.3d 537, 554 (2d Cir. 2010)).

The Second Circuit Court of Appeals has endorsed a two-step framework for determining whether the court should certify a case as a collective action under § 216(b). *See Myers*, 624 F.3d at 554–55. This process entails analysis of whether prospective plaintiffs are "similarly situated" at two different stages: an early "notice stage" and

---

[2] Plaintiffs also alleged that, in violation of Wage Theft Protection Act ("WTPA"), NYLL § 195, they never received wage notices and, because their hours were miscalculated, due to various forms of time-shaving, Defendants failed to provide Plaintiffs and class members with accurate wage statements. Doc. 31 ¶¶ 41–52. On October 19, 2023, Defendants' partial motion to dismiss the WTPA claim was granted. Doc. 49.

again after discovery is fundamentally complete.  *See McGlone v. Contract Callers, Inc.*, 867 F.Supp.2d 438, 442 (S.D.N.Y.2012) (citing *Bifulco v. Mortgage Zone, Inc.*, 262 F.R.D. 209, 212 (E.D.N.Y.2009)).  At stage one, the court makes "an initial determination to send notice to potential opt-in plaintiffs who may be 'similarly situated' to the named plaintiffs with respect to whether a FLSA violation has occurred."  *Myers*, 624 F.3d at 555.  At stage two, after additional plaintiffs have opted in, "the district court will, on a fuller record, determine whether a so-called 'collective action' may go forward by determining whether the plaintiffs who have opted in are in fact 'similarly situated' to the named plaintiffs."  *Id.*  If the court concludes that they are not, the action may be "decertified."  *See Mark*, 2014 WL 4058417, at *2 (citing *Myers*, 624 F.3d at 555).

Here, Plaintiffs seek an initial determination of the propriety of notice to putative plaintiffs.  "Because minimal evidence is available" at this early stage of the proceedings, and because the court "retain[s] the ability to reevaluate whether the plaintiffs are similarly situated," Plaintiffs face a "relatively lenient evidentiary standard."  *McGlone*, 867 F.Supp.2d at 442 (quoting *Mentor v. Imperial Parking System, Inc.*, 246 F.R.D. 178, 181 (S.D.N.Y.2007)).  Plaintiffs need only "make a modest factual showing that [they] and potential opt-in plaintiffs together were victims of a common policy or plan that violated the [FLSA]."  *Romero v. ABCZ Corp.*, No. 14 Civ. 3653 (AT), 2015 WL 2069870, at *1 (S.D.N.Y. Apr. 28, 2015) (citing *Myers*, 624 F.3d at 555).  That said, "certification is not automatic."  *Romero v. H.B. Automotive Group, Inc.*, No. 11 Civ. 386 (CM), 2012 WL 1514810, at *10 (S.D.N.Y. May 1, 2012).  Plaintiffs' burden of proof is low, but "it is not non-existent."  *Sanchez v. JMP Ventures, L.L.C.*, No. 13 Civ. 7264 (KBF), 2014 WL 465542, at *1 (S.D.N.Y. Jan. 27, 2014).  The "modest factual showing" required for conditional certification "cannot be satisfied simply by unsupported assertions."  *Myers*, 624 F.3d at 555 (internal quotation marks and citations omitted).  Plaintiffs must offer "actual evidence of a factual nexus" between their own experience and the experiences of those they claim as "similarly situated," rather than "mere

conclusory allegations." *Qing Gu v. T.C. Chikurin, Inc.*, No. 13 Civ. 2322 (SJ) (MDG), 2014 WL 1515877, at *3 (E.D.N.Y. Apr. 17, 2014) (citing *Flores v. Osaka Health SPA, Inc.*, No. 05 Civ. 962 (VM) (KNF), 2006 WL 695675, at *2 (S.D.N.Y. Mar. 16, 2006)).

In considering Plaintiffs' motion, "the [C]ourt does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Cunningham v. Electronic Data System Corp.*, 754 F.Supp.2d 638, 644 (S.D.N.Y.2010) (quoting *Lynch v. United Services Automobile Association*, 491 F.Supp.2d 357, 368 (S.D.N.Y.2007)). It merely "examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." *McGlone*, 867 F.Supp.2d at 442 (internal quotation marks and citations omitted). If the Court finds that they are, it will conditionally certify the class and order that notice be sent to potential class members. *See Cunningham*, 754 F.Supp.2d at 644.

## III.    ANALYSIS

Plaintiffs bring this class and collective action on behalf of employees who worked for Defendants on or after the date six years before the Plaintiffs' third amended complaint was filed. Doc. 31 ¶ 12.

Defendants oppose certification arguing that: (1) Plaintiffs fail to make the modest factual showing that the potential class members are similarly situated as Neor and Wallace; (2) Plaintiffs' statements are conclusory and inconsistent; and (3) the adjudication of each putative collective member's claims will require significant individualized proof. *See* Doc. 207.

### A.  Single Integrated Enterprise

As an initial matter, Plaintiffs must show that Defendants operate as a single integrated enterprise covered by the FLSA. "'[A]n employee, who is technically employed on the books of one entity, which is deemed to be part of a larger 'single-employer' entity, may impose liability for certain violations of employment law not only on the nominal employer but also on another entity comprising part of the single

integrated employer.'" *Gonzalez v. Hanover Ventures Marketplace LLC*, No. 21 Civ. 1347 (ER), 2022 WL 193004, at *3–4 (S.D.N.Y. Jan. 21, 2022) (quoting *Spiciarich v. Mexican Radio Corp.*, No. 14 Civ. 9009 (SHS), 2015 WL 4191532, at *5 n.5 (S.D.N.Y. July 10, 2015)) (internal quotation marks and citations omitted). "The Second Circuit has never endorsed this theory of liability in the FLSA context, and district courts in this Circuit are divided on its application to FLSA and NYLL cases." *Id.* "While the Second Circuit has yet to rule on whether the 'integrated enterprise/single employer doctrine' is appli[cable] in FLSA cases, the 'shared policy concerns underlying the . . . doctrine and the FLSA' urge the theory's application to FLSA claims." *Lopez v. Pio Pio NYC, Inc.*, No. 13 Civ. 4490 (HB), 2014 WL 1979930, at *3 (S.D.N.Y. May 15, 2014) (quoting *Chen v. TYT East Corp.*, No. 10 Civ. 5288 (PAC), 2012 WL 5871617, at *3 (S.D.N.Y. Mar. 21, 2012)). "Absent a clear resolution of this issue, district courts have discretion to consider the theory because the Second Circuit 'has treated employment for FLSA purposes as a flexible concept to be determined on a case-by-case basis by review of the totality of the circumstances.'" *Id.* (quoting *Barfield v. N.Y.C. Health & Hospitals Corp.*, 537 F.3d 132, 141–42 (2d Cir. 2008)).

To determine whether distinct entities operate as a single integrated enterprise, "courts consider (1) interrelation of operations, (2) centralized control of labor relations, (3) common management, and (4) common ownership or financial control." *Juarez v. 449 Restaurant, Inc.*, 29 F. Supp. 3d 363, 367 (S.D.N.Y. 2014) (internal quotation marks and citations omitted).

Plaintiffs argue that Defendants operated Acacia and Promesa as a single integrated enterprise across all locations in New York. Doc. 89 at 16–19. Plaintiffs explain that due to the nature of Defendants' services, Defendants' employees were assigned to work at different locations. Doc. 90-23 at 3. However, all of Defendants' employees performed work at Acacia premises, worked together irrespective of their specific work location, shared the same human resources department, and shared one

website and social media displaying the same Acacia Network trademark to advertise their services. *Id.* In addition, Plaintiffs argue that all of Defendants' locations are under the control of the same president and CEO and board of directors, with a centralized platform for recruiting and a centralized department for hiring, and common personnel. *See* Docs. 90-5, 90-15; 91 ¶¶ 1-4; 93 ¶¶ 1-3. Defendant's 2020 annual report also did not distinguish among the various entities under the Acacia umbrella and listed Promesa as an affiliate. *See* Doc. 90-4. Acacia had a senior vice president of human resources that oversaw the entire HR function across the network, including hiring, training, benefits management, and leave management. *See* Doc. 90-6 at 3. Moreover, the same payroll controller, Brooks, handled both the payrolls of Acacia and Promesa. *See* Doc. 90-7 at 3.

Based on the foregoing, Plaintiffs have adequately alleged at this stage that Defendants operate as a single integrated enterprise for purposes of potential FLSA liability. *See Juarez*, 29 F. Supp. 3d at 368 (finding sufficient factual allegations of: (1) "interrelated operations" based on shared "website, décor, menus, and uniforms;" (2) common management, ownership and financial control based on single common owner; and (3) "centralized control of labor relations" based on "core allegations of unlawful pay practices," employees working across multiple locations, and owner's chain-wide role in hiring and payment practices); *see also Bravo v. Established Burger One, LLC*, No. 12 Civ. 9044 (CM), 2013 WL 5549495, at *8–9 (S.D.N.Y. Oct. 8, 2013) (finding single integrated enterprise based on joint advertisement on single website, unified marketing, same menus, shared employees and food among locations, and common management and payroll methods); *Yap v. Mooncake Foods, Inc.*, 146 F. Supp. 3d 552, 559 (S.D.N.Y. 2015) (finding single integrated enterprise based on common ownership and supervision, shared website, and intermingled payroll, among other factors).

### B. Conditional Certification

*1. Similarly Situated*

Plaintiffs' burden at this stage is low because "the purpose of this first stage is merely to determine *whether* similarly situated plaintiffs do in fact exist." *Gonzalez*, 2022 WL 193004, at *5 (quoting *Hernandez v. NHR Humam Resources, LLC*, No. 20 Civ. 3109 (PGG) (DF), 2021 WL 2535534, at *5 (S.D.N.Y. June 18, 2021) (citing *Myers*, 624 F.3d at 555)). "[T]o be 'similarly situated' means that named plaintiffs and opt-in plaintiffs are alike with regard to some material aspect of their litigation." *Scott v. Chipotle Mexican Grill*, 954 F.3d 502, 516 (2d Cir. 2020) (internal quotation marks and citations omitted). Plaintiffs "are similarly situated, and may proceed in a collective, to the extent they share a similar issue of law or fact material to the disposition of their FLSA claims," and as long as "named plaintiffs and party plaintiffs share legal or factual similarities material to the disposition of their claims, dissimilarities in other respects should not defeat collective treatment." *Id.* (internal quotation marks and citations omitted).

Moreover, in evaluating the sufficiency of evidence proffered as to the existence of a collective, "courts in this circuit have routinely granted conditional collective certification based solely on the personal observations of one plaintiff's affidavit." *Hernandez v. Bare Burger Dio Inc.*, No. 12 Civ. 7794 (RWS), 2013 WL 3199292, at *3 (S.D.N.Y. June 25, 2013) (collecting cases); *see also Ramos v. Platt*, No. 13 Civ. 8957 (GHW), 2014 WL 3639194, at *2 (S.D.N.Y. July 23, 2014). "However, conclusory allegations and 'unsupported assertions' are not sufficient to support a motion for conditional collective action certification." *Hickmon v. Fun & Fit LLC*, No. 20 Civ. 10270 (RA) (JLC), 2021 WL 3578296, at *5 (S.D.N.Y. Aug. 13, 2021) (citing *Myers*, 624 F.3d at 555). Plaintiffs "must offer something of evidentiary value to demonstrate that similarly situated employees exist and, where plaintiffs fail to meet this minimal requirement, their motion for conditional collective action certification will be denied."

*Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 481 (S.D.N.Y. 2016) (internal quotation marks and citations omitted). Thus, courts have denied collective certification where "plaintiffs fail[ed] to provide sufficient details about other potentially similarly situated employees, such as the names of other employees, when any conversations with those employees took place, and information regarding the hours those employees worked or how they were paid," *Hickmon*, 2021 WL 3578296, at *6, or where a plaintiff's submission " 'does not . . . provide *any* detail as to a *single* . . . observation or conversation' informing his decision to bring a collective action." *Mata v. Foodbridge LLC*, No. 14 Civ. 8754 (ER), 2015 WL 3457293, at *4 (S.D.N.Y. June 1, 2015) (quoting *Sanchez*, 2014 WL 465542, at *2) (emphasis in original); *see also Ikikhueme v. CulinArt, Inc.*, No. 13 Civ. 293 (JMF), 2013 WL 2395020, at *2 (S.D.N.Y. June 3, 2013) (denying conditional certification motion premised only on a plaintiff's personal declaration containing "unsupported assertions" regarding other employees). However, a plaintiff need not "offer[] direct quotations from the other identified [proposed members of the collective], or pinpoint the specific calendar days on which he and they spoke with management." *NHR Human Resources LLC*, 2021 WL 2535534, at *9 (S.D.N.Y June 18, 2021).

Here, Defendants contends that Plaintiffs fail to establish that they are similarly situated to all of the thousands of Defendants' employees or that Defendants had any uniform "policies" concerning off-the-clock work, meal breaks and rounding that similarly affected all non-exempt employees. Doc. 207 at 20. Specifically, Defendants argue that: (1) the alleged practice for employees to not report work time was not part of any plan or policy; (2) the timekeeping policy was not uniform; (3) putative collective

members did not have common job responsibilities; and (4) the rounding policy was permissible pursuant to 29 C.F.R. § 785.48(b).[3]  *Id.* at 20–27.

The fact that there are "similarities between the affidavits submitted by [p]laintiff and the opt-in plaintiffs . . . indicates that they are 'similarly situated.'"  *Vecchio v. Quest Diagnostics Inc.*, No. 16 CIV. 05165 (ER), 2018 WL 2021615, at *5 (S.D.N.Y. Apr. 30, 2018) (quoting *Vaughan v. Mortage Source LLC*, 2010 WL 1528521, at *8 (E.D.N.Y. Apr. 14, 2010)).  Plaintiffs have provided sufficient examples that Acacia supervisors directed employees to perform uncompensated work during mealtime.  Neor's supervisor required her to spend her lunch break supervising and transporting children and attending the children's midday therapy group.  Doc. 31 ¶ 28.  Similarly, Wallace's supervisor required him to spend his lunch break attending mandatory zoom calls, trainings, and meetings.  *Id.* ¶ 37.  The same is true for other opt-in plaintiffs.  Chestnut observed that all employees worked through their breaks.  Doc. 95 ¶ 5.  Exolas was assigned so much work that she was pressed to work through her breaks.  Doc. 94 ¶ 4.  Robinson also never took a real meal break because she had a heavy caseload.  Doc. 96 ¶ 6.  Moreover, Jones and Brooks confirmed that neither the department of human resources nor payroll tracked the actual hours employees spent on lunch and that Defendants had an auto-deduction policy of employees' lunch hours from their pay.  Docs. 90-6 at 10; 90-7 at 6.

Plaintiffs also describe in detail that Acacia deducted employees' hours they spent working outside of their shifts.  Neor's supervisor tasked her with additional work, multiple times a week, after her shift ended.  Doc. 31 ¶¶ 30–33.  When Wallace clocked out after ending his shift, Acacia also would require him to continue working by "doing paperwork, cleaning . . . rooms, calling other [d]efendants' locations to check on availability, [and] preparing documents for [New York] City."  *Id.* ¶ 38.  The time Exolas

---

[3] FLSA allows employers to round time in determining an employee's hours worked, provided that doing so "will not result, over a period of time, in failure to compensate the employees properly for all the time they have actually worked".  29 C.F.R. § 785.48(b).

worked before and after her scheduled shift were deducted.  Doc. 94 ¶ 5.  Exolas' co-workers were also required to work after their scheduled shifts without getting paid.  Doc. 94 ¶ 2.  The periods Chestnut and her co-workers worked outside of their scheduled shifts were not reflected in their pay.  Doc. 95 ¶¶ 6–8.  Robinson was frequently only paid for her regularly scheduled shift although she was directed to work after her shift due to her heavy caseload.  Doc. 96 ¶ 5.  Jones, senior vice president of human resources, testified that employees who clocked out after their scheduled times would be subject to verbal reprimand.  Doc. 90-6 at 8.  Brooks who controlled the payroll at Acacia and Promesa, also confirmed that Acacia had a policy against employees clocking in before their scheduled hours.  Doc. 90-7 at 3, 6.

The third amended complaint, as well as the affidavits further depict how Defendants rounded up the employees' time.  Both Neor and Wallace had their time shaved due to Defendants' policies of rounding clock-in times up and clock-out times down, recognizing only whole quarters of an hour.  Doc. 31 ¶¶ 33, 40.  Similarly, Exolas was only paid on either the whole or half-hour, and Chestnut was paid in exact 15-minute increments regardless of her real start and end times each day.  Docs. 94 ¶ 5; 95 ¶ 6.

At various points in its opposition papers, Defendants appear to argue that Plaintiffs' allegations regarding Defendants' purported FLSA violations are not credible.  Docs. 207 at 32; 220 at 2.  Defendants argue, for example, that Plaintiffs and several opt-in Plaintiffs did not seek overtime authorization from their supervisors and that the supervisors did not have knowledge of the overtime work of employees.  Doc. 207 at 32.  Plaintiffs provide Neor's deposition transcript to show that Neor did not have to seek formal authorization from her supervisors for overtime work which her supervisors personally instructed her to perform:

Q. Do you know if authorization was typically required before you worked past four o'clock?

A. Yes.

Q. What's the process for obtaining authorization?

A. That they have notice that you're working over your hours.

Q. Did you have to inform them?

A. No. They were aware I was working over my hours because they were the ones who instructed me to do the task.

Q. But did you have to inform them in any other way? Did you have to give them heads-up that you were working late or submit any type of documents to show that?

A. No. They are tasks that they assigned.

Docs. 216 at 4–5; 217-2 at 17–18.

Defendants also argue that three individuals who had knowledge of opt-in plaintiff Williams' overtime work were her co-workers, not their supervisors, who did not know Williams was working overtime. Doc. 220 at 2. Plaintiffs contend that, in fact, Williams did testify that her supervisor, Ms. Banck, knew that Williams worked overtime:

A. Program director, Ms. Bell—Ms. Banck, sorry.

Q. Oh, Ms. Banck. Okay. What was Ms. Banck's typical shift? Did she worked like 9:00 to 5:00?

A. Yes, from, like, 9:00 to 5:00, uh-huh, or—because the other one, I never -- I never get to see her, Ms.—Ms.Gonzalez.

Q. Okay.

A. was out before I get there.

Q. So Ms. Bell worked 9:00 to 5:00 and you worked 4:00 to 12:00, right?

A. Yeah. Uh-huh.

Q. So how did she see you work past your shift if—wasn't she already gone?

A. No, because I'm talking about the weekends. On—on the weekends I worked from 9:00 to 5:00.

Q. Did Ms. Banck also work on the weekends?

A. Yeah, some weekends she do, uh-huh. The—the one that never came on the weekend was Ms. Gonzalez.

Docs. 217-20 at 19; 221 at 3–4.

Defendants also argue that with respect to rounding, they utilized a lawful, bilateral policy pursuant to which time was rounded to the nearest quarter of an hour, which "average[d] out so that the employees are fully compensated for all the time they actually work. Doc. 207 at 17. This is inconsistent with the allegation in the third amended complaint that when Neor arrived at 8:03 a.m., the system treated her as starting at 8:15 a.m. instead of 8 a.m., which would have been the "nearest quarter of an hour." Doc. 31 ¶ 33.

The Court does not, in considering a motion for conditional class certification, "resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations." *Fernandez v. Catholic Guardian Services*, No. 17 Civ. 3161 (ER), 2018 WL 4519204, at *3 (S.D.N.Y. Sept. 20, 2018) (quoting *Lynch v. United Servs. Automobile Association*, 491 F. Supp. 2d 357, 368 (S.D.N.Y. 2007)). Instead, it only "examines the pleadings and affidavits to determine whether the named plaintiffs and putative class members are similarly situated." *Fernandez*, 2018 WL 4519204, at *3 (quoting *McGlone*, 867 F. Supp. 2d at 442). Defendants' challenge that Plaintiffs did not seek authorization for overtime work therefore goes to the merits of the underlying FLSA action and "do[es] not present a basis to deny certification." *Gonzalez*, 2022 WL 193004, at *6; *see also Garcia v. Chipotle Mexican Grill, Inc.*, No. 16 Civ. 601 (ER), 2016 WL 6561302, at *5 (S.D.N.Y. Nov. 4, 2016) ("At various points in its opposition papers, [d]efendant appears to argue that [p]laintiffs' motion for conditional certification should be denied because [p]laintiffs' allegations regarding [d]efendant's purported FLSA violations are not credible . . . At this stage, however, 'the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.'").

The Court finds that Plaintiffs sufficiently meet the modest burden of showing that Defendants' employees are similarly situated.

2. *Common Policy or Plan*

The existence of a formal policy that is facially unlawful is not a prerequisite for conditional certification; instead, it is sufficient to show that a facially lawful policy was implemented in an unlawful manner, resulting in a pattern or practice of FLSA violations. *Winfield v. Citibank, N.A.*, 843 F. Supp. 2d 397, 405 (S.D.N.Y. 2012). Defendants' argument that Plaintiffs cannot identify an unlawful policy concerning off-the-clock work is thus irrelevant in adjudicating the motion. Doc. 207 at 21 ("Plaintiffs have manufactured a non-existent policy under which supervisors allegedly engaged in various practices to not report work time."). Defendants assert that with respect to off-the-clock work, "it is evident that those [o]pt-[i]n [p]laintiffs worked for rogue supervisors who imposed improper requirements, not that they were the victims of any unlawful common practice or policy promulgated and enforced by Defendants given that many were not required to perform such work." *Id.* at 25.

Here, Plaintiffs provide testimony from Brooks, the controller of payroll, and Jones, the senior vice president of human resources. Docs. 90-6, 90-7. They confirmed that neither the department of human resources nor payroll tracked the actual hours employees spent on lunch and that Defendants had an auto-deduction policy of employees' lunch hours from their pay. Docs. 90-6 at 10; 90-7 at 6. Moreover, Acacia had a policy against employees clocking outside of their scheduled hours, who would actually be reprimanded if they did so. Docs. 90-6 at 8; 90-7 at 5. Promesa also has written a rounding policy. Doc. 90-7 at 7.

Moreover, even if there was no formal policy, Plaintiffs have shown that Defendants' policies necessarily required employees to work during meal breaks and after-hours for which the employees were not compensated. *Chime v. Peak Security Plus, Inc.*, 137 F. Supp. 3d 183, 201 (E.D.N.Y. 2015) ("Here, too, although the plaintiff has not alleged a formal policy in violation of the FLSA, he has shown that [the defendant] necessarily required security guards to work beyond their scheduled shifts, and that they

17

were not compensated for this time."). Accordingly, Defendants' "allegations are sufficient at the conditional certification stage." *Chime*, 137 F. Supp. 3d at 202.

### C. Scope of Conditional Collective Certification

Plaintiffs seek to conditionally certify "non-exempt employees including, but not limited to, housing specialists, social workers, case managers, case workers, counselors, CASAC counselors, direct care staff, administrative staff." *See* Doc. 89 at 7.

Defendants argue that it would be overly broad to conditionally certify hourly, non-exempt employees working in all of Defendants' locations, in different positions performing different work under varying levels of supervision, and subject to different contracts, policies, and practices, during the past six years. Doc. 207 at 37.

#### 1. Positions

All of the employees who performed different functions were subjected to the same alleged unlawful policies that violated the FLSA. *Schwerdtfeger v. Demarchelier Management, Inc.*, No. 10 Civ.7557 (JGK), 2011 WL 2207517, at *4 (S.D.N.Y. June 6, 2011). Courts have found employees to be similarly situated for purposes of conditional certification despite differences in the employees' job functions or the details of their claims. *See e.g., Lujan v. Cabana Management, Inc.*, No. 10 Civ. 755 ILG, 2011 WL 317984, at *10, *14 (E.D.N.Y. Feb. 1, 2011) (granting conditional certification where the proposed putative class included "servers, host(esses), bartenders, bar-backs, busboys, runners, dishwashers, and other restaurant related tasks," and both tipped and non-tipped employees ); *Realite v. Ark Restaurants Corp.,* 7 F.Supp.2d 303, 303, 306–07 (S.D.N.Y.1998) (Sotomayor, J.) (granting conditional certification to employees at multiple restaurant locations, who collectively held positions as waiters, porters, dishwashers, cooks, back-waiters, bartenders, runners, pizza makers, busboys, and security guards).

In support, Plaintiffs describe a common scheme of violations for Acacia employees in different job positions: social workers, housing specialists, case managers,

and case workers.  Docs. 31 ¶¶ 24, 34; 94 ¶ 1; 95 ¶ 1; 96 ¶ 1.  Moreover, Plaintiffs supplement their position with a testimony from Jones, Defendants' senior vice president of human resources, that the wage policies for all non-exempt employees were the same.  Doc. 90-6 at 4.  Jones confirmed that Acacia did not track employees' lunch hours and that employees who clocked out after their scheduled times would be subject to verbal reprimand, regardless of their specific positions.  Doc. 90-6 at 8, 10.  Brooks, Defendants' controller for payroll also testified that there was an automatic mealtime deduction policy, a policy against employees clocking in before their scheduled hours, and a rounding policy, irrespective of the employees' roles.  Doc. 90-7 at 5–7.

Plaintiffs have therefore sufficiently established a common plan or policy of not properly compensating for overtime hours extending to hourly employees who performed a wider range of job duties than those of the named Plaintiffs.  *See Rosario v. Valentine Avenue Discount Store, Co.*, 828 F. Supp. 2d 508, 518 (E.D.N.Y. 2011).

*2.  Locations*

It is recognized that a "FLSA plaintiff . . . must make a showing that employees at all locations were subject to the same illegal policies before a class may be approved consisting of all employees at all locations."  *Contrera v. Langer*, 278 F. Supp. 3d 702, 720 (S.D.N.Y. 2017) (internal citation and quotation marks omitted).  "For larger employers, the inference becomes more strained absent broader evidentiary support."  *Beaton v. Verizon New York, Inc.*, 2020 WL 5819902, at *3 (E.D.N.Y. Sept. 30, 2020).

Several courts have conditionally certified a collective of employees spanning multiple locations based on the allegations and affidavit of a single plaintiff who worked at only one location.  *See e.g., Qing Tian Zhuo v. Jia Xing 39th Inc.*, No. 14 Civ. 2848 (SHS), 2015 WL 1514950, at *3 (S.D.N.Y. Apr. 1, 2015); *Rosario*, 828 F. Supp. 2d at 516–17 ("Courts in this Circuit regularly find named plaintiffs to be similarly situated to employees at locations where they did not work, provided that the plaintiffs have demonstrated that they all were subject to the same allegedly unlawful policy or plan.").

Plaintiffs Neor, Wallace, Exolas, Chestnut, and Robinson worked at 5 different locations in the Acacia Network and seek to certify all of Defendants' locations in New York.  Doc. 89 at 7.  *Id.*  The Court has determined that at this juncture, Plaintiffs have sufficiently shown that Defendants constitute a single integrated enterprise with common ownership and control of all its entities and locations.  Further, Jones testified that the wage policies for all non-exempt employees were the same at all locations.  Doc. 90-6 at 4; *cf Laroque v. Domino's Pizza, LLC,* 557 F.Supp.2d 346, 355 (S.D.N.Y.2008) (conditionally certifying employees at the store where plaintiffs worked, but declining to certify employees at five other stores where the evidence relating to those five stores amounted to three hearsay statements and a putative class member's "generalized allegations of wrongdoing" regarding one of the stores).

Conditional class certification therefore is appropriate for all of Defendants' locations in New York.

### 3.  Statute of Limitations

Some courts in this Circuit routinely allow parties to list a six-year time period on collective action notices when a plaintiff presents claims under both the FLSA and the NYLL, which has a six-year statute of limitations. *See Winfield*, 843 F. Supp. 2d at 410–11.  The statute of limitations under the FLSA is two years, or three years if the violation is willful. 29 U.S.C. § 255.  *See, e.g., Fernandez*, 2018 WL 4519204, at *4; *NHR Human Resources*, 2021 WL 2535534, at *15 (denying request for a six-year notice period for a proposed collective, limiting notice period to three years, and explaining that courts "have found that lengthening the period may be cause for confusion and inefficiency").

Here, Plaintiffs allege that Defendants willfully shaved their employees' time.  Doc. 31 ¶¶ 53–56.  Because no New York state class action has been certified here, prospective opt-in plaintiffs are subject to a three-year statute of limitations.

**D.  Notice**

*1.  Equitable Tolling*

With respect to the calculation of the three-year limitations period, Plaintiffs move the Court to toll the statute of limitations through such time that Plaintiffs are able to send notice to potential opt-in plaintiffs.  Doc. 89 at 38.  Defendants object that "equitable tolling is considered a drastic remedy applicable only in rare and exceptional circumstances" and that Plaintiffs "have failed to establish entitlement to equitable tolling."  Doc. 207 at 41–42.  In support of that proposition, Defendants cite to *A.Q.C. ex rel. Castillo v. U.S.*, 656 F.3d 135, 144 (2d Cir. 2011) and *Bertin v. U.S.,* 478 F.3d 489, 494 n.3 (2d Cir. 2007), non-FLSA cases.

However, for FLSA cases, courts in the Second Circuit are inclined to grant a plaintiff's request for equitable tolling till at least the date of issuing the opinion to avoid the prejudice to actual or potential opt-in plaintiffs.  *See, e.g., Ramos v. DNC Food Services Corp.*, No. 19 Civ. 2967 (VSB), 2020 WL 2832776, at *10 ("Because this motion has been pending for several months, I conclude that equitable tolling through at least until the date of this Opinion & Order is appropriate, and may be appropriate through the date of issuance of the Notice, provided that the [n]amed [p]laintiffs pursue their claims with 'reasonable diligence.'"); *Cabrera v. Stephens*, No. 16 Civ. 3234 (ADS) (SIL), 2017 WL 4326511, at *7 (E.D.N.Y. Sept. 28, 2017) (holding that equitable tolling was appropriate to account for the time period needed for the court to issue a ruling on the conditional certification motion).

Here, Plaintiffs moved for conditional certification on April 1, 2024.  Doc. 88. Defendants' deadline to oppose the motion was extended for six times.  Docs. 98, 139, 165, 197, 201; Minute Entry October 23, 2024.  Defendants eventually filed their opposition on February 20, 2025, and a sur-reply on March 14, 2025.  Docs. 207, 220. The motion was not fully briefed until March 19, 2020, when Plaintiffs filed their response to the sur-reply.  Doc. 221.  As the motion has been pending for nearly a year,

the Court finds it appropriate to grant equitable tolling through the date of the issuance of the notice, provided that Plaintiffs profess "reasonable diligence." *See DNC Food Services Corp.*, 2020 WL 2832776, at *10.

    *2.  Spanish Translation*

Plaintiffs also request that a Spanish language version of the notice be included for prospective plaintiffs who are native Spanish speakers.  Doc. 89 at 38.  Defendants do not oppose to this request.  *See generally* Doc. 207.  Plaintiffs' request is granted.

    *3.*  Defendants' Unopposed Requests

Defendants request:  (1) remove the mentioning of "statutory penalties" from the notice; (2) the consent forms should be returned to the Clerk of the Court as opposed to counsel; (3) the notice should explicitly state that "this notice does not mean that you are entitled to any monetary recovery.  Any such determination must still be made by the Court;" (4) the proposed 90 days to opt-in to the collective should be reduced to 60 days; (5) the Court should strike any reference to claims pursuant to the NYLL; (6) modify the language under "Your Legal Rights" section; (7) modify the language of attorney fees arrangement; and (8) exclude information identifying counsel for Defendants and their contact information.  Doc. 207 at 38–40.  Plaintiffs do not oppose to these requests.  *See generally* Docs. 216, 221.

Defendants' requests are granted.  Plaintiffs are directed to submit an amended notice of pendency.

    **E.  Contact Information Production**

Plaintiffs request the Court order Defendants to produce a list of all covered employees who were employed by Defendants six years prior to the entering of the order with the following information:  names, titles, compensation rates, date of employment, last known mailing addresses, email addresses, and all known telephone numbers.  Doc. 89 at 36–37.  Defendants argue that the disclosure should be limited to the name and last known mailing and email addresses of those hourly, non-exempt employees who worked

in the locations where Plaintiffs and the opt-in plaintiffs worked, held the same job titles and reported to the same supervisors as them, for the period of two years before this action was filed.  Doc. 41 at 44.

"Courts in this District commonly grant requests for the production of names, mailing addresses, email addresses, telephone numbers, and dates of employment in connection with the conditional certification of a[n] FLSA collective action."  *Fernandez*, 2018 WL 4519204, at *5 (quoting *Benavides v. Serenity Spa NY Inc.*, 166 F. Supp. 3d 474, 488 (S.D.N.Y. 2016)).  However, Plaintiffs do not provide a basis as to why titles and compensation rates should be disclosed at this juncture.

The Courts therefore grant Plaintiffs' request for disclosure of the names, date of employment, last known mailing addresses, email addresses, and all known telephone numbers, of all non-exempt employees who were employed by Defendants three years prior to the filing of the original complaint.

## IV.    CONCLUSION

For the reasons stated above, Plaintiff's motion is GRANTED in part and DENIED in part.  The Court will conditionally certify the proposed statewide collective action, but only as to those hourly employees who worked during the three years preceding the filing of the original complaint. The statute of limitations will be equitably tolled pending notice to the potential opt-in plaintiffs.

The Clerk of the Court is respectfully directed to terminate the motion, Doc. 88.

It is SO ORDERED.

Dated:    March 31, 2025
          New York, New York

_____
          EDGARDO RAMOS, U.S.D.J.